No. 24-1067

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————

SHANNON W. AGOFSKY,
*PETITIONER/APPELLANT,*

V.

STEVE KALLIS,
*WARDEN,*
*RESPONDENT/APPELLEE.*

———————————

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:22–cv–00049-JRS-MKK, Hon. James R. Sweeney II

**OPENING BRIEF OF APPELLANT**
**ORAL ARGUMENT REQUESTED**

David Zuckerman
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
    Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
215-928-0520
*Counsel for Petitioner/Appellant*

March 11, 2024

# RULE 26.1 DISCLOSURE STATEMENT

The full name of Petitioner/Appellant is Shannon Wayne Agofsky. Attorney David Zuckerman, of the Federal Community Defender Office for the Eastern District of Pennsylvania, represents Mr. Agofsky before this Court. Attorney Claudia Van Wyk, of the American Civil Liberties Union, represented him in the 28 U.S.C. § 2241 proceedings below in the United States District Court for the Southern District of Indiana. Petitioner/Appellant is not a corporation.

**TABLE OF CONTENTS**

RULE 26.1 DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES............................................................. iii

INTRODUCTION...................................................................1

REQUEST FOR ORAL ARGUMENT...............................................2

STATEMENT OF JURISDICTION...............................................3

STATEMENT OF THE CASE .....................................................4

    A.   Conviction, Sentencing, and Direct Appeal ...........................4

    B.   Section 2255 Petitions .................................................5

    C.   Section 2241 Petition...................................................10

    D.   The District Court's Ruling............................................12

STANDARD OF REVIEW........................................................13

SUMMARY OF ARGUMENT ...................................................13

ARGUMENT ......................................................................14

I.   Mr. Agofsky's Challenge to His § 924(c) Conviction Is Properly Brought Under 28 U.S.C. § 2241 Because § 2255 Is Inadequate to Test the Legality of the Conviction and the Denial of Any Effective Remedy Would Violate the Eighth Amendment.............14

    A.   Under the Heightened Protections of the Eighth Amendment, There Must Be a Procedural Vehicle to Challenge an Invalid Conviction Later Used as an Aggravating Circumstance in a Capital Case. ......................15

    B.   Because the Eighth Amendment Compels a Remedy, This Claim Is Properly Brought Under 28 U.S.C. § 2241, Notwithstanding *Jones*. .......................................24

    C.   Mr. Agofsky Is Entitled to Relief on His Underlying Claim................................................................30

CONCLUSION ...................................................................37

ADDENDUM OF STATUTES, RULES, AND REGULATIONS ..........38

# TABLE OF AUTHORITIES

**Federal Cases**

*Allen v. United States*, 836 F.3d 894 (8th Cir. 2016) ...................... 34, 36

*Atkins v. Virginia*, 536 U.S. 304 (2002) ............................................... 21

*Borden v. United States*, 593 U.S. 420 (2021) ............................... *passim*

*Bousley v. United States*, 523 U.S. 614 (1998) .................................... 29

*Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) ......................... 13, 26

*Callins v. Collins*, 510 U.S. 1141 (1994) .............................................. 17

*Cohens v. Virginia*, 6 Wheat. 264, 5 L. Ed. 257 (1821) ........................ 23

*Daniels v. United States*, 532 U.S. 374 (2001) ................................. 9, 10

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) .......................................... 17

*Estell v. United States*, 924 F.3d 1291 (8th Cir. 2019) ........................ 29

*Ford v. Wainwright*, 477 U.S. 399 (1986) .......................... 14, 16, 20, 24

*Furman v. Georgia*, 408 U.S. 238 (1972) ........................................ 16, 17

*Gregg v. Georgia*, 428 U.S. 153 (1976) ........................................... 17, 18

*Harmelin v. Michigan*, 501 U.S. 957 (1991) ........................................ 16

*Herrera v. Collins*, 506 U.S. 390 (1993) ............................................... 22

*Hogsett v. Lillard*, 72 F.4th 819 (7th Cir. 2023) ............................ 15, 16

*Holder v. United States*, 836 F.3d 891 (8th Cir. 2016) ................... 34, 35

*Horton v. Lovett*, 72 F.4th 825 (7th Cir. 2023) .................................... 15

*Illinois v. Lidster*, 540 U.S. 419 (2004) ............................................... 20

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ............................ *passim*

*In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997) ..................................... 27

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ............................ 2, 18, 19

*Johnson v. United States*, 576 U.S. 591 (2015) ............................. 6, 7, 8

*Jones v. Hendrix*, 599 U.S. 456 (2023) ........................................ *passim*

*Kidd v. United States*, 929 F.3d 578 (8th Cir. 2019) ........................... 30

*Ring v. Arizona*, 536 U.S. 584 (2002) ................................................... 16

*Roberts v. Louisiana*, 428 U.S. 325 (1976) .......................................... 17

*Roper v. Simmons*, 543 U.S. 551 (2005) .............................................. 21

*Sanders v. Joseph*, 72 F.4th 822 (7th Cir. 2023) .................................. 15

*Sawyer v. Whitley*, 505 U.S. 333 (1992) .............................................. 22

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ........................................ 7

*Sochor v. Florida*, 504 U.S. 527 (1992) ............................................... 19

*Spaziano v. Florida*, 468 U.S. 447 (1984) .......................................... 16

*Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002) .................................. 27

*Thompson v. Oklahoma,* 487 U.S. 815 (1988) ............................... 21, 22

*Trop v. Dulles,* 356 U.S. 86 (1958) .................................................... 21

*United States v. Boman*, 810 F.3d 534 (8th Cir. 2016) ........................ 34

*United States v. Caldwell*, 292 F.3d 595 (8th Cir. 2002) ..................... 33

*United States v. Clark*, 695 F. App'x 999 (8th Cir. 2017) ................... 33

*United States v. Davis*, 139 S. Ct. 2319 (2019) ..................................... 8

*United States v. Harper*, 869 F.3d 624 (8th Cir. 2017) ....................... 29

*United States v. Martinez-Jimenez*, 864 F.2d 664 (9th Cir. 1989) ....... 36

*United States v. Olvera-Martinez*, 858 F. App'x 145 (5th Cir. 2021) ... 32

*United States v. Pickar*, 616 F.3d 821 (8th Cir. 2010) ........................ 33

*United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003) ........................ 32

*Unthank v. Jett*, 549 F.3d 534 (7th Cir. 2008) .................................. 27

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ............ 25, 27, 28, 30

*Welch v. United States*, 578 U.S. 120 (2016) ........................................ 7

*Woodson v. North Carolina,* 428 U.S. 280 (1976) .......................... 17, 18

**Federal Statutes**

18 U.S.C. § 16 ............................................................................. 7, 8, 32

18 U.S.C. § 371 .................................................................................. 4

18 U.S.C. § 924 ........................................................................ *passim*

18 U.S.C. § 2111 ............................................................................... 34

18 U.S.C. § 2113 ....................................................................... *passim*

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 2241 ....................................................................... *passim*

28 U.S.C. § 2244 ............................................................................... 29

28 U.S.C. § 2255 ........................................................ *passim*

## INTRODUCTION

Shannon Agofsky is on federal death row in Terre Haute, Indiana. His death sentence was procured by the government in part on the basis of a now-demonstrably-infirm prior conviction for 18 U.S.C. § 924(c), the conviction currently before this Court. Under *Borden v. United States*, 539 U.S. 420 (2021), retroactively applicable to Mr. Agofsky, he is innocent of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

Recently, in *Jones v. Hendrix*, 599 U.S. 465 (2023), the Supreme Court limited the availability of 28 U.S.C. § 2241 to challenge invalid convictions. The question is whether, despite *Jones*, 28 U.S.C. § 2241 remains a viable procedural path to challenge this wrongful conviction, on the ground that the conviction was later used as an aggravating factor in support of Mr. Agofsky's death sentence.

In *Jones*, a non-capital case, the Court hewed close to the letter of 28 U.S.C. § 2255(h). It concluded that "[t]he inability of a prisoner with a statutory claim to satisfy [§ 2255(h)] does not mean that he can bring his claim in a habeas petition under the saving clause. It means that he cannot bring it at all." 599 U.S. at 480. But this case, unlike Mr. Jones', implicates Mr. Agofsky's death sentence—and with it, the Eighth

Amendment. In *Jones*, it was constitutionally tolerable to conclude that in some cases there is simply no remedy for a defendant who does not squarely meet the successor provisions of § 2255(h). But such a strict application of § 2255(h) in a case with capital implications brings it into conflict with the Supreme Court's Eighth Amendment jurisprudence, which holds that a death sentence based upon a prior conviction that is subsequently invalidated violates the Constitution. *Johnson v. Mississippi*, 486 U.S. 578 (1988).

Because the Eighth Amendment forbids the government from carrying out such a death sentence, and because Mr. Agofsky does not meet the successor provisions of § 2255(h), § 2241 must remain a viable procedural avenue to protect the "fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment." *Johnson*, 486 U.S. at 584–85 (citations omitted). Mr. Agofsky seeks a remand to the district court for consideration of the merits of his § 2241 petition.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Seventh Circuit Rule 34(f), Mr. Agofsky respectfully requests oral argument.

## STATEMENT OF JURISDICTION

This appeal is taken from the final order of the United States District Court for the Southern District of Indiana, entered on November 29, 2023, by the Honorable James R. Sweeney II. PA0002–6.[1] That order dismissed Mr. Agofsky's habeas petition for lack of jurisdiction and directed entry of final judgment. *Id.* The notice of appeal was filed with the district court on January 17, 2024. Doc. 1-1 at 1–2. This Court has jurisdiction to decide this appeal pursuant to 28 U.S.C. § 1291.

Mr. Agofsky is under sentence of death and currently incarcerated at USP Terre Haute in Terre Haute, Indiana, where the Complex Warden is Steven Kallis. The district court had jurisdiction to decide Mr. Agofsky's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

---

[1] Petitioner's Appendix is cited herein as PA (followed by page number) and bound with the brief in accordance with Seventh Circuit Rule 30(b)(7).

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

Shannon Agofsky was convicted of a non-existent crime that later served as an aggravating factor in support of his death sentence. The question presented is:

Was the district court's dismissal of the § 2241 habeas petition challenging Mr. Agofsky's conviction for 18 U.S.C. § 924(c) pursuant to *Jones v. Hendrix*, 599 U.S. 465 (2023), contrary to the Eighth Amendment's requirement of heightened procedural protections for death-sentenced inmates, where that conviction later was invoked as an aggravating factor in support of Mr. Agofsky's death sentence?

**STATEMENT OF THE CASE**

**A.    Conviction, Sentencing, and Direct Appeal**

Mr. Agofsky was indicted for, and convicted of, using and carrying a firearm during and in relation to a felony crime of violence, 18 U.S.C. § 924(c), in a jury trial in the Western District of Missouri that concluded in September 1992.[2] *United States v. Shannon Agofsky et al.*,

---

[2] Mr. Agofsky was also convicted of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1), and bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and (e) (Count 2). The petition below and this appeal do not implicate those counts, except to the extent that the bank robbery was alleged as the predicate for a § 924(c) "crime of violence."

No. 3:92-cr-05006-RED, ECF Nos. 1, 198 (W.D. Mo. Sep. 22, 1992). The

§ 924(c) charge was Count 3 of the indictment.[3] Mr. Agofsky was

sentenced on November 23, 1992, to an aggregate term of life plus 60

months, with the 60-month sentence on Count 3 running consecutive to

the other two counts. *Agofsky et al.*, No. 3:92-cr-05006-RED, ECF No.

257 (W.D. Mo. Nov. 23, 1992).

Mr. Agofsky appealed to the Eighth Circuit, which affirmed the

convictions and sentences on April 1, 1994. *United States v. Agofsky*, 20

F.3d 866 (8th Cir. 1994), *cert. denied*, 513 U.S. 949 (1994) (PA0011–26).

## B.    Section 2255 Petitions

Mr. Agofsky subsequently moved for relief in the Western District

of Missouri pursuant to 28 U.S.C. § 2255. *Agofsky et al.*, No. 3:92-cr-

05006-RED, ECF No. 290 (W.D. Mo. Apr. 23, 1997). No hearing was

held, and the motion was denied in June 1997. *Agofsky et al.,* No. 3:92-

cr-05006-RED, ECF No. 298 (W.D. Mo. June 19, 1997) (PA0027–30).

Mr. Agofsky sought to appeal the denial of the motion to the Eighth

---

[3] Mr. Agofsky's conviction on Count 3 served as an aggravating factor in support of a death sentence imposed by a jury sitting in the Eastern District of Texas. *See United States v. Shannon Agofsky*, No. 1:03-cr-173-01, ECF Nos. 177, 180 (E.D. Tex. Jul. 16, 2004).

Circuit, which denied a certificate of appealability in February 1998. Mandate, *United States v. Shannon Agofsky*, No. 97-2923 (8th Cir. Feb. 26, 1998). The court treated a supplement to the notice of appeal as a petition for authorization to file a second § 2255 motion and denied the petition. Judgment, *United States v. Shannon Agofsky*, No. 97-2923 (8th Cir. Dec. 22, 1997).

In February 2012, Mr. Agofsky filed, under seal, a petition seeking authorization from the Eighth Circuit to file a successive § 2255 motion on the grounds that newly discovered evidence required vacation of the conviction, that he was actually innocent, and that the government had withheld exculpatory evidence. *See Agofsky et al.,* No. 3:92-cr-05006-RED, ECF No. 312 (W.D. Mo. Feb. 16, 2012). The Eighth Circuit denied the petition in June 2013. *See Shannon Agofsky v. United States*, No. 12-1397 (8th Cir. June 5, 2013) (PA0031–33).

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015). *Johnson* invalidated the Armed Career Criminal Act's ("ACCA's") residual clause because it is unconstitutionally vague in violation of the Due Process Clause. On April 18, 2016, the Court decided that *Johnson* announced a new

substantive rule that applied retroactively to cases on collateral review. *Welch v. United States*, 578 U.S. 120 (2016).

On May 11, 2016, Mr. Agofsky petitioned the Eighth Circuit for authorization to file a successive § 2255 motion in light of *Johnson* and *Welch. Shannon Agofsky v. United States*, No. 16-2185 (8th Cir. May 11, 2016). He argued, as he does here, that not only was the residual clause in § 924(c) unconstitutionally vague, but that the conviction could not stand under the force clause because armed bank robbery does not have as a necessary element the intentional use, attempted use, or threatened use of violent physical force. *Id.* The Eighth Circuit denied the petition. *Shannon Agofsky v. United States*, No. 16-2185 (8th Cir. Oct. 11, 2016) (PA0034).

On April 17, 2018, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), holding that the residual clause of 18 U.S.C. § 16(b) was unconstitutionally vague because of its strong and relevant similarities to the ACCA's residual clause. The provision invalidated in *Dimaya* is relevantly identical to the residual clause at issue here (i.e., that contained in § 924(c)).[4] On June 24, 2019, the Supreme Court held

---

[4] The residual clause under the ACCA defines a violent felony as: "[an enumerated felony], or otherwise involves conduct that *presents a*

7

in *United States v. Davis*, 139 S. Ct. 2319 (2019), that there were "no material difference[s]" among the residual clauses contained in the ACCA, § 16, and § 924(c), and therefore that § 924(c)'s residual clause is also unconstitutionally vague. *Davis,* 139 S. Ct. at 2326. *Davis* thus conclusively extended *Johnson's* holding to § 924(c)(3)(B).

Mr. Agofsky filed a petition for authorization to file a successive § 2255 motion in the Eighth Circuit in light of *Davis. See In re Shannon Wayne Agofsky,* No. 20-2030 (8th Cir. May 22, 2020). He argued that *Davis* announced a retroactive new constitutional rule that made him eligible for successive relief under 28 U.S.C. § 2255(h). *Id.* at 1. He also argued, as he does here, that his conviction could not stand under the force clause because bank robbery lacks a purposeful or knowing *mens*

---

*serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(b) (emphasis added).

The residual clause under § 16(b) defines a crime of violence as: "any other offense that is a felony and that, by its nature, *involves a substantial risk that physical force against the person or property of another* may be used in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added).

The residual clause under § 924(c)(3)(B) defines a crime of violence as: "[a felony] that by its nature, *involves a substantial risk that physical force against the person or property of another* may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B) (emphasis added).

*rea* and can be committed without force or intentional threat. *Id.* at 2. In June 2020, the Eighth Circuit again denied permission to file a successive petition. *In re Shannon Wayne Agofsky,* No. 20-2030 (8th Cir. June 30, 2020) (PA0035).

Separately, Mr. Agofsky has challenged, pursuant to § 2255, a federal conviction and capital sentence entered against him in the Eastern District of Texas. *Agofsky v. United States*, 1:07-cv-511 (E.D. Tex. Jan. 6, 2022). That challenge seeks to invalidate a death sentence that was imposed as a result of an altercation that took place in 2001 while Mr. Agofsky was serving his life sentence at USP Beaumont. *See id.* On June 17, 2022, following the issuance of *Borden*, Mr. Agofsky amended his pending § 2255 petition in Texas to include a claim that his death sentence is constitutionally infirm because his now-invalid § 924(c) conviction was charged as an aggravating circumstance and relied upon by the prosecution during his capital sentencing. *Agofsky v. United States*, 1:07-cv-511 (E.D. Tex. Jan. 6, 2022). The amendment to Mr. Agofsky's § 2255 petition in the Eastern District of Texas preserves Mr. Agofsky's challenge to his death sentence but does not challenge the underlying § 924(c) conviction at issue here. *See Daniels v. United*

*States,* 532 U.S. 374, 384 n.2 (2001) (noting the subject of the § 2255 petition was the enhanced sentence, not the prior conviction).

### C.    Section 2241 Petition

On June 10, 2021, the Supreme Court decided *Borden*, which gave rise to Mr. Agofsky's § 2241 petition. On February 9, 2022, Mr. Agofsky filed a Petition for Writ of Habeas Corpus Pursuant to § 2241 in the United States District Court for the Southern District of Indiana. *Agofsky v. Watson*, No. 22-49, ECF No. 1 (S.D. Ind. Feb. 9, 2022).

In his habeas petition below, Mr. Agofsky argued that under *Borden*, he is innocent of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). In *Borden*, the Supreme Court held that the statutory term "violent felony" covers only crimes committed knowingly or purposely and does not extend to crimes involving recklessness. 539 U.S. at 423. Mr. Agofsky was convicted of using a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The underlying "crime of violence" alleged was bank robbery, 18 U.S.C. § 2113(a), (d), and (e). Because, however, the "least culpable" forms of bank robbery under these subsections do not require a purposeful or knowing *mens rea*—or

10

any *mens rea* at all—it is not a crime of violence under *Borden* and cannot serve as a predicate for a § 924(c) conviction. 539 U.S. at 423–24.

No alternative ground can sustain Mr. Agofsky's conviction. The portion of § 924(c) that defines a "crime of violence" has two clauses.[5] The first, § 924(c)(3)(A), is commonly referred to as the force clause. The other, § 924(c)(3)(B), is commonly referred to as the residual clause. These forms of bank robbery cannot satisfy the force clause because, in addition to their lack of the necessary *mens rea*, they can be committed without force or intentional threat. The residual clause is void for vagueness.

In his petition, Mr. Agofsky argued that, after *Borden*, he stands convicted of a non-existent crime and yet has no way to seek relief under § 2255, rendering that section "inadequate or ineffective to test

---

[5] Section 924(c)(3) defines "crime of violence" as follows:

> (3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

the legality of his detention." *See In re Davenport*, 147 F.3d 605, 610–11 (7th Cir. 1998), *abrogated by Jones*, 599 U.S. at 471, 477. He argued the district court should grant him review and relief under § 2241.

### D.    The District Court's Ruling

Subsequent to the filing of Mr. Agofsky's petition, in *Jones,* the Supreme Court held that "§ 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on second or successive § 2255 motions by filing a § 2241 petition." 599 U.S. at 471.

On June 28, 2023, the district court ordered Mr. Agofsky to show cause why his petition should not be dismissed for lack of jurisdiction pursuant to *Jones. Agofsky v. Watson*, No. 22-49, ECF No. 16 (S.D. Ind. June 28, 2023) (PA0007-10). In doing so, Mr. Agofsky argued in part that *Jones* does not apply because the Eighth Amendment requires heightened procedural protections for petitioners who have been sentenced to death. *Agofsky v. Watson*, No. 22-49, ECF No. 19 (S.D. Ind. Sept. 26, 2023).

Without reaching the merits, the district court dismissed Mr. Agofsky's § 2241 petition for lack of jurisdiction. The district court acknowledged that "*Jones* did not address any of the protections

recognized in previous death penalty decisions." PA0004. The district court nonetheless remarked that

> none of those decisions explicitly held that a prisoner sentenced to death is entitled to review of a successive collateral attack raising a statutory innocence challenge to a prior conviction that may have contributed to the death sentence. Meanwhile, *Jones* held without qualification that a successive collateral attack must proceed under § 2255 and must be based on new evidence or a new rule of constitutional law.

PA0004–5. The district court ruled that it could not "consider the merits of Mr. Agofsky's habeas petition without disregarding *Jones*' unequivocal holding." PA0005. The court dismissed the action for lack of jurisdiction. *Id.* (citation omitted). This appeal follows.

## STANDARD OF REVIEW

This Court reviews the denial of a § 2241 petition de novo. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013).

## SUMMARY OF ARGUMENT

After *Borden*, Mr. Agofsky stands convicted of a non-existent crime and yet has no way to seek relief under § 2255, rendering that section "inadequate or ineffective to test the legality of his detention." *See In re Davenport*, 147 F.3d at 610–11, *abrogated by Jones*, 599 U.S. at 471, 477. This Court should grant him review under § 2241 and

remand to the district court for consideration of the merits despite the Supreme Court's holding in *Jones* that "§ 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on second or successive § 2255 motions by filing a § 2241 petition." 599 U.S. at 471. Mr. Agofsky and Mr. Jones differ in a crucial respect: the former was sentenced to death while the latter was not. Unlike Mr. Jones' case, *see Jones*, 599 U.S. at 470, Mr. Agofsky's case requires the application of a "heightened standard of reliability," *Ford v. Wainwright,* 477 U.S. 399, 411 (1986). The district court erred by denying Mr. Agofsky review and relief under § 2241.

## ARGUMENT

**I.     Mr. Agofsky's Challenge to His § 924(c) Conviction Is Properly Brought Under 28 U.S.C. § 2241 Because § 2255 Is Inadequate to Test the Legality of the Conviction and the Denial of Any Effective Remedy Would Violate the Eighth Amendment.**

In *Jones v. Hendrix*, 599 U.S. 456 (2023), the Supreme Court severely limited the availability of 28 U.S.C. § 2241 to challenge unfair convictions. This case presents the question of whether, after *Jones*, § 2241 remains a viable avenue to redress an invalid conviction, where that conviction was later invoked as an aggravating circumstance in a

capital case. There can only be one answer: *Jones* does not apply because the Eighth Amendment requires heightened procedural protections for petitioners who, unlike Mr. Jones, have been sentenced to death.

A. **Under the Heightened Protections of the Eighth Amendment, There Must Be a Procedural Vehicle to Challenge an Invalid Conviction Later Used as an Aggravating Circumstance in a Capital Case.**

In *Jones*, the Supreme Court ended what in its view was "an improper end-run around § 2255(h)'s limitations on filing second or successive motions." *Jones*, 599 U.S. at 475–80. *See also Hogsett v. Lillard*, 72 F.4th 819, 821 (7th Cir. 2023) (no capital case implicated)[6]; *Sanders v. Joseph*, 72 F.4th 822, 824–25 (7th Cir. 2023) (same); *Horton v. Lovett,* 72 F.4th 825, 827 (7th Cir. 2023) (same). Under *Jones*, the saving clause "does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions

---

[6] In *Hogsett*, the petitioner "previously filed a § 2255 motion, and he . . . wish[ed] to invoke *Borden* to mount a new collateral attack on his sentence." 72 F.4th at 821. This Court held that "[b]ecause *Borden* is a statutory interpretation decision, § 2255(h) does not permit Hogsett to file a successive § 2255 motion, and *Jones* forecloses the possibility of filing a § 2241 habeas petition via § 2255(e)." *Id.* (citation omitted). The petitioner in *Hogsett* had not been sentenced to death. *See id.* at 820.

on second or successive § 2255 motions by filing a § 2241 petition." *Id.* at 471.

But unlike *Jones,* 599 U.S. at 470, *Hogsett*, 72 F.4th at 820, and *In re Davenport*, 147 F.3d at 607, Mr. Agofsky's case requires the application of a "heightened standard of reliability," *Ford*, 477 U.S. at 411. That requirement arises from "the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." *Id.*

This heightened standard is unique to death penalty cases. Whenever the government seeks to execute one of its citizens, the Eighth Amendment requires that it provide them with protections "the Constitution nowhere else provides." *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991); *see also Ring v. Arizona*, 536 U.S. 584, 614 (2002) (Breyer, J., concurring); *Spaziano v. Florida*, 468 U.S. 447, 468 (1984) (Stevens, J., concurring in part and dissenting in part), *overruled on other grounds by Hurst v. Florida*, 577 U.S. 92 (2016). These safeguards account for the qualitative differences between the death penalty and other punishments, *Furman v. Georgia,* 408 U.S. 238, 306 (1972) (Stewart, J., concurring) (a difference "not in degree but in kind"), and ensure that death sentences are not "inflicted in an arbitrary and

capricious manner." *Gregg v. Georgia*, 428 U.S. 153, 188 (1976); *see also Callins v. Collins*, 510 U.S. 1141, 1149 (1994); *Eddings v. Oklahoma*, 455 U.S. 104, 111 (1982).

The Eighth Amendment's protections are both substantive and procedural. They extend not only to the instrument by which a punishment is implemented (e.g., lethal injection), but also to the procedural means by which that punishment is determined to be warranted. For instance, in *Woodson v. North Carolina,* 428 U.S. 280, 301 (1976), the Supreme Court struck down a state statute that called for the automatic imposition of a death sentence following any conviction for a specified set of crimes. *See also Roberts v. Louisiana,* 428 U.S. 325, 336 (1976) (same). *Woodson* focused on Eighth-Amendment specific procedural protections: how the country's "movement away from mandatory death sentences marked an enlightened introduction of flexibility into the sentencing *process*"; how the Court's decision in *Furman v. Georgia,* 408 U.S. 238 (1972), requires "objective standards to guide, regularize, and make rationally reviewable the *process* for imposing a sentence of death"; and how "the Eighth Amendment [citation omitted] requires consideration of the character and record of the individual offender and the circumstances of

the particular offense as a constitutionally indispensable part of the *process* of inflicting the penalty of death." *Woodson*, 428 U.S. at 298, 303–04 (emphases added); *see also Gregg*, 428 U.S. at 186 (procedure by which death penalty is imposed must rationally narrow the class of death-eligible defendants and must permit a jury to render a reasonable, individualized sentencing determination).

The Eighth Amendment's heightened procedural requirements include protections against death sentences imposed in reliance on aggravating circumstances that are later invalidated—even if additional aggravating circumstances remain. *Johnson v. Mississippi*, 486 U.S. 578 (1988). In *Johnson,* the defendant was convicted of capital murder and sentenced to death. *Id.* at 580. The jury based the sentence on the existence of three aggravating circumstances, one of which was later vacated by the state court. *Id.* at 582–83. The Supreme Court held:

> The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case . . . . The question in this case is whether allowing petitioner's death sentence to stand although based in part on a reversed conviction violates this principle.

486 U.S. at 587 (internal citation, internal quotation marks, and footnote omitted). Holding that the Eighth Amendment had been violated, the Court vacated Johnson's death sentence. *See also Sochor v. Florida*, 504 U.S. 527, 532 (1992) ("there is Eighth Amendment error when the sentencer weighs an 'invalid' aggravating circumstance in reaching the ultimate decision to impose a death sentence").

These procedural protections were not addressed in *Jones* because *Jones* was not a death penalty case. *See Jones*, 599 U.S. at 470. That difference renders *Jones* inapplicable and its rationale unpersuasive. For instance, when the Supreme Court considered (and declined to endorse) Mr. Jones' argument that the Court's interpretation of § 2241 and § 2255(e) violated the Suspension Clause, it nowhere accounted for the heightened procedural safeguards required when a death sentence is at issue and did not consider how those protections implicate the Suspension Clause. *See id.* at 482–83.

The majority opinion's sole, fleeting reference to the Eighth Amendment is insufficient to effect what would amount to a sea change in death penalty practice. Mr. Jones argued that punishment for nonexistent crimes implicated the Eighth Amendment, and thus urged generally that a "narrow interpretation of the saving clause may very

well allow for the persistence of cruel and unusual punishment," Brief of Appellant, *Jones v. Hendrix*, 2022 WL 2824415, at \*45. The majority disagreed, ruling simply that the clause "creates no freestanding entitlement to a second or successive round of postconviction review." 599 U.S. at 488. But *Jones*' cursory and nonspecific reference to the Eighth Amendment should be read as one limited to the claim raised, i.e., that the Eighth Amendment requires a remedy when an intervening statutory interpretation makes the prisoner's non-capital conviction and sentence invalid. Courts should "read general language in judicial opinions … as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Illinois v. Lidster*, 540 U.S. 419, 424 (2004). Not raised in *Jones*, and not addressed by the Court, was whether the heightened protections governing death penalty cases require an effective remedy for a claim like Mr. Agofsky's. *Ford*, 477 U.S. at 411.

    *Jones* is also premised on historical evidence of habeas corpus practice, *see* 599 U.S. at 472–77, 482–87—evidence that is distinct from, and which does not control, the pertinent Eighth Amendment analysis. That analysis requires courts to consider "the evolving standards of

decency that mark the progress of a maturing society," *Trop v. Dulles,* 356 U.S. 86, 100–01 (1958), not historical practice and understanding at the time of the nation's founding. *Compare Jones,* 599 U.S. at 482–87, *with Atkins v. Virginia,* 536 U.S. 304, 311 (2002) ("A claim that punishment is excessive is judged not by the standards that prevailed in 1685 when Lord Jeffreys presided over the 'Bloody Assizes' or when the Bill of Rights was adopted, but rather by those that currently prevail."). In Eighth Amendment cases, the Court "refer[s] to contemporary standards of decency in this country," not historical ones. *Roper v. Simmons*, 543 U.S. 551, 562 (2005) (citing *Stanford v. Kentucky*, 492 U.S. 361 (1989)); *see also Thompson v. Oklahoma*, 487 U.S. 815, 822–23 n.7 (1988).

Contemporary standards of decency demand the additional procedural protection Mr. Agofsky here relies upon. Death sentences in the United States are increasingly rare. At their peak in 1996, juries handed down more than 300 of them. *See Sentencing Data: Death Sentences in the United States Since 1973*, Death Penalty Information Center, available at https://deathpenaltyinfo.org/facts-and-research/sentencing-data/death-sentences-in-the-united-states-from-1977-by-state-and-by-year (last accessed Mar. 11, 2024). As of 2022,

that number had fallen to twenty-one, a 93% reduction. *Id.* Juries have signaled that standards of decency have evolved to require significantly more proof that death is the appropriate sentence in a particular case. *See Thompson v. Oklahoma,* 487 U.S. 815, 831 (1988) (the recent "behavior of juries" is relevant to a determination of whether a certain punishment is cruel and unusual under the Eighth Amendment). Those standards now require protection against the execution of someone who is to be put to death despite being innocent of a crime that was used to justify their death sentence. *See Sawyer v. Whitley*, 505 U.S. 333, 344, 350 (1992) (petitioners sentenced to death in state court can overcome procedural default on federal habeas review based on "actual innocence of the death penalty" by showing "by clear and convincing evidence that but for constitutional error … no reasonable juror would have found him eligible for the death penalty"); *see also Herrera v. Collins*, 506 U.S. 390, 419 (1993) (O'Connor, J., and Kennedy, J., concurring); *Herrera,* 506 U.S. at 430 (Blackmun, J., Stevens, J., and Souter, J., dissenting).

The district court correctly observed that "*Jones* did not address any of the protections recognized in previous death penalty decisions," PA0004, and that "*Jones* held without qualification that a successive collateral attack must proceed under § 2255 and must be based on new

evidence or a new rule of constitutional law," PA0005. But *Jones* was not a death penalty case, and neither the Supreme Court nor this Court has yet considered its application to such a case. The holding in *Jones* does not apply to a context that the Court did not consider, and which involves its own unique set of constitutional protections. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*, 6 Wheat. 264, 399, 5 L. Ed. 257 (1821) (Marshall, C. J.). "If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Id.*

The district court also correctly noted that none of the death penalty decisions cited by Mr. Agofsky "explicitly held that a prisoner sentenced to death is entitled to review of a successive collateral attack raising a statutory innocence challenge to a prior conviction that may have contributed to the death sentence." PA0004. But neither the Supreme Court nor any circuit has yet confronted this question in light of *Jones*. Although the death penalty decisions cited by Mr. Agofsky do not specifically contemplate the exact procedural remedy sought here, they hold that death penalty cases require a "heightened standard of

reliability" because "death is different." *Ford*, 477 U.S. at 411. Certainly, a heightened standard of reliability demands, at a minimum, that a death-sentenced prisoner have an opportunity to claim in a § 2241 petition, when he cannot do so otherwise, that he was convicted of a non-existent crime upon which a jury relied in sentencing him to death.

Mr. Agofsky is innocent of at least one of the crimes that the jury relied upon when imposing his death sentence; he was convicted of using a firearm during the commission of a crime that, under *Borden*, is not a violent offense. *Agofsky v. Watson,* No. 22-49, ECF No. 1 at 5 n.3 (S.D. Ind. Feb. 9, 2022). In light of the heightened substantive and procedural protections afforded petitioners like Mr. Agofsky, the Court should remand to the district court for consideration of the merits of Mr. Agofsky's underlying challenge.

### B. Because the Eighth Amendment Compels a Remedy, This Claim Is Properly Brought Under 28 U.S.C. § 2241, Notwithstanding *Jones*.

Mr. Agofsky could not have brought his *Borden* claim in a petition for authorization to file a successive motion under § 2255 because that statute provides no ground to bring a successive claim based on a new statutory interpretation. Nor could he have advanced the same

argument successfully before *Borden*, in his earlier § 2255 motions, because Eighth Circuit precedent squarely foreclosed it. His only path to obtaining the relief he seeks—the invalidation of his underlying § 924(c) conviction—runs through 28 U.S.C. § 2241.

Before *Jones*, this Court's saving clause jurisprudence provided that § 2241 was designed "to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence," *see In re Davenport*, 147 F.3d at 609, *abrogated by Jones*, 599 U.S. at 471, 477, and that saving clause review is appropriate when there is "some kind of structural problem with section 2255" that prevents the prisoner from invoking its provisions, *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

In *Davenport*, two petitioners (Davenport and Nichols) sought § 2241 review based on a new, retroactively applied rule of statutory law, announced by the Supreme Court, that could invalidate their convictions. *Davenport*, 147 F.3d at 609–11. In the case of Nichols, circuit precedent precluded him from raising this claim at the time of his initial § 2255 proceedings, and the Supreme Court's retroactive decision, as a new *statutory* rule, did not satisfy the requirements of § 2255(h). This Court therefore held that Nichols was entitled to review

under § 2241. Denying him the opportunity to remedy imprisonment for a "non-existent offense" was possibly an "inadequacy of constitutional dimensions," *id.* at 610–11, even in a case that did not implicate a death sentence.

The *Davenport* Court applied a three-element test in determining that Nichols could proceed under § 2241. Those three elements were (1) whether Nichols' claim was statutory, rather than constitutional; (2) whether Nichols relied on a retroactive decision that he could not have invoked in his first § 2255 motion; and (3) whether Nichols had shown a fundamental defect in his conviction. 147 F.3d at 610–12. The Court stressed that, on the one hand, circuit precedent was "firmly against" Nichols at the time of his initial motion, but on the other hand, the new retroactive decision did not overrule prior law but settled an open question. *Id.* at 610–11; *see also Brown*, 719 F.3d at 595 (section 2255 "inadequate or ineffective" to test claim because, before retroactive Supreme Court decision, "[c]ircuit precedent foreclosed the argument advanced today" that third degree arson was not a crime of violence under sentencing guidelines). It held that "[a] procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial

rectification of so fundamental a defect in his conviction as having been imprisoned for a non-existent offense." *Davenport*, 147 F.3d at 611; *see also In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997), *abrogated by Jones*, 599 U.S. at 471, 477 (section 2255 "inadequate or ineffective," not only because petitioner could not meet stringent gatekeeping requirements, but because intervening change in substantive law may have "negate[d]" conviction).

This Court's pre-*Jones* § 2241 precedent also draws distinctions between § 2241 claims that implicate the Constitution and those that do not. In *Webster*, this Court distinguished its holdings in *Unthank v. Jett*, 549 F.3d 534 (7th Cir. 2008) and *Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002) because "in neither of those cases did the court have before it an argument that a particular sentence was *constitutionally* forbidden (either as a matter of law or as a matter of fact), rather than just outside the scope of a statute." *Webster*, 784 at 1137 (7th Cir. 2015) (emphasis in original). Unlike *Unthank* and *Taylor* (and *Jones* and *Davenport*), the petitioner in *Webster* had been sentenced to death. *Id.* at 1139. Faced with a claim implicating the Eighth Amendment, this Court, sitting *en banc*, remarked that even

> [i]f one were to disagree with our view, stated earlier, that ordinary principles of statutory interpretation lead directly to the result that the savings clause applies here, then the next step would be to take into account the fact that a core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence. As Judge Wiener implied [in an earlier concurrence in Mr. Webster's case], there is no reason to assume that our procedural system is powerless to act in such a case. It is fairly possible to read section 2255(e) as encompassing challenges to both convictions and sentences that as a structural matter cannot be entertained by use of the 2255 motion. To hold otherwise would lead in some cases—perhaps Webster's—to the intolerable result of condoning an execution that violates the Eighth Amendment.

*Id.* at 1139. In the footnote that immediately followed, this Court explained it was resolving "the question of the availability of section 2241 on statutory—rather than constitutional—grounds." *Id.* at 1139 n.7. In so doing, it reserved the question Mr. Agofsky raises here: whether § 2241 must remain a procedural avenue when the Eighth Amendment is implicated.

Like the successful petitioner in *Davenport*, Mr. Agofsky stands convicted of a non-existent crime. *Borden* settled an open question, holding that a crime committed with anything less than purpose or knowledge is not a violent felony. 593 U.S. at 42, 429. That decision, as

a new substantive rule determining the definition of the crime, applies retroactively. *See Bousley v. United States,* 523 U.S. 614, 620–21 (1998) (decision holding that a "substantive federal statute does not reach certain conduct" carries risk of convicting defendant of an "act that the law does not make criminal" and must apply retroactively in habeas review). *Borden* holds that § 924(e), a statute "relevantly identical" to the corresponding definition in § 924(c), does not reach conduct committed with reckless or lesser culpability.

Under this Court's pre-*Jones* precedent, § 2255 is inadequate or ineffective as a vehicle for Mr. Agofsky to challenge his conviction under *Borden*. The claim neither invokes a new constitutional rule nor presents new evidence. *Davenport*, 147 F.3d at 610; *see* 28 U.S.C. § 2244(b)(2)(A), (B). If Mr. Agofsky had attempted to advance the claim in his earlier § 2255 proceedings, Eighth Circuit precedent would have firmly foreclosed it. *Davenport*, 147 F.3d at 610; *see Kidd v. United States*, 929 F.3d 578, 582 (8th Cir. 2019); *Estell v. United States*, 924 F.3d 1291, 1293 (8th Cir. 2019); *United States v. Harper*, 869 F.3d 624, 626 (8th Cir. 2017). Indeed, Mr. Agofsky's diligent attempts to make similar *mens rea* arguments in earlier petitions for authorization, without the benefit of Supreme Court precedent to support them, failed.

*See Webster,* 784 F.3d at 1140–42, 1146. A "structural problem" prevents him from raising the claim now because it is not based on a new rule of constitutional law. *See id.* at 1136.

Had Mr. Agofsky's claim been decided prior to *Jones*, this Court's precedent would have entitled him to consideration on the merits. Because *Jones* does not apply to petitioners facing the death penalty, that precedent still entitles him to review.

### C. Mr. Agofsky Is Entitled to Relief on His Underlying Claim.

Mr. Agofsky seeks a remand to the district court for consideration of the merits of his claim under *Borden*. He is entitled to relief on that claim.

In *Borden*, the Supreme Court interpreted the portion of the force clause of the ACCA that requires three or more prior convictions for a violent felony. To reach the proper interpretation, the Court employed the "categorical approach":

> Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of

another." § 924(e)(2)(B)(i). If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate.

593 U.S. at 424 (case citations omitted).

Deciding a question it had previously left open, *id.* at 429, the Court held that the statutory language did not include crimes of recklessness. Justice Kagan wrote for the plurality:

We must decide whether the elements clause's definition of "violent felony"—an offense requiring the "use of physical force against the person of another"—includes offenses criminalizing reckless conduct. We hold that it does not. The phrase "against another," when modifying the "use of force," demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner. Our reading of the relevant text finds support in its context and purpose. The treatment of reckless offenses as "violent felonies" would impose large sentencing enhancements on individuals (for example, reckless drivers) far afield from the "armed career criminals" ACCA addresses—the kind of offenders who, when armed, could well "use [the] gun deliberately to harm a victim."

*Id.* Justice Thomas, concurring, reached the same conclusion for different reasons. In his view, "a crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase 'has a well-understood meaning applying only to

intentional acts designed to cause harm.'" *Id.* at 446. He and the plurality thus agreed on their ultimate conclusion: a conviction cannot qualify as a "violent felony" unless it has a *mens rea* of more than recklessness.

As Justice Kagan observed, the force clause of the ACCA is "relevantly identical" to the language of the force clause contained in 18 U.S.C. § 16(a). *Borden*, 593 U.S. at 427. That language, in turn, is identical to the language in § 924(c) at issue in this case. *See United States v. Olvera-Martinez*, 858 F. App'x 145 (5th Cir. 2021) (parties agree *Borden* applies to "crime of violence" definition in § 16(a)). Therefore, a conviction cannot qualify categorically as a "crime of violence" under § 924(c) if it is possible to commit the predicate offense with recklessness or some less culpable *mens rea*. And, of necessity, the more-than-reckless *mens rea* must relate to the use of force element.

Mr. Agofsky was convicted in the Eighth Circuit. That Circuit's long-standing precedent establishes that bank robbery by intimidation does not require the purposeful or knowing use of force. Rather, it can be satisfied by a range of less intentional conduct. For instance, in *United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003), the court upheld a conviction under § 2113(a) even though there was no evidence

that Yockel intended to put the teller in fear of any type of injury. Yockel made no sort of physical movement toward the teller, never presented her with a note demanding money, and never displayed a weapon or appeared to have a weapon. *Id.* The court concluded that whether a person "intend[s] to intimidate the teller is irrelevant in determining his guilt … the intimidation element of § 2113(a) is satisfied … *whether or not* [a person] actually intended the intimidation." *Id.* at 824 (emphasis in original) (citations and internal quotation marks omitted). The Eighth Circuit has since reiterated that "whether the bank robber intended to intimidate is irrelevant"; the objective test for intimidation is satisfied if an ordinary person could infer a threat of bodily harm from a bank robber's speech or actions. *United States v. Pickar*, 616 F.3d 821, 824 (8th Cir. 2010); *accord United States v. Clark*, 695 F. App'x 999, 1000 (8th Cir. 2017) (citing and following *Pickar*); *United States v. Caldwell,* 292 F.3d 595, 596 (8th Cir. 2002) (reiterating that a person's conduct must "'constitute an intimidation to an ordinary, reasonable person'") (quoting *United States v. Smith*, 973 F.2d 603, 604 (8th Cir. 1992)).

Before *Borden,* the Eighth Circuit held that the statutory language of § 2113, requiring commission of the crime by "force and

violence, or by intimidation," satisfies the definition of "crime of violence" in § 924(c). For example, in 2016, the court issued companion decisions denying petitions for authorizations because "bank robbery in violation of 18 U.S.C. § 2113(a) and (e) is a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A)." *Holder v. United States*, 836 F.3d 891, 892 (8th Cir. 2016); *Allen v. United States*, 836 F.3d 894, 895 (8th Cir. 2016). The petitioners in these cases had been convicted of § 2113(a) and (e) and sentenced under § 924(c). The Eighth Circuit relied on *United States v. Boman*, 810 F.3d 534, 543 (8th Cir. 2016), which held that the federal robbery statute (18 U.S.C. § 2111) satisfies the force clause under 18 U.S.C. § 924(c)(3)(A). *Holder,* 836 F.3d at 892; *Allen,* 836 F.3d at 895. The court reasoned that bank robbery must satisfy the force clause as well. *Holder,* 836 F.3d at 892, *Allen,* 836 F.3d at 895.

*Borden* abrogates these decisions, which discount the relevance of the actor's intent. Because intimidation can be committed recklessly— or without any intent whatsoever—*Borden* compels the conclusion that bank robbery by intimidation cannot serve as a predicate crime of violence for § 924(c). Under the categorical approach, § 2113(a) cannot serve as a predicate "crime of violence" because the "least culpable" of

the "acts criminalized" do not entail the requisite purposeful or knowing use of force. *See Borden*, 593 U.S. at 424.

Still additional reasons counsel in favor of the district court's granting Mr. Agofsky's underlying petition following a remand. For instance, § 2113 describes multiple alternative factual means of committing the same offense: A defendant violates § 2113 whether they rob a bank using "force and violence," "intimidation," or "extortion." *Agofsky v. Watson*, Case No. 22-cv-49, ECF No. 1 at 12 (S.D. Ind. Feb. 9, 2022). A prior conviction under such a statute (i.e., an "indivisible" statute) cannot qualify as a crime of violence unless all three of the means listed are crimes of violence. *See id.* at 12 (citing *Mathis v. United States*, 579 U.S. 500, 506 (2016)). Bank robbery by extortion, however, can be committed by calling a bank teller and threatening their family. *See id.* at 13 (citing *United States v. Valdez,* 158 F.3d 1140, 1143 n.4 (10th Cir. 1998) ("an individual may be able to commit a bank robbery under the language of 18 U.S.C. § 2113(a) 'by extortion' without the threat of violence")).

Nor do subsections 2213(d) or (e) (commonly referred to as "sentencing enhancements" of § 2113(a)) prevent Mr. Agofsky from obtaining relief because neither require any additional, heightened

*mens rea* beyond that necessary to be convicted under § 2113(a). Subsection (d) can be violated because the defendant carried a gun merely to "feel[] secure with it," without ever intending to intimidate anyone, *id.* at 22 (citing *United States v. Martinez-Jimenez,* 864 F.2d 664, 667 (9th Cir. 1989)). Similarly, subsection (e)—the equivalent of a felony murder provision for § 2113(a)—does not require proof that the defendant intentionally or knowingly committed the killing or forced accompaniment in question. *Id.* (citing, *inter alia, Allen,* 836 F.3d at 895 ("Because the plain language of [18 U.S.C. § 2113(e)] says simply 'kills,' and not 'intentionally kills' or 'murders,' the settled principles of construction direct us to conclude that [Congress] did not intend to add an additional scienter requirement to the killing component of the crime.")) At every level of analysis, § 2113 does not qualify as a crime of violence under *Borden*.

For these reasons, Mr. Agofsky is entitled to the relief sought in his petition, i.e., the invalidation of the underlying § 924(c) conviction entered by the Western District of Missouri on November 23, 1992. *See United States v. Shannon Agofsky et al.,* No. 3:92-cr-05006-RED, ECF No. 257 (W.D. Mo. Nov. 23, 1992). Mr. Agofsky seeks a remand to the district court for consideration of the merits of his petition.

# CONCLUSION

For the reasons set forth above, this Court should reverse the district court's opinion dismissing Mr. Agofsky's habeas petition and remand to the district court for consideration of the merits.

Respectfully submitted,

/s/ *David Zuckerman*
David Zuckerman
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)

*Counsel for Petitioner/Appellant*
*Shannon Agofsky*

Dated: March 11, 2024

<h1 style="text-align:center">ADDENDUM OF STATUTES, RULES, AND REGULATIONS[7]</h1>

## U.S. Const. amend. VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## 28 U.S.C. § 2241. Power to grant writ

**(a)** Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

**(b)** The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

**(c)** The writ of habeas corpus shall not extend to a prisoner unless--

> **(1)** He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> **(2)** He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> **(3)** He is in custody in violation of the Constitution or laws or treaties of the United States; or
> **(4)** He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

---

[7] Pursuant to Fed. R. App. P. 28(f).

**(5)** It is necessary to bring him into court to testify or for trial.

**(d)** Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

**(e)(1)** No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.
**(2)** Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

## 28 U.S.C. § 2255. Federal custody; remedies on motion attacking sentence

**(a)** A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**(b)** Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

**(c)** A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

**(d)** An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

**(e)** An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

**(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

> **(1)** the date on which the judgment of conviction becomes final;
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

**(g)** Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

**(h)** A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

**(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

**(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A) and Seventh Circuit Rule 32(c) because it contains 7,297 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft 365, Version 2308, in 14 point Century Schoolbook.

/s/ *David Zuckerman*
David Zuckerman

Dated: March 11, 2024

## CERTIFICATE OF SERVICE

I, David Zuckerman, hereby certify that, on this date, I electronically filed the foregoing brief with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *David Zuckerman*
David Zuckerman

Dated: March 11, 2024

No. 24-1067

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————

SHANNON W. AGOFSKY,
*PETITIONER/APPELLANT,*

V.

STEVE KALLIS,
*WARDEN,*
*RESPONDENT/APPELLEE.*

———————————

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:22–cv–00049-JRS-MKK, Hon. James R. Sweeney II

**APPENDIX TO OPENING BRIEF OF APPELLANT
PAGES PA0001-PA0035**

David Zuckerman
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
215-928-0520
*Counsel for Petitioner/Appellant*

March 11, 2024

# INDEX TO APPENDIX[1]

Certificate of Compliance ...............................................................PA0001

Order Dismissing Action for Lack of Jurisdiction and Directing
Entry of Final Judgment, *Shannon W. Agofsky v. T.J. Watson*,
No. 2:22-cv-49 (S.D. Ind. Nov. 29, 2023).......................................PA0002

Final Judgment, *Shannon W. Agofsky v. T.J. Watson*,
No. 2:22-cv-49 (S.D. Ind. Nov. 29, 2023).......................................PA0006

Order for Petitioner to Show Cause, *Shannon W. Agofsky v. T.J.
Watson*, No. 2:22-cv-49 (S.D. Ind. June 28, 2023) ........................PA0007

Judgment and Opinion, *United States v. Shannon W. Agofsky*,
No. 92-3767 (8th Cir. Apr. 1, 1994)...............................................PA0011

Order Denying Petition for Writ of Certiorari, *Shannon W. Agofsky v.
United States*, No. 94-5560 (S. Ct. Oct. 17, 1994)..........................PA0026

Order, *Shannon W. Agofsky v. United States*, No. 97-3199
(W.D. Mo. June 19, 1997)...............................................................PA0027

Judgment, *Shannon W. Agofsky v. United States*, No. 12-1397
(8th Cir. June 5, 2013) ...................................................................PA0031

Judgment, *Shannon W. Agofsky v. United States*, No.16-2185
(8th Cir. Oct. 11, 2016)...................................................................PA0034

Judgment, *Shannon W. Agofsky v. United States*, No. 20-2030
(8th Cir. June 30, 2020)..................................................................PA0035

---

[1] Consistent with Seventh Circuit Rule 30(a) and (b)(7), the appendix has been bound with Petitioner/Appellant's opening brief.

**CERTIFICATE OF COMPLIANCE**

I, David Zuckerman, hereby certify that all materials required by Seventh Circuit Rule 30(a) and(b) are included in the appendix filed with Petitioner/Appellant's initial brief. To comply with Seventh Circuit Rule 30(b)(7), the appendix is bound with the brief.

/s/ *David Zuckerman*
David Zuckerman
Assistant Federal Defender
Federal Community Defender
Office for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545
West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)

*Counsel for Petitioner/Appellant*
*Shannon Agofsky*

Dated: March 11, 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SHANNON WAYNE AGOFSKY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00049-JRS-MKK |
| | ) | |
| T.J. WATSON Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DISMISSING ACTION FOR LACK OF JURISDICTION
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Shannon Agofsky, a federal prisoner incarcerated in this district, seeks a writ of habeas corpus under 28 U.S.C. § 2241. Mr. Agofsky seeks to vacate his conviction in the Western District of Missouri under 18 U.S.C. § 924(c) for using a firearm during and in relation to a crime of violence. He argues that, under *Borden v. United States*, 141 S. Ct. 1817 (2021), the underlying offense was not a crime of violence as defined by the statute and that his conviction is therefore invalid. He previously, and unsuccessfully, attacked this conviction under 28 U.S.C. § 2255. *See* dkt. 1 at 5–8 (summarizing § 2255 actions).

In June 2023, the Court ordered Mr. Agofsky to show cause why his petition should not be dismissed for lack of jurisdiction in view of *Jones v. Hendrix*, 599 U.S. 465. In *Jones*, the Supreme Court held that a prisoner who has already pursued a collateral attack against his federal conviction or sentence may bring another *only* because newly discovered evidence demonstrates innocence or because a new rule of Constitutional law offers relief that was previously unavailable. 599 U.S. at 476–78. Moreover, such a challenge must proceed under § 2255 in the district of conviction— not under § 2241 in the district of incarceration. *Id.* at 478.

PA0002

Mr. Agofsky responded to the Court's show-cause order and raised two reasons why *Jones* should not bar his successive collateral attack on his § 924(c) conviction. His arguments stem from issues specific to his case and not expressly addressed in *Jones*. Namely, Mr. Agofsky was later convicted of a capital offense and sentenced to death. The government presented his previous § 924(c) conviction as an aggravating factor justifying the death penalty. Ultimately, Mr. Agofsky's attack on the § 924(c) conviction is a step toward challenging his death sentence. And, although he attacks the § 924(c) conviction in his § 2241 petition, he argues that its connection to his death sentence allows this habeas action to move forward even after *Jones*.

First, Mr. Agofsky argues that his § 924(c) conviction is one factor that led the Bureau of Prisons to place him in a Special Confinement Unit, where he is held under harsh and isolated conditions. Dkt. 19 at 6–7. Mr. Agofsky correctly observes that *Jones* did not constrain the availability of § 2241 for challenges that a prisoner "is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." *Jones*, 599 U.S. at 475.

But Mr. Agofsky does not challenge an administrative decision regarding his place or conditions of confinement or a deprivation of credit time. He asks the Court to vacate his conviction by a jury of a separate court. *See* dkt. 19 at 8 ("At the least, the Court should reach the merits of Mr. Agofsky's argument regarding the validity of his § 924(c) conviction . . . ."). His § 2241 petition collaterally attacks his conviction, not any of the administrative actions *Jones* recognized as actionable under § 2241.

Second, Mr. Agofsky argues that *Jones* simply "does not apply" to his petition. Dkt. 19 at 2. More specifically, Mr. Agofsky cites a series of Supreme Court decisions holding that prisoners

2

sentenced to death are entitled to heightened due process protections. *Id.* at 2–6 (citing *Ford v. Wainwright*, 477 U.S. 399 (1986) (Constitution demands "factfinding procedures" that "aspire to a heightened standard of reliability" in capital cases.); *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (Constitution requires proportionality review in capital cases.); *Spaziano v. Florida*, 468 U.S. 447, 468 (1984) (Stevens, J., concurring in part and dissenting in part) ("[A] State's deprivation of a person's life is also qualitatively different from any lesser intrusion on liberty."); *Furman v. Georgia*, 408 U.S. 238, 306 (1974) (Stewart, J., concurring) ("The penalty of death differs from all other forms of criminal punishment, not in degree but in kind."); *Gregg v. Georgia*, 428 U.S. 153, 188 (1976) ("Because of the uniqueness of the death penalty, *Furman* held that it could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner."); *Woodson v. North Carolina*, 428 U.S. 280, 301 (1976) (Eighth and Fourteenth Amendment prohibit mandatory death penalty.); *Roberts v. Louisiana*, 428 U.S. 325, 336 (1976) (same); *Herrera v. Collins*, 506 U.S. 390, 419 (1993) (O'Connor, J., concurring) ("I cannot disagree with the fundamental legal principle that executing the innocent is inconsistent with the Constitution."); *id.* at 430 (Blackmun, J., dissenting) ("Nothing could be more contrary to contemporary standards of decency . . . or more shocking to the conscience . . . than to execute a person who is actually innocent.").  He argues that *Jones* did not formally abrogate any of the principles set out in those cases and that they cannot be honored if this Court applies *Jones* to preclude review of his habeas petition.

Mr. Agofsky is correct that *Jones* did not address any of the protections recognized in previous death penalty decisions. But none of those decisions explicitly held that a prisoner sentenced to death is entitled to review of a successive collateral attack raising a statutory innocence challenge to a prior conviction that may have contributed to the death sentence.

PA0004

Meanwhile, *Jones* held without qualification that a successive collateral attack must proceed under § 2255 and must be based on new evidence or a new rule of constitutional law.

This Court cannot consider the merits of Mr. Agofsky's habeas petition without disregarding *Jones'* unequivocal holding. He cannot obtain the relief he seeks unless that holding is modified, and this Court lacks authority to modify the Supreme Court's explicit holdings.

This action is **dismissed** for lack of jurisdiction. *Hogsett v. Lillard*, 72 F.4th 819, 822 (7th Cir. 2023) (vacating the district court's judgment and remanding with instructions to dismiss for lack of subject-matter jurisdiction.).

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 11/29/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

John Benton Hurst
DOJ-USAO
john.hurst@usdoj.gov

Claudia Van Wyk
American Civil Liberties Union Foundation
cvanwyk@aclu.org

4

PA0005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SHANNON WAYNE AGOFSKY,                    )
                                          )
                    Petitioner,           )
                                          )
        v.                                )       No. 2:22-cv-00049-JRS-MKK
                                          )
T.J. WATSON Warden,                       )
                                          )
                    Respondent.           )

**FINAL JUDGMENT**

The Court has ordered that this action be **dismissed**. The Court now enters **FINAL JUDGMENT**.

Date: 11/29/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk

BY: _Samantha Burmester_
     Deputy Clerk, U.S. District Court

**IT IS SO ORDERED.**

Distribution:

John Benton Hurst
DOJ-USAO
john.hurst@usdoj.gov

Claudia Van Wyk
American Civil Liberties Union Foundation
cvanwyk@aclu.org

PA0006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SHANNON WAYNE AGOFSKY,                     )
                                           )
                    Petitioner,            )
                                           )
        v.                                 )       No. 2:22-cv-00049-JRS-MKK
                                           )
T.J. WATSON Warden,                        )
                                           )
                    Respondent.            )

**ORDER FOR PETITIONER TO SHOW CAUSE**

Shannon Agofsky is incarcerated in this District on a federal capital sentence. He seeks a writ of habeas corpus under 28 U.S.C. § 2241 to invalidate a prior conviction under 28 U.S.C. § 924(c) for using a firearm during and in relation to a crime of violence, which he asserts was an aggravating factor that contributed to his capital sentence. The Supreme Court's recent decision in *Jones v. Hendrix*, forecloses challenges under § 2241 based on a new Supreme Court case interpreting the statute under which the petitioner was convicted or sentenced. 599 U.S. __, __ S. Ct. __, No. 21-857, 2023 WL 4110233 (June 22, 2023).

**I.  Factual and Procedural Background**

In 1992, a grand jury in the Western District of Missouri charged Mr. Agofsky with three offenses: robbing a bank in violation of 18 U.S.C. § 2113, conspiring to rob the bank in violation of 18 U.S.C. § 371, and using a firearm during and in relation to the bank robbery in violation of 18 U.S.C. § 924(c). Dkt. 10-1. According to the indictment, Mr. Agofsky and his brother abducted a bank president from his house, forced him to open the bank, stole about $70,000, taped the bank president to a wooden chair, drove him away, and dropped him over the side of a bridge, causing his death. *Id.* A jury convicted Mr. Agofsky on all three charges. Dkt. 10-3. He was sentenced to

life plus 60 months in prison. The Eighth Circuit affirmed Mr. Agofsky's conviction and sentence. *United States v. Agofsky*, 20 F.3d 866 (1994). He unsuccessfully pursued relief under 28 U.S.C. § 2255 four times. *See* dkt. 1 at 5–8.

Mr. Agofsky was convicted of a subsequent offense by a federal jury in the Eastern District of Texas and sentenced to death. Mr. Agofsky cites his § 924(c) conviction in the bank robbery case as an aggravating factor that contributed to his death sentence. *See* dkt. 1 at 5, n.3.

## II. Standard of Review

Although Mr. Agofsky attempts to proceed under § 2241, the provisions of 28 U.S.C. § 2255 also apply to his case. Section 2255 provides in relevant part:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the  maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> \*\*\*
>
> (e) An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
>
> \*\*\*
>
> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> > 1. newly discovered evidence that, if proven and viewed in light of the evidence as a whole, who would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found guilty of the offense; or

PA0008

> 2.      a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
> 3.

28 U.S.C. § 2255. Subsection (e) is commonly referred to as the "saving clause."

In *Jones v. Hendrix*, 599 U.S. __, __ S. Ct. __, No. 21-857, 2023 WL 4110233 (June 22, 2023), the petitioner filed a § 2241 petition challenging his sentence based on a new Supreme Court case interpreting his statute of conviction. *Id.* at *4. He had previously filed a § 2255 motion and had that motion adjudicated on the merits. *Id.* He argued that he could pursue a new challenge to his sentence in a § 2241 petition because, before the new Supreme Court case was issued, his position was foreclosed by binding circuit precedent, meaning that his § 2255 remedy had been "inadequate or ineffective" to test the legality of his sentence. *Id.* The U.S. Supreme Court affirmed the district court's dismissal of his § 2241 petition for lack of jurisdiction, explaining:

> [T]he saving clause does not authorize . . . an end-run around [§ 2255(h)]. In § 2255(h), Congress enumerated two—and only two—conditions in which a second or successive § 2255 motion may proceed. Because § 2255 is the ordinary vehicle for a collateral attack on a federal sentence, the straightforward negative inference from § 2255 is that a second or successive or collateral attack on a federal sentence is not authorized unless one of those two conditions is satisfied.

*Id.* at *7 (expressly overruling Seventh Circuit's application of the saving clause in *In re Davenport*, 147 F.3d 605, 609–611 (7th Cir. 1998)).

### III. Discussion

In this case, Mr. Agofsky is challenging his conviction under 18 U.S.C. § 924, but he has already filed a § 2255 motion that was determined on the merits. Thus, under *Jones*, he cannot launch another collateral attack on his conviction unless that attack fits within the parameters of § 2255(h). *Jones*, 2023 WL 4110233, at *5 (holding "that § 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on second or successive § 2255 motions by filing a § 2241 petition."). His § 2241

PA0009

petition—which argues that *Borden v. United States*, 141 S. Ct. 1817 (2021) invalidates his § 924(c) conviction—represents such an unauthorized successive collateral attack on his sentence.[1] *Jones*, 2023 WL 4110233 at *9 ("Congress has chosen finality over error correction . . . ."); *id.* at *14 (J. Sotomayor and J. Kagan, dissenting) ("A prisoner who is actually innocent, imprisoned for conduct that Congress did not criminalize, is forever barred by 28 U.S.C. § 2255(h) from raising that claim, merely because he previously sought postconviction relief. It does not matter that an intervening decision of this Court confirms his innocence. By challenging his conviction once before, he forfeited his freedom.").

Accordingly, on or **before July 28, 2023**, Petitioner shall show cause why his § 2241 petition should not be dismissed for lack of jurisdiction based on the reasoning set forth in *Jones*.

**IT IS SO ORDERED.**

Date: 06/28/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

John Benton Hurst
DOJ-USAO
john.hurst@usdoj.gov

Claudia Van Wyk
American Civil Liberties Union
claudia_vanwyk@fd.org

---

[1] The Court notes that, even if Petitioner's petition presented arguments that fell within § 2255(h), he would be required to bring them in a § 2255 motion addressed to his court of conviction after obtaining permission from the appropriate court of appeals. *See* 28 U.S.C. § 2255(a), (h).

4

PA0010

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 92-3783WMJ

United States of America ,

    Appellee,

vs.

Joseph Anthony Agofsky,

    Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Western District of Missouri

*92-05006-02-CR-SW-4/*

### JUDGMENT

This appeal from the United States District Court was submitted on the record of the district court, briefs of the parties and was argued by counsel.

After consideration, it is hereby ordered and adjudged that the judgment of the district court in this cause is affirmed in accordance with the opinion of this Court.

April 1, 1994

A true copy.

    ATTEST:

        *Michael E. Gans*

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

ORIGINAL

Doc.# 288

PA0011

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No. 92-3767

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　*
　v.　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
Shannon Wayne Agofsky,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant - Appellant.　　*

No. 92-3783

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　*
　v.　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
Joseph Anthony Agofsky,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant - Appellant.　　*

Appeals from the United States
District Court for the
Western District of Missouri.

Submitted:　November 8, 1993

Filed:　April 1, 1994

Before HANSEN, Circuit Judge, JOHN R. GIBSON[*], Senior Circuit Judge, and MELLOY[**], Chief District Judge.

---

[*]The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

[**]The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

PA0012

JOHN R. GIBSON, Senior Circuit Judge.

A jury convicted Shannon and Joseph Agofsky, following a joint trial, of three charges: 1) conspiracy to rob a federally insured bank, 18 U.S.C. § 371 (1988); 2) aggravated armed robbery of a federally insured bank, 18 U.S.C. § 2113(a), (d) & (e) (1988); and 3) use of a firearm during the commission of a federal crime of violence, 18 U.S.C. § 924(c)(1) (1988). The district court[1] sentenced each of them to life imprisonment plus sixty months in accordance with the applicable sentencing guidelines.[2] On appeal, both argue the district court erred in: 1) concluding there was sufficient evidence to support the jury's verdicts; 2) denying their motions for severance; 3) refusing to give an alibi instruction; and 4) refusing to rule on certain pro se motions prior to sentencing. Shannon Agofsky also argues that the district court erred in refusing to declare a mistrial after allegedly improper prosecutorial statements and in denying his motions to suppress evidence. We affirm the convictions.

On Friday morning, October 6, 1989, an assistant cashier, Pauline Coonrod, discovered that the State Bank of Noel, located in rural southwest Missouri, had been robbed during the night. A subsequent examination of the bank revealed empty bullet casings, vault keys (normally kept in a desk) in the vault door, overturned empty teller drawers, and the surveillance camera with spray paint covering its lens and two indentations later determined to be the

---

[1]The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

[2]The Agofskys each received sentences of five years on Counts I (conspiracy) and III (firearms), and life imprisonment on Count II (aggravated robbery). The sentences under Counts I and II are to run concurrently, while the sentence under Count III is consecutive.

PA0013

result of .45 caliber bullets.  In all, $71,562.25 was stolen, including a substantial amount in rolled coins.  Dan Short, the bank president, was missing.[3]  Short's truck was located later Friday morning in a parking lot three miles from Noel.  The truck bed contained seven rolls of pennies.

On October 11, Short's body was found floating in Grand Lake of the Cherokees, near Cowskin Bridge.  Investigators found a chair, a concrete block, and a chain hoist attached with gray duct tape to Short's left ankle.  A wallet found on the body contained Short's identification.  After conducting an autopsy and reviewing Short's dental records, Dr. Robert Hemphill determined the body to be that of Short, and submitted a death certificate that listed drowning as the cause of death.  Following a lengthy investigation, Shannon and Joseph Agofsky were arrested.  A jury convicted them on all counts and this appeal followed.

I.

The Agofskys argue that there was insufficient evidence to support the jury's verdicts.  Shannon Agofsky contends that the government offered no evidence that he entered into an agreement to rob the State Bank of Noel.  He also claims insufficient evidence exists of his participation in the substantive aggravated robbery and firearm crimes.  Joseph Agofsky makes similar arguments, asserting a lack of evidence indicating an agreement and inadequate direct evidence linking him to the substantive crimes.

We must affirm the Agofskys' convictions "if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, . . . a

---

[3]Substantial evidence existed to indicate that Short had been abducted.  A number of Short's papers and related items were found in his yard.  His eyeglasses, which he needed to read or drive, remained on his nightstand.

-3-

PA0014

reasonable fact-finder could have found guilt beyond a reasonable doubt." United States v. Brown, 956 F.2d 782, 785 (8th Cir. 1992) (quoting United States v. Foote, 898 F.2d 659, 663 (8th Cir.), cert. denied, 498 U.S. 838 (1990), and cert. denied, 498 U.S. 938 (1990)); Glasser v. United States, 315 U.S. 60, 80 (1941). The jury must resolve conflicts in testimony and judge the credibility of witnesses. United States v. Nelson, 988 F.2d 894, 898-99 (8th Cir.), cert. denied, 113 S. Ct. 2945 (1993). We must affirm if substantial evidence exists to support the verdicts. Glasser, 315 U.S. at 80; United States v. Thomas, 992 F.2d 201, 204 (8th Cir. 1993).

We begin by considering the government's evidence against Shannon Agofsky.[4] The government introduced expert testimony identifying four separate fingerprints of Shannon Agofsky, recovered from the tacky side of duct tape used to bind Short to the chair. Two of the prints were recovered from the tape found attached to Short and the chair. The other two came from a piece of tape washed up nearby which, the evidence showed, had been torn from the tape found on the chair. A government expert testified that, in his opinion, the prints were placed as the tape was removed from its spool. The government also introduced testimony of Shannon Agofsky's detailed admission to a fellow inmate during which Agofsky explained how he used a gun to kidnap the banker and rob the bank. The government's additional evidence linking Shannon Agofsky to the robbery included his access to a van similar to one used by the perpetrators, testimony by Short's neighbor that a man looking like Shannon had been in front of Short's house a few days before the robbery, Shannon's possession of a gun like the one used in the crime, and his possession of eight rolls of nickels at the

---

[4]The record in this case includes ten volumes of transcripts. We do not attempt to recount all of the evidence, but limit our discussion to those facts relevant to our disposition.

-4-

PA0015

time of his arrest.[5] This evidence, with all reasonable inferences which favor the government, supports the jury's firearm and aggravated armed robbery convictions, and indeed, Shannon Agofsky's involvement in Short's death.

Shannon Agofsky also contests the adequacy of the government's evidence of a conspiracy. A conspiracy requires the government to prove beyond a reasonable doubt that there was an agreement to achieve an illegal purpose, that the defendant knew of this agreement, and that the defendant intentionally joined the conspiracy. United States v. Rogers, 982 F.2d 1241, 1244 (8th Cir.), cert. denied, 113 S. Ct. 3017 (1993). Due to the highly secretive nature of conspiracies, however, an agreement may be inferred from the surrounding circumstances. Id.; United States v. Kellermann, 992 F.2d 177, 179 (8th Cir. 1993) ("Evidence of a conspiracy need not be direct and, in fact, may be totally circumstantial."); United States v. Kroh, 915 F.2d 326, 332 (8th Cir. 1990) (en banc). The government meets its burden if it proves that the defendants acted in concert to achieve a common goal, Hamling v. United States, 418 U.S. 87, 124 (1974), or acted with a tacit understanding, United States v. Powell, 853 F.2d 601, 604 (8th Cir. 1988). The fact that the identity of some or all other members of the conspiracy remains unknown will not preclude a conspiracy conviction. United States v. Smiley, 997 F.2d 475, 479 (8th Cir. 1993).

The government presented ample evidence implicating Shannon Agofsky in an agreement to rob the State Bank of Noel. There was considerable evidence that Shannon Agofsky did not carry out the crime alone. Several witnesses testified of simultaneous use of multiple vehicles. One witness saw three vehicles, including one

---

[5]One hundred nickel rolls were stolen. The nickel rolls later found in Shannon Agofsky's possession were similar in color to other nickel rolls left at the bank, and none were minted after 1989, the date of the robbery.

-5-

PA0016

which looked like Dan Short's pickup, stopped on the Main Street bridge in Noel at approximately 3:00 a.m. on October 6, 1989. Another witness saw a pickup and a brown van on Cowskin Bridge at 3:30 a.m. Furthermore, the government showed that the collective weight of Dan Short, the chair, the chain hoist and the cement block exceeded 250 pounds. From this, the jury could reasonably infer that more than one person was required to lift Short over the three foot railing on the Cowskin Bridge.

Gant Sanders, a friend of Shannon Agofsky, testified that Joseph Agofsky questioned him in September 1989, only one month before the robbery, about the availability of bank blueprints prepared by Sanders' father during a past remodeling of the bank. Shannon was present during this discussion. Sanders also related a late September conversation between himself and the Agofskys about the possible kidnapping of a banker. After identifying a man entering the salvage garage where the three men were talking as a Joplin banker, Joseph Agofsky explained how the three could easily follow the banker home, take him to the bank, and force him to open the vault. Sanders also testified about how Shannon Agofsky had once discussed the possibility of driving a tow truck through the wall of the Noel Bank. Shannon knew, from a relative, that the walls were constructed of concrete blocks. Just days before the robbery occurred, a man who "looked similar" to Shannon Agofsky was seen twice near Short's home. Finally, in 1990, after the robbery, Sanders saw Joseph and Shannon Agofsky "wiping" firearms and ammunition for the stated purpose of preventing fingerprints from being present on any spent bullet casings. A reasonable juror could believe, based on this evidence, that Shannon Agofsky participated in a conspiracy to rob the Noel Bank.

We are similarly convinced that sufficient evidence supports the jury's verdicts against Joseph Agofsky. Once the existence of "a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the

-6-

PA0017

defendant's involvement." <u>United States v. Akers</u>, 987 F.2d 507, 511 (8th Cir. 1993) (quoting <u>United States v. Ivey</u>, 915 F.2d 380, 383 (8th Cir. 1990)). In addition to the evidence discussed above, the government presented evidence that Joseph Agofsky asked a bank employee in June 1989 where Short lived. The government also showed that despite being unemployed, Joseph Agofsky spent at least $18,986.67 in the 16 months following the robbery for which there was no documented source. He also admitted to taking some tires from his mother's shed, although he denied seeing the chain hoist that had been left nearby. Finally, a fellow inmate testified that Joseph Agofsky admitted to participating in the crimes.

From this evidence a reasonable juror could conclude that Joseph participated in the conspiracy to rob the Noel Bank. As a co-conspirator, Joseph Agofsky is liable for all reasonably foreseeable substantive crimes committed by his co-conspirators in furtherance of the conspiracy. <u>United States v. Williams</u>, 902 F.2d 675, 678 (8th Cir. 1990) (citing <u>Pinkerton v. United States</u>, 328 U.S. 640, 645-48 (1946)). Although the issue has not been fully raised, we have reviewed the entire record, and we have no doubt that a reasonable juror could convict on the aggravated robbery and firearm charges.

## II.

Before trial, both defendants filed motions to sever. Each argues on appeal that the court committed reversible error in denying his motion. We will reverse such a ruling only with a showing of clear prejudice and an abuse of discretion. <u>Nelson</u>, 988 F.2d at 806. "[P]ersons charged with a conspiracy will generally be tried together. . . ." <u>Id.</u> (quoting <u>United States v. Pecina</u>, 956 F.2d 186, 188 (8th Cir. 1992)). A severance is not required "merely because the evidence against one defendant is more damaging than the evidence against another." <u>United States v. Garrett</u>, 961 F.2d 743, 746 (8th Cir. 1992) (quoting <u>United States v. Davis</u>, 882

-7-

PA0018

F.2d 1334, 1340 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990)). Rather, "the defendant 'must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence as it related to [the co-defendants].'" Id. (quoting United States v. Givens, 712 F.2d 1298, 1300 (8th Cir. 1983), cert denied, 465 U.S. 1009 (1984)).

Each of the Agofskys directs this court to evidence presented by the government at trial that pertained only to the other. Joseph points to Shannon's possession of rolled nickels, Shannon's admissions made while in custody, and Shannon's fingerprints on the tape binding Dan Short. Similarly, Shannon Agofsky stresses evidence that Joseph Agofsky planned to rob the bank, Joseph's incriminating admissions, and his unexplained spending habits. They each argue the presence of this testimony prevented the jury from being able to compartmentalize the evidence.

The trial involved only two defendants charged with three counts each. No complex issues were involved. In such situations, the "jury undoubtedly is capable of properly compartmentalizing the evidence." Garrett, 961 F.2d at 746 (quoting Davis, 882 F.2d at 1340) (affirming refusal to sever two-defendant, five-count indictment for drug and firearm offenses). Accordingly, we conclude the district court did not abuse its discretion in refusing the appellants' severance requests.

### III.

The Agofsky's next contend that the district court erred in refusing alibi instructions. The offered instructions, identical but for the applicable name, stated in part that "[i]f, after considering all the evidence, you have a reasonable doubt that [defendant] was present, then you must find him not guilty." Both defendants offered alibi evidence. The court stated, however, that "[t]he tendered instruction was erroneous in that it directed the

-8-

PA0019

jury to find defendant not guilty if it found he was not present at the time and place of the alleged crime." United States v. Agofsky, No. 92-05006-01-CR-SW-4, Order at 3 (Nov. 10, 1992). Accordingly, the court refused their proposed instructions because the defendants "could have been found guilty as such without actually being present at one or more of the crime scenes." Id.

An alibi instruction would not have been appropriate in this case. Count I charged a conspiracy. Since a conspirator may be held liable for acts of his co-conspirators, he may not assert an alibi defense. United States v. Anderson, 654 F.2d 1264, 1270-71 (8th Cir. 1981), cert. denied, 454 U.S. 1127 (1981), and cert. denied, 454 U.S. 1156 (1982). The Agofskys argue that the offered instruction related only to Counts II (bank robbery) and III (firearms). These counts, however, were submitted on both direct participation and accessory theories. The Agofskys offered no objection to the government's submission on the accessory theory. Thus, the jury could have convicted the Agofskys of aiding and abetting even if they offered persuasive alibis. See United States v. Dawn, 897 F.2d 1444, 1450 (8th Cir.), cert. denied, 498 U.S. 960 (1990). In any event, as in Dawn, the Agofskys' "alibi defense was argued in closing [by one of the defendants], the jury was clearly instructed that the government had to prove all elements of the charge[s] beyond a reasonable doubt, and the evidence against [them] was relatively strong." Id. Under these circumstances, such error was clearly harmless beyond a reasonable doubt. Id.

## IV.

The Agofskys also ask this court to remand for resentencing because the district court refused to rule on several pro se motions filed by Sheila Agofsky Billbe, their mother, on their behalf while they were still represented by counsel. They contend the district court's refusal was plain error. Billbe, however, was neither a litigant nor a licensed attorney. Thus, she lacked

-9-

PA0020

authority to act as an attorney before the court. <u>Valiant-Bey v. Morris</u>, 620 F. Supp. 903, 904 (E.D. Mo. 1985) (rejecting documents signed by inmate's jailhouse "counselor"), <u>dismissed</u>, 786 F.2d 1168 (8th Cir. 1986); <u>see Osei-Afriyie v. Medical College of Pa.</u>, 937 F.2d 876 (3d Cir. 1991) (non-lawyer parent barred from representing minor children in federal court). Moreover, the court did not grant the Agofskys' counsel leave to withdraw until after sentencing. Thus, they were represented by counsel when their mother filed the various motions.[6] There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel. <u>Brasier v. Jeary</u>, 256 F.2d 474, 478 (8th Cir.), <u>cert. denied</u>, 358 U.S. 867 (1958); <u>Munz v. Fayram</u>, 626 F. Supp. 197, 198 (N.D. Iowa 1985), <u>dismissed</u>, 786 F.2d 1169 (8th Cir. 1986). Thus, although the Western District of Missouri has not followed the many jurisdictions[7] adopting an explicit rule barring pro se filings by represented parties, we find no error in the court's refusal to rule on the Agofskys' "pro se" motions.

## V.

Shannon Agofsky argues the district court erred in overruling his motion to suppress the results of an "inventory search" of his car, which resulted in the discovery of eight nickel rolls. The record shows that the motion was timely filed and renewed at trial. The relevant facts are undisputed. The nickels were discovered when Sergeant Steven Russell of the Rogers, Arkansas, Police

---

[6]We have considered Joseph Agofsky's argument that his counsel's lack of involvement at the sentencing hearing demonstrates that Agofsky, in fact, proceeded pro se, but conclude it is without merit. Accordingly, we need not address his argument that the court erred in permitting him to proceed pro se without warning him of the dangers of self-representation.

[7]<u>See</u>, <u>e.g.</u>, D.C. Alaska, General Rule 3; D.C. Ariz., Rule 8; C.D. Cal., Rule 2; M.D. Fla., Rule 2.03; S.D. Fla., Rule 16; D.C. Idaho, Rule 83.7; D.C. N.M., Rule 83; D.C. Ore., Rule 110-5; M.D. Tenn., Rule 1; E.D. Wash., Rule 1.2; W.D. Wash., General Rule 2.

-10-

PA0021

Department stopped and arrested Shannon Agofsky in December 1990 at an intersection in Rogers pursuant to an unrelated federal arrest warrant. Because inventory searches are required to be made at the location of a stop whenever possible, Russell conducted an inventory search of the car. The search disclosed a red backpack containing an unzipped pouch of eight rolls of nickels. The car was then towed to the impound lot. We review de novo the district court's application of the law to the facts. United States v. Layne, 973 F.2d 1417, 1420 (8th Cir. 1992), cert. denied, 113 S. Ct. 1011 (1993).

The police may inventory property in their possession when they do so in accordance with standard operating procedures. Colorado v. Bertine, 479 U.S. 367, 372 (1987); United States v. Marshall, 986 F.2d 1171, 1175 (8th Cir. 1993). These procedures may be written, but established unwritten procedures are also sufficient. United States v. Lowe, 9 F.3d 43, 46 (8th Cir. 1993), cert. denied, 1994 U.S. LEXIS 2129 (U.S. Mar. 7, 1994). The Rogers Police Department's procedures authorize inventory searches, but set certain limits. The relevant procedures require that the "arrested person . . . be given an opportunity to get some responsible person to take charge of the vehicle." However, "[i]f no responsible person is found within a reasonable time, the vehicle will be impounded."

Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory. Bertine, 477 U.S. at 372; Lowe, 9 F.3d at 46 n.4; Davis, 882 F.2d at 1339. The only question before us is whether the district court erred in determining that Sergeant Russell's conduct did not so exceed the Rogers Police Department's policy as to warrant suppression. Russell testified that Rogers is forty-five minutes away from the town of Noel. He knew that Shannon Agofsky had a female acquaintance in Rogers, but no other known friends or relatives in

-11-

PA0022

the area. He testified that he was looking for Agofsky and checked the female friend's house immediately before the arrest, and found she was not at home. He concluded he could not wait forty-five minutes for someone to come from Noel, and accordingly impounded the car. There was no evidence indicating anything other than good faith on the part of Sergeant Russell. Agofsky concedes that Sergeant Russell stopped him on an unrelated arrest warrant, and not in an attempt to gather evidence for the Noel bank investigation. Thus, this appears to be a case where "reasonable police regulations" were "administered in good faith." United States v. Thomas, 992 F.2d 201, 204 (8th Cir. 1992). We decline to speculate about Sergeant Russell's subjective intent. The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search. United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993) (per curiam). Furthermore, we are convinced that even if the nickel rolls were wrongfully admitted, the admission was harmless beyond a reasonable doubt.

## VI.

Shannon Agofsky also contends that the district court erred in admitting Short's dental records. Agofsky asserts the government failed to provide an adequate foundation for the admission of the records because the records were provided by a dentist who purchased the practice of Short's dentist. At trial, defense counsel made only a general objection which the court overruled. "Reversal is not required with regard to alleged improper admission of exhibits without specific foundation, in the absence of a specific objection on foundation grounds." United States v. Michaels, 726 F.2d 1307, 1314 (8th Cir.) (quoting United States v. Willis, 482 F.2d 1034, 1040 (8th Cir.), cert. denied, 414 U.S. 1112 (1973)), cert. denied, 469 U.S. 820 (1984); United States v. Wagoner, 713 F.2d 1371, 1377 (8th Cir. 1983). Moreover, because of the government's additional evidence of identity, including Short's wallet found on the body, the presence of Short's clothing, the

-12-

PA0023

body's approximate size and shape and the circumstantial evidence pointing to Short as the victim, any error was harmless beyond a reasonable doubt. See Arizona v. Fulminante, 111 S. Ct. 1246, 1264-65 (1991).

## VII.

Shannon Agofsky's final argument attacks the district court's refusal to declare a mistrial after statements during closing argument which he claimed were improper. The statements were made in the context of the parties' respective characterizations of the lack of evidence connecting the empty bullet casings found at the bank to a particular gun owned by one of the defendants. The testimony before the jury showed that Joseph Agofsky voluntarily relinquished two .45 pistols for testing. Although evidence existed that Shannon owned a .45 pistol as well, he never provided a gun for testing. Nonetheless, Shannon Agofsky's attorney argued in closing that the government "could have matched [the casings to the Agofskys' guns], ladies and gentlemen, if they had come from the weapons of these two boys." But, "they didn't tell you that because they didn't match up." In response to the inference that Shannon Agofsky's guns had been tested, the government argued:

> [The defense] [m]ade a point that we could not trace the shells to the .45 that Shannon had had (sic) prior to the bank robbery. Well, no. We don't know where it is. We still don't know where it is. Wouldn't we have like[d] to have seen it? But it wasn't given to us.

Shannon Agofsky argues these statements created an inference to the jury that the burden of producing the gun rested with him. The district court concluded that the prosecutor's statements "were not an improper response to defense counsel's closing remarks." We reverse a district court's refusal to declare a mistrial only if we conclude the court abused its broad discretion. United States v. Collins, 996 F.2d 950, 954 (8th Cir.), cert. denied, 114 S. Ct. 412

-13-

PA0024

(1993).  After carefully considering the record, we conclude the court did not abuse its discretion in refusing to declare a mistrial.  The isolated language quoted by the appellant is, at most, ambiguous.  Thus, we decline to reverse the ruling of the district court, which heard the manner and context in which the statement was made.

We affirm the convictions.

A true copy.

*Michael E. Gans*

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

PA0025

Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied.



**1**

513 U.S. 949, 130 L.Ed.2d 316

**Shannon Wayne AGOFSKY, petitioner,**
**v. UNITED STATES.**
**No. 94–5560.**
Oct. 17, 1994.

Case below, 20 F.3d 866.

Petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit denied.



**2**

513 U.S. 949, 130 L.Ed.2d 316

**Acay LAMPKINS, petitioner,**
**v. UNITED STATES.**
**No. 94–5600.**
Oct. 17, 1994.

Case below, 811 F.Supp. 164; 22 F.3d 304.

Petition for writ of certiorari to the United States Court of Appeals for the Third Circuit denied.



**3**

513 U.S. 949, 130 L.Ed.2d 316

**Kenneth D. LUCHT, Gary D. Apker, Cheryl M. Morford, Lovella Mauseth, Sandra Volkir, Rodney S. Rumsey, Dale Ray Haley, Mary Lee, Robert T. Farrell, petitioners, v. UNITED STATES.**
**No. 94–5602.**
Oct. 17, 1994.

Case below, 18 F.3d 541.

Petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit denied.



**4**

513 U.S. 950, 130 L.Ed.2d 316

**Lawrence PIROLLO, petitioner,**
**v. UNITED STATES.**
**No. 94–5603.**
Oct. 17, 1994.

Case below, 27 F.3d 560.

Petition for writ of certiorari to the United States Court of Appeals for the Third Circuit denied.



**5**

513 U.S. 950, 130 L.Ed.2d 316

**Augusto SERNA, petitioner,**
**v. UNITED STATES.**
**No. 94–5615.**
Oct. 17, 1994.

Case below, 25 F.3d 1037.

Petition for writ of certiorari to the United States Court of Appeals for the First Circuit denied.



**6**

513 U.S. 950, 130 L.Ed.2d 316

**Johnny B. GRIFFIN, petitioner,**
**v. WISCONSIN.**
**No. 94–5619.**
Oct. 17, 1994.

Case below, 183 Wis.2d 327, 515 N.W.2d 535; 520 N.W.2d 88.

Petition for writ of certiorari to the Court of Appeals of Wisconsin, District I, denied.



# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

SHANNON WAYNE AGOFSKY, )
)
               Movant, )
)
vs. )    No. 97-3199-CV-S-RGC
)
UNITED-STATES OF AMERICA )    Criminal Case No.
)    92-05006-01-CR-SW-RGC
            Respondent. )

## ORDER

On November 23, 1992 the Court sentenced movant to life imprisonment for violations of 18 U.S.C. §§ 371 and 2113(a), (d) and (e) and a consecutive sentence of 60 months for a violation of 18 U.S.C. § 924(c) and to a 60 month term of supervised release. The conviction and sentence was affirmed on direct appeal. United States v. Agofsky, 20 F.3d 866 (8th Cir. 1994). On April 23, 1997 movant filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The United States filed a response to the motion on May 30, 1997, opposing the motion. Movant alleged nine grounds as to why his conviction and sentence should be vacated.

### (1) "Alternate Suspects" Claim

On April 29, 1992 the United States filed a disclosure which identified documents pertaining to alternate suspects and on August 14, 1994 the United States filed another disclosure listing alternate suspects. Movant has listed no alternate suspects which the United States failed to disclose. This claim has no merit and no evidentiary hearing is required on this claim. Engelen



PA0027

v. United States, 68 F.3d 238, 240-41 (8th Cir. 1995).

### (2) Jailhouse Snitches Were Actually Agents

This claim has no merit. Inmate, Wayne Ray Pennington, testified that movant made incriminating statements to him. Pennington was serving a federal sentence for armed bank robbery and postal robbery. Pennington testified that he and movant were housed in the same ward at the United States Medical Center for Federal Prisoners when the movant made the incriminating statements. After the movant's statements, Pennington wrote a letter to the federal prosecutor and after that he was contacted by an FBI agent. Pennington had no contact with any federal authorities involved in this case until after the movant made the incriminating statements.

### (3) Exculpatory Evidence Was Concealed

Movant makes a contention that the United States withheld exculpatory information regarding fingerprints which "would have undercut the testimony of the FBI fingerprint analyst, Russell Davey." Movant does not specify the information withheld. It was the jury's province to judge the credibility of Mr. Davey.

Movant also claims there were numerous reports of sighting various vehicles at certain times which conflicted with the government's theory. Movant sets forth no facts which show that the sighting of various vehicles conflicted with the government's theory; this is a vague and conclusory claim.

### (4) False FBI Testimony

Movant asserts that FBI Agent Robert Webb testified falsely. The fact that Special Agent Robert Webb was under investigation concerning testimony in the "Vanpac" case, made public on April 15, 1997, was not known to the United States attorneys at the time of movant's trial. The

2

study in the Vanpac case only found that Webb stated certain conclusions more strongly than was warranted by the results of his investigation. The jury saw the photographs of the duct tape which bore the fingerprints of Shannon Agofsky. It was up to the jury to pass on the credibility of Special Agent Webb.

Movant contends the Court erred in allowing Michael Harris to testify at the time of trial. The financial analyst was called to testify to movant's unexplained wealth after the bank was robbed. The movant cannot show prejudice because this testimony was admissible and there was no error in admitting the testimony.

### (5) Inmate Informants Committed Perjury

Movant fails to state what evidence he has that perjury was committed and he fails to show how the prosecutors knew or should have known of such perjury. Movant does not demonstrate what testimony was false. Even if the inmates testified falsely, the other evidence against movant was overwhelming and no acquittal would have resulted.

### (6) Ineffective Assistance of Counsel

Movant has alleged that his attorney was ineffective in several regards: that he failed to properly investigate before trial; that he did not interview the government's witnesses; failure to properly impeach two government witnesses; his cross-examination of witnesses was inadequate; his attorney made statements to the press that was not in movant's interest and counsel exhibited an inappropriate attitude during trial. The United States filed the affidavit of defense counsel which refuted movant's claims.

The Supreme Court has established a two-prong test to determine if defense counsel was ineffective. The attorney's performance fell below an objective standard of reasonableness, and

3

PA0029

that such deficient performance prejudiced the defendant by causing an unreliable or fundamentally unfair outcome of the proceedings. There is a strong presumption that counsel's strategy and tactics fall within the wide range of reasonable assistance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Movant's claims do not overcome this presumption. His claims that his attorney's cross-examination of witnesses is nothing more than movant's opinion and fails for specificity.

The insufficiency of the evidence, the Court's failure to order severance, the refusal to give an alibi instruction, search and seizure of evidence, the admission of dental records and the prosecutor's remarks made in closing arguments were raised on direct appeal and may not form a basis to challenge his conviction and sentence in a § 2255 motion. Scott v. United States, 545 F.2d 1116 (8th Cir. 1976); and Jackson v. United States, 495 F.2d 349 (8th Cir. 1974).

It is

ORDERED movant's motion to vacate, set aside or correct his sentence is denied.

Russell G Clark
**RUSSELL G. CLARK, SENIOR JUDGE**
**UNITED STATES DISTRICT COURT**

Date: June 19, 1997

4

PA0030

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 05, 2013

Ms. Laura O'Sullivan
MIDWEST INNOCENCE PROJECT
Suite 1500
6320 Brookside Plaza
Kansas City, MO 64110

      RE: 12-1397 Shannon Agofsky v. United States
           12-1399 Joseph Agofsky v. United States

Dear Counsel:

      Enclosed is a dispositive order entered today at the direction of the court.

      Pursuant to Section 106 of the Antiterrorism and Effective Death Penalty Act of 1996, the grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

                    Michael E. Gans
                    Clerk of Court

LAB

Enclosure(s)

cc:     Mr. Joseph Anthony Agofsky
        Mr. Shannon Wayne Agofsky
        Ms. Lajuana M. Counts
        Mr. Philip M. Koppe
        Ms. Jennifer A. Merrigan
        Mr. Phillip Eugene Porter
        Ms. Ann Thompson

      District Court/Agency Case Number(s):

Appellate Case: 12-1397    Page: 1    Date Filed: 06/05/2013 Entry ID: 4042306

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No: 12-1397

---

Shannon Wayne Agofsky

Petitioner

v.

United States of America

Respondent

---

No: 12-1399

---

Joseph Anthony Agofsky

Petitioner

v.

United States of America

Respondent

---

Appeal from U.S. District Court for the Western District of Missouri - Springfield

---

## JUDGMENT

Before SMITH, ARNOLD, and COLLOTON, Circuit Judges.

The motion to seal the petitions, with exhibits, is granted.

The petition for authorization to file a successive habeas application in the district court by Shannon Agofsky, Case No. 12-1397, is denied. Shannon Agofsky's motion for appointment of counsel is denied as moot.

Appellate Case: 12-1397    Page: 1    Date Filed: 06/05/2013 Entry ID: 4042306

The petition for authorization to file a successive habeas application in the district court by the now deceased Joseph Agofsky, Case No. 12-1399, is dismissed.

Mandate shall issue forthwith.

June 05, 2013

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
/s/ Michael E. Gans

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

No: 16-2185

---

Shannon Wayne Agofsky

Petitioner

v.

United States of America

Respondent

---

Appeal from U.S. District Court for the Western District of Missouri - Joplin
(97-3199-CV-S-RGC)
(3:92-cr-5006-1)

---

## JUDGMENT

Before WOLLMAN, BOWMAN and COLLOTON, Circuit Judges.

The motion to defer ruling is denied.

The petition for authorization to file a successive habeas application in the district court is

denied. Mandate shall issue forthwith.

October 11, 2016

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

PA0034

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No: 20-2030

---

Shannon Wayne Agofsky

Petitioner

v.

United States of America

Respondent

Appeal from U.S. District Court for the Western District of Missouri - Joplin
(6:97-cv-03199-RGC)
(3:92-cr-05006-RED-1)

## JUDGMENT

Before COLLOTON, WOLLMAN, and KELLY, Circuit Judges.

Agofsky's motions for leave to file an overlength motion and for leave to file a reply are granted. Agofsky's motion for authorization to file a successive motion under 28 U.S.C. § 2255 has been considered by the court and is denied.

June 30, 2020

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

---

/s/ Michael E. Gans

PA0035

# CERTIFICATE OF SERVICE

I, David Zuckerman, hereby certify that, on this date, I electronically filed the foregoing appendix with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *David Zuckerman*
David Zuckerman

Dated: March 11, 2024