No. 24-1067

In the
United States Court of Appeals
for the Seventh Circuit

SHANNON WAYNE AGOFSKY,

*Petitioner-Appellant*,

v.

STEVE KALLIS, Warden,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:22-cv-00049 — Hon. James R. Sweeney, II, *Judge*.

**BRIEF FOR THE RESPONDENT-APPELLEE**

ZACHARY A. MYERS
United States Attorney

J. BENTON HURST
Special Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122
john.hurst@usdoj.gov

*Attorneys for Respondent-Appellee*

# STATEMENT CONCERNING ORAL ARGUMENT

Shannon Agofsky, a federal prisoner, appeals from the dismissal of his petition for habeas corpus under 28 U.S.C. § 2241. The district court properly concluded that it could not "consider the merits of Mr. Agofsky's habeas petition without disregarding [the] . . . unequivocal holding" of *Jones v. Hendrix*, 599 U.S. 465 (2023). Doc. 20 at 4. In the government's view, the facts and legal arguments set forth in the briefing and record adequately explain why the district court was correct, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

STATEMENT CONCERNING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ............................................................ iv

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF THE ISSUE ........................................................2

INTRODUCTION ...........................................................................3

STATEMENT OF THE CASE ........................................................5

A.    Agofsky's Missouri Murder, Bank Robbery, and Conviction..........6

B.    Agofsky's Murder of Another Inmate and Capital Sentence..........8

C.    Agofsky's Habeas Petition and the Ruling under Review ........... 11

SUMMARY OF THE ARGUMENT ..................................................... 13

ARGUMENT

The district court correctly concluded that it lacked subject matter
jurisdiction to consider Agofsky's petition for habeas corpus ............... 15

A.    Standard of Review ................................................................. 15

B.    The Interaction of Sections 2255 and 2241 ................................. 15

C.    Section 2255(e) Bars Agofsky's *Borden* Claim ........................... 19

D.    Agofsky's Novel Constitutional Challenge Lacks Merit .............. 20

1. Even if the restrictions of Section 2255(h) are unconstitutional as applied to Agofsky, the channeling portions of Section 2255(a) and (e) may be constitutionally applied ...................................................... 20

2. Section 2255(h) is constitutional as applied to Agofsky .................................................................................. 24

    a. The Constitution permits Congress to limit second-and-successive habeas petitions by capital defendants .............................................................. 24

    b. The "heightened standard of reliability" the Supreme Court requires in capital cases does not extend to post-conviction review ............................... 27

    c. *Johnson v. Mississippi* does not guarantee Agofsky a post-conviction opportunity to litigate his *Borden* claim ......................................................... 30

    d. Agofsky's claim is barred by *Teague* ......................... 33

    e. Even if successful, Agofsky's challenge to his Section 924(c) conviction would not undermine his capital sentence ..................................................... 37

3. Even if the Constitution guaranteed Agofsky review of his claim, he could not succeed on the merits .................... 39

    a. The modified categorical approach and Agofsky's convictions ................................................. 41

    b. Bank robbery under Section 2113(a) qualifies as a Section 924(c) crime of violence ............................. 42

      c.     Federal bank robbery by forced accompaniment under Section 2113(e) also qualifies as a Section 924(c) crime of violence ................................................. 49

CONCLUSION ..................................................................................... 51

CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH CIRCUIT RULE 32 ............................................................................. 52

CERTIFICATE OF SERVICE ............................................................. 53

# TABLE OF AUTHORITIES

<b>Page(s)</b>

## <u>Cases</u>

*Allen v. United States*, 836 F.3d 894 (8th Cir. 2016) ........................... 48

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................ 51

*Atwood v. Shinn*, 36 F.4th 834 (9th Cir. 2022) .................................... 26

*Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) ............................... 29

*Bennett v. Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 991 F.3d 724 (7th Cir. 2021) ........................................ 48

*Bixby v. Stirling*, 90 F.4th 140 (4th Cir. 2024)..................................... 26

*Borden v. United States*, 593 U.S. 420 (2021) ................................ 11, 45

*Bousley v. United States*, 523 U.S. 614 (1998) ..................................... 34

*Bowles v. Secretary, Florida Dep't of Corr.*, 935 F.3d 1176 (11th Cir. 2019) .................................................................... 25

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................... 18

*Brown v. Sanders*, 546 U.S. 212 (2006) ............................................... 38

*Brownback v. King*, 592 U.S. 209 (2021) ...............................................1

*Burris v. Parke*, 130 F.3d 782 (7th Cir. 1997) ...................................... 27

*Cal v. Garnett*, 991 F.3d 843 (7th Cir. 2021) ....................................... 39

*Carter v. United States*, 530 U.S. 255 (2000) ....................... 40, 45, 46, 47

*Davis v. United States*, 588 U.S. 445 (2019)...........................................8

*Eaglin v. Welborn*, 57 F.3d 496 (7th Cir. 1995).................................... 36

*Edwards v. Vannoy*, 593 U.S. 255 (2021) ................................ 34

*Felker v. Turpin*, 518 U.S. 651 (1996) .................................... 24

*Furman v. Georgia*, 408 U.S. 238 (1972) ......................... 27, 28

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) ..................... 18

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ................ 49

*Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ............... 25

*Gregg v. Ohio*, 428 U.S. 153 (1976) ...................................... 28

*Hamm v. Comm'r, Ala. Dep't of Corr.*, 620 F. App'x 752
    (11th Cir. 2015) ................................................................ 31

*Haynes v. United States*, 936 F.3d 683 (7th Cir. 2019) .................... 41, 43

*Herrera v. Collins*, 506 U.S. 390 (1993) ......................... 29, 30, 31, 39, 40

*Hogsett v. Lillard*, 72 F.4th 819 (7th Cir. 2023) ............... 1, 12, 15, 19, 20

*Holder v. United States*, 836 F.3d 891 (8th Cir. 2016) ......................... 48

*Hope v. United States*, 108 F.3d 119 (7th Cir. 1997) ........................... 27

*House v. Bell*, 547 U.S. 518 (2006) ...................................... 40

*Hunter v. United States*, 873 F.3d 388 (1st Cir. 2017) ......................... 44

*In re Barrett*, 840 F.3d 1223 (10th Cir. 2016) ..................... 25

*In re Bernard*, 826 F. App'x 356 (5th Cir. 2020) ................. 25

*In re Bowles*, 935 F.3d 1210 (11th Cir. 2019) ...................... 26

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ............... 12, 17, 23

*In re Richardson*, 802 F. App'x 750 (4th Cir. 2020) ......................... 25, 26

*In re Sams*, 830 F.3d 1234 (11th Cir. 2016) ............................................. 44

*In re Webster*, 605 F.3d 256 (5th Cir. 2010).............................................. 25

*Johnson v. Dretke*, 442 F.3d 901 (5th Cir. 2006).................................... 26

*Johnson v. Lumpkin*, 74 F.4th 334 (5th Cir. 2023)............................... 36

*Johnson v. McBride*, 381 F.3d 587 (7th Cir. 2004) .............................. 29

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ............................. 30, 31, 32

*Johnson v. United States*, 576 U.S. 591 (2015) ........................................7

*Jones v. Hendrix*, 599 U.S. 465 (2023)...........i, 5, 11, 12, 15-17, 19, 21-25

*King v. United States*, 965 F.3d 60 (1st Cir. 2020) .................... 42, 43, 49

*LaFevers v. Gibson*, 238 F.3d 1263 (10th Cir. 2001) ............................. 26

*Lambert v. Davis*, 449 F.3d 774 (7th Cir. 2006) .................................... 26

*Lee v. Watson*, 964 F.3d 663 (7th Cir. 2020)......................................... 18

*Lockett v. Ohio*, 438 U.S. 586 (1978).................................................... 28

*Mathis v. United States*, 579 U.S. 500 (2016) ...................................... 50

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) ........................................... 49

*Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016) .................................. 16

*Murray v. Giarratano*, 492 U.S. 1 (1989) ............................................. 29

*Napue v. Illinois*, 360 U.S. 264 (1959) ................................................. 18

*Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998) ................... 29

*Parker v. Franklin Cnty. Community Sch. Corp.*, 667 F.3d 910
 (7th Cir. 2012) ....................................................................... 43

*Penry v. Lynaugh*, 492 U.S. 302 (1989) .................................................. 35

*Proffit v. Florida*, 428 U.S. 242 (1976)................................................ 28

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020) .................... 17, 18

*In re Jones*, No. 16-14106-J, 2016 U.S. App. LEXIS 23578
(11th Cir. July 27, 2016) ........................................................ 42

*Roberts v. LeJeune*, 43 F.4th 695 (7th Cir. 2022).................................. 41

*Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) ............................................ 29

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004)............................................... 15

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ................................................. 39

*Shepherd v. Krueger*, 911 F.3d 861 (7th Cir. 2018) .............................. 15

*Spivey v. Head*, 207 F.3d 1263 (11th Cir. 2000).................................... 32

*Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013)........................... 17

*Susinka v. United States*, 855 F.3d 728 (7th Cir. 2017) ........................ 27

*Teague v. Lane*, 489 U.S. 288 (1989)........................................ 33, 34, 35

*United States v. Agofsky*, 20 F.3d 866 (8th Cir. 1994) ..................... 5, 6, 7

*United States v. Agofsky*, 458 F.3d 369 (5th Cir. 2006) ....... 5, 8, 9, 10, 38

*United States v. Agofsky*, 516 F.3d 280 (5th Cir. 2008) ................. 5, 7, 10

*United States v. Allen*, 247 F.3d 741 (8th Cir. 2001) ............................ 50

*United States v. Booker*, 543 U.S. 220 (2005)................................. 21, 22

*United States v. Brewer*, 848 F.3d 711 (5th Cir. 2017) ......................... 44

*United States v. Campbell*, 865 F.3d 853 (7th Cir. 2017) ...................... 45

*United States v. Carr*, 946 F.3d 598 (D.C. Cir. 2020) ..................... 44, 45

*United States v. Deiter*, 890 F.3d 1203 (10th Cir. 2018) ........................ 45

*United States v. Estell*, 924 F.3d 1291 (8th Cir. 2019) ........ 44, 45, 47, 48

*United States v. Evans*, 924 F.3d 21 (2d Cir. 2019) ............................ 42

*United States v. Foppe*, 993 F.2d 1444 (9th Cir. 1993) ......................... 47

*United States v. Hayman*, 342 U.S. 205 (1952) .............................. 16, 22

*United States v. Hendricks*, 921 F.3d 320 (2d Cir. 2019) ................ 44, 45

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ........................... 33

*United States v. Jackson*, 736 F.3d 953 (10th Cir. 2013) ..................... 50

*United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018) ........................ 44

*United States v. Johnston*, No. 22-2202, 2023 WL 4196827
  (7th Cir. June 26, 2023) ................................................................ 46

*United States v. Jordan*, 96 F.4th 584 (3d Cir. 2024) ........................... 46

*United States v. Maxwell*, 823 F.3d 1057 (7th Cir. 2016) ..................... 49

*United States v. McBride*, 826 F.3d 293 (6th Cir. 2016) .................. 44, 45

*United States v. McCranie*, 889 F.3d 677 (10th Cir. 2018) .................... 44

*United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) ....................... 50

*United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) ................... 44, 45

*United States v. Pickar*, 616 F.3d 821 (8th Cir. 2010) .......................... 48

*United States v. Shipp*, 203 U.S. 563 (1906) ...........................................1

*United States v. Strobehn*, 421 F.3d 1017 (9th Cir. 2005) .................... 50

*United States v. Vance*, 764 F.3d 667 (7th Cir. 2014) ........................... 50

*United States v. Watson*, 881 F.3d 782 (9th Cir. 2018).............. 42, 44, 45

*United States v. Williams*, 864 F.3d 826 (7th Cir. 2017) ................. 41, 44

*United States v. Wilson*, 880 F.3d 80 (3d Cir. 2018) ............................. 45

*United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003) ..................... 46, 47

*Van Daalwyk v. United States*, 21 F.3d 179 (7th Cir. 1994) ................. 35

*Wallace v. Davis*, 362 F.3d 914 (7th Cir. 2004) .................................... 35

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ..................... 16, 18, 22

*Welch v. United States*, 578 U.S. 120 (2016) ........................................ 34

*Woodson v. North Carolina,* 428 U.S. 280 (1976)................................. 28

*Wrice v. United States*, No. 17-2301, 2022 WL 18584558
    (7th Cir. Nov. 8, 2022) ................................................................. 44

*Zant v. Stephens*, 462 U.S. 862 (1983) ................................................. 38

## **Statutes**

18 U.S.C. § 371 .........................................................................................6

18 U.S.C. § 924 .............................................. 6, 7, 11, 42, 44, 49

18 U.S.C. § 1111 .......................................................................................9

18 U.S.C. § 1118 .......................................................................................9

18 U.S.C. § 2113 .................................................. 6, 42, 49, 50

18 U.S.C. § 3592 ........................................................ 9, 10, 32, 37

18 U.S.C. § 3593 ..................................................................... 37

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 2241 ................................................................ i, 1, 15, 20, 23

28 U.S.C. § 2244 ...................................................................... 17, 23, 26

28 U.S.C. § 2255 ........................................ 2, 7, 11, 12, 15, 16, 17, 23, 24

## <u>Other Authorities</u>

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
    Pub. L. No. 104-132, § 105, 110 Stat. 1214 .................................. 16

*Limiting the Abuse of Habeas Corpus*, 8 F.R.D. 171 (1949) .................. 16

Violent Crime Control and Law Enforcement Act of 1994,
    P.L. 103-322, 108 Stat. 1796 ....................................................... 50

# JURISDICTIONAL STATEMENT

Agofsky's jurisdictional statement is not complete and correct.

Agofsky petitioned under 28 U.S.C. § 2241. Doc. 1. The district court had jurisdiction to determine whether it had jurisdiction over that claim. *See Brownback v. King*, 592 U.S. 209, 218 (2021); *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.). As discussed below, the court properly concluded it did not. *Hogsett v. Lillard*, 72 F.4th 819, 821-22 (7th Cir. 2023).

Because dismissal of Agofsky's petition is a final order, jurisdiction over an appeal of that order lies in this Court under 28 U.S.C. § 1291. The district court entered a final judgment resolving all claims on November 29, 2023. Doc. 21. Agofsky filed a timely notice of appeal on January 17, 2024. Doc. 22.

## STATEMENT OF THE ISSUE

Whether the Eighth Amendment renders 28 U.S.C. § 2255, which channels federal post-conviction challenges to the prisoner's district of conviction and limits second-and-successive challenges, unconstitutional as applied to Agofsky's challenge to a conviction from the Western District of Missouri because it later supported one of several aggravating factors in a capital case in the Eastern District of Texas.

## INTRODUCTION

Agofsky was convicted of bank robbery by forced accompaniment and resulting in death and using a firearm to commit that bank robbery in the Western District of Missouri. He received consecutive sentences of life and sixty months. While he was serving those sentences, he murdered a federal inmate in the Eastern District of Texas and was sentenced to death. The Texas jury found four statutory aggravating factors; one of them was that Agofsky committed the Texas murder after he had been convicted of a felony involving the use, attempted use, or threatened use of a firearm.

Over the thirty years following his convictions in the Western District of Missouri, the Eighth Circuit has rebuffed Agofsky's numerous attempts to use the regular post-conviction process to challenge his Missouri firearm conviction. Seeking a more receptive forum, he petitioned for a writ of habeas corpus in the court below. In his view, recent developments in the Supreme Court's interpretation of a related firearm statute fatally undermined the firearm conviction.

At the time Agofsky filed his petition for a writ of habeas corpus, this Court permitted such claims on the ground that the regular post-conviction process was inadequate or ineffective. While Agofsky's petition was pending, however, the Supreme Court abrogated this Court's precedent and ruled that claims that rely on changes in statutory interpretation—like

Agofsky's—cannot be pursued using a petition for a writ of habeas corpus in the district of confinement. Such claims, if they can be brought at all, must proceed using the regular post-conviction process in the district of the defendant's conviction. The court below accordingly dismissed Agofsky's petition for lack of subject-matter jurisdiction.

Agofsky appeals. He argues that the Eighth Amendment guarantees him a right to challenge his Missouri firearm conviction in the court below because that conviction supported an aggravating factor in his capital case.

Agofsky's argument fails for several reasons. First, the Constitution does not guarantee him an opportunity to raise his claim at all. Although the Eighth Amendment requires additional procedures at capital trials, the Supreme Court has never held it guarantees post-conviction review beyond that provided by Congress. Second, even if Agofsky were entitled to raise his claim somewhere, he has identified no constitutional fault with statutes that channel claims like his to the district of his conviction. If he can bring his claim anywhere, it is not the court below. Third, Agofsky's claim fails on the merits.

**STATEMENT OF THE CASE**

Shannon Agofsky kidnapped a bank president, robbed his bank, taped him to a chair, a concrete block, and a chain hoist, and threw him in a lake to drown. *United States v. Agofsky*, 20 F.3d 866, 868-69 & n.3 (8th Cir. 1994). For these acts Agofsky was convicted of conspiracy, aggravated armed bank robbery, and using a firearm during a crime of violence. *Id.* at 868. He was sentenced to consecutive sentences of life and 60 months. *Id.* at 868 & n.2.

Agofsky then murdered a federal inmate in Texas by stomping his head and neck into the concrete floor; for this he was convicted of murder and sentenced to death. *United States v. Agofsky*, 458 F.3d 369, 371, 374-75 (5th Cir. 2006); *see United States v. Agofsky*, 516 F.3d 280, 282-83, 285 (5th Cir. 2008). He awaits execution at the United States Penitentiary in Terre Haute, Indiana. No execution date has been set.

Agofsky petitioned the district court below for a writ of habeas corpus, challenging his Missouri firearm conviction on the theory that aggravated armed bank robbery does not qualify as a crime of violence. Doc. 1. The court below, applying the Supreme Court's recent holding in *Jones v. Hendrix*, 599 U.S. 465 (2023), concluded that it lacked subject-matter jurisdiction and dismissed the petition. Doc. 20 at 4. Agofsky appeals.

## A. *Agofsky's Missouri Murder, Bank Robbery, and Conviction*

In October 1989, Agofsky and his brother kidnapped Dan Short, the president of the State Bank of Noel in Missouri. *Agofsky*, 20 F.3d at 868-69 & n.3. Then they robbed his bank of around $71,000, leaving expended bullet casings at the scene, bullet damage and spray paint on the surveillance camera, and the vault keys in the vault door. *Id.* at 868-69. After the robbery Agofsky taped Short to a chair, attached a concrete block and chain hoist as ballast, and threw him off Cowskin Bridge into the Grand Lake of the Cherokees, where he drowned. *Id.* at 869. Agofsky told a fellow inmate that he used a gun to kidnap Short and to rob the bank. *Ibid.* Agofsky and his brother hatched the scheme at least a month in advance. *Id.* at 870.

Following a jury trial in the United States District Court for the Western District of Missouri, Agofsky was convicted of conspiring to commit aggravated bank robbery, in violation of 18 U.S.C. §§ 371 & 2113(a), (d), and (e); committing aggravated bank robbery—i.e., bank robbery by forced accompaniment and resulting in death—in violation of 18 U.S.C. § 2113(a), (d) and (e); and using a firearm during and in relation to a crime of violence— i.e., aggravated bank robbery—in violation of 18 U.S.C. § 924(c). Doc. 10-1; Doc. 10-2 at 1-2; Doc. 10-3 at 1. The district court sentenced him to concurrent terms of 60 months and life imprisonment with respect to the conspiracy and bank robbery charges and a consecutive term of 60 months

with respect to the Section 924(c) charge. Doc. 10-3 at 2. The Eighth Circuit affirmed. *Agofsky*, 20 F.3d at 874.

Agofsky has since made many unsuccessful collateral attacks on his Missouri conviction and sentence. In 1997, the district court denied his initial motion under 28 U.S.C. § 2255, *United States v. Agofsky*, No. 3:92-cr-05006, ECF No. 298 (W.D. Mo. Apr. 23, 1997), and the Eighth Circuit denied his application for a certificate of appealability, *Agofsky v. United States*, No. 97-2923 (8th Cir. Dec. 22, 1997).

In the ensuing years, Agofsky thrice sought permission to file successive Section 2255 motions to challenge his Missouri convictions. In 2012, he sought to challenge his convictions on theory that he had newly discovered evidence that he was innocent of robbing the bank and murdering the bank president; the Eighth Circuit refused. *Agofsky v. United States*, No. 12-1397 (8th Cir. June 5, 2013).

In 2016, he sought to challenge his Section 924(c) conviction by relying on the Supreme Court's invalidation of the "residual clause" of 18 U.S.C. § 924(e) in *Johnson v. United States*, 576 U.S. 591 (2015). Petition at 11-13, *Agofsky v. United States*, No. 16-2185 (8th Cir. May 11, 2016). He also argued that bank robbery does not qualify as a crime of violence under Section 924(c)'s "force clause" because it need not be committed

intentionally. *Id.* at 13-16. The Eighth Circuit denied the petition. *Agofsky v. United States*, No. 16-2185 (8th Cir. Oct. 11, 2016).

In 2020, Agofsky sought to challenge his Section 924(c) conviction by relying on the Supreme Court's invalidation of Section 924(c)'s residual clause in *Davis v. United States*, 588 U.S. 445 (2019). Motion at 17, *Agofsky v. United States*, No. 20-2030 (8th Cir. May 22, 2020). He renewed his argument that federal bank robbery also does not qualify as a crime of violence under Section 924(c)'s force clause because it need not be committed intentionally or knowingly. *Id.* at 18-23. The Eighth Circuit denied the motion. *Agofsky v. United States*, No. 20-2030 (8th Cir. June 30, 2020).

**B.**     ***Agofsky's Murder of Another Inmate and Capital Sentence***

Meanwhile, in January 2001, Agofsky murdered Luther Plant, a fellow inmate at the United States Penitentiary in Beaumont, Texas. *Agofsky*, 458 F.3d at 371. Agofsky—a first-degree black belt in the martial art of Hwa Rang Do—knocked Plant to the ground with a forearm or elbow strike and then stomped on his face until he could not be recognized. Guilt Phase Tr. I at 45-47, 50, 52, 89; Guilt Phase Tr. II at 191, 197-98, 217.[1] "The

---

[1] "Guilt Phase Tr." refers to the three volumes of transcript of the guilt phase of Agofsky's trial in the Eastern District of Texas, Case Number 1:03-cr-173, accessible on the electronic docket in that case at entries 209 through 211. "Penalty Phase Tr." refers to the four volumes of transcript from the penalty phase, accessible on the electronic docket at entries 212 through 215.

assault was so violent that it splattered Plant's blood and other bodily fluids on the floor and wall of the exercise area." *Agofsky*, 458 F.3d at 375. Among many other injuries, Plant suffered a crushed neck, hemorrhaging around both eyes, a broken nose, a broken jaw, lost and broken teeth, and internal bleeding into his trachea, lungs, esophagus, and stomach. *Ibid.* Officials transported Plant to the hospital, where he was pronounced dead; Agofsky, for his part, asked when he would receive lunch. Guilt Ph. Tr. I at 125-26, 128-29, 149, 169-70.

Following a jury trial in the United States District Court for the Eastern District of Texas, Agofsky was convicted of murder by a federal prisoner serving a term of life imprisonment, in violation of 18 U.S.C. §§ 1118 and 1111; and first-degree federal murder, in violation of 18 U.S.C. § 1111. *Agofsky*, 458 F.3d at 371.

At the penalty phase, the government submitted four statutory aggravating factors defined in 18 U.S.C. § 3592(c):

1. That, in committing the offense or offenses, the death or injury resulting in death to Luther Plant occurred during the commission of an offense under 18 U.S.C. § 1118, that is, a murder committed by an inmate serving a life sentence, *see* 18 U.S.C. § 3592(c)(1);

2. That Agofsky committed the offense or offenses after being convicted of a federal offense punishable by a term of imprisonment of more than one year involving the use or

attempted or threatened use of a firearm against another person, *see* 18 U.S.C. § 3592(c)(2);

3. That Agofsky committed the offense or offenses after previously being convicted of a federal offense resulting in the death of another for which a sentence of life imprisonment was authorized by statute, *see* 18 U.S.C. § 3592(c)(3); or,

4. That Agofsky committed the offense in an especially heinous, cruel, or depraved manner, in that it involved serious physical abuse to the victim, *see* 18 U.S.C. § 3592(c)(6).

Penalty Phase Tr. I at 14-15; Penalty Phase Tr. III at 299-304, 319-21; *see* Notice of Intent to Seek the Death Penalty at 2-3, *United States v. Agofsky*, No. 1:03-cr-173 (E.D. Tex. Feb. 24, 2004), ECF No. 26. The government proved the second statutory aggravating factor by showing that Agofsky was convicted of using a firearm to rob the State Bank of Noel; it proved the third statutory aggravating factor by showing that Dan Short's death resulted from the robbery. Penalty Phase Tr. II at 34-42. The jury found the existence of all four statutory aggravating factors beyond a reasonable doubt. Doc. 12-1 at 8-10.

The district court imposed two sentences of death. *Agofsky*, 458 F.3d at 371. The Fifth Circuit vacated the convictions on double jeopardy grounds, the government elected to proceed on the federal murder theory alone, and the court affirmed the remaining conviction and capital sentence. *Id.* at 372-73; *Agofsky*, 516 F.3d at 282-83, 285. Agofsky's initial Section 2255 remains

stayed pending resolution of collateral litigation. *See* Order of Administrative Closing, *Agofsky v. United States*, 1:07-cv-511 (E.D. Tex. July 13, 2022), ECF No. 195.

### C. *Agofsky's Habeas Petition and the Ruling under Review*

In February 2022, Agofsky petitioned the court below for a writ of habeas corpus under Section 2241 to challenge his conviction under Section 924(c). Doc. 1. He relied on *Borden v. United States*, 593 U.S. 420 (2021), in which the Supreme Court held that, as a matter of statutory interpretation, an offense that may be committed recklessly does not have "as an element the use, attempted use, or threatened use of physical force against the person of another" and does not satisfy the force clause of Section 924(e). *Id.* at 429 (plurality opinion); *id.* at 446 (Thomas, J., concurring). Agofsky contended that the same interpretation should apply to the similar force clause of Section 924(c), that aggravated bank robbery can be committed recklessly and cannot qualify as a "crime of violence," and that his Section 924(c) conviction must therefore be vacated. Doc. 1 at 7-21.

Agofsky faced a procedural hurdle in presenting the merits of his claim. Normally, 28 U.S.C. § 2255 channels a defendant's challenges to his conviction or sentence to his district of conviction—in this case, the Western District of Missouri. *See id.* § 2255(a), (e); *Jones*, 599 U.S. at 473-74. But because Agofsky had already filed an unsuccessful motion under Section

-11-

2255 in the Western District of Missouri, any subsequent motion would have had to overcome the restrictions on second-and-successive motions. *See* 28 U.S.C. § 2255(h); *Jones*, 599 U.S. at 476-78. As a claim based on a change in statutory interpretation, Agofsky's *Borden* challenge could not. *See Hogsett v. Lillard*, 72 F.4th 819, 821-22 (7th Cir. 2023); Br. 2 (acknowledging that his *Borden* claim would be barred by Section 2255(h)).

Section 2255(e) contains a "saving clause" that permits a prisoner to file a habeas petition under Section 2241 when Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). At the time Agofsky filed his petition, this Court had held that Section 2255(h)'s bar on second-and-successive statutory claims made Section 2255 "inadequate or ineffective" and therefore permitted prisoners to raise those claims under Section 2241 in the district of their confinement. *See In re Davenport*, 147 F.3d 605, 610-12 (7th Cir. 1998). The parties therefore briefed the merits of Agofsky's petition. *See* Docs 1, 11, 12.

While Agofsky's petition was pending, the Supreme Court abrogated *Davenport* and its progeny. *Jones*, 599 U.S. at 477-78; *see Hogsett*, 72 F.4th at 821-22. Recognizing that it could not "consider the merits of Mr. Agofsky's habeas petition without disregarding *Jones'* unequivocal holding," the district court dismissed the petition for lack of subject-matter jurisdiction. Doc. 20 at 4. Agofsky appeals that decision.

-12-

## SUMMARY OF THE ARGUMENT

The district court properly concluded that it lacks jurisdiction over Agofsky's claim.

First, even if Section 2255(h)'s limits on second-and-successive claims are unconstitutional as applied to Agofsky, he cannot bring his substantive claim in the court below, as he cannot show any constitutional infirmity with Section 2255(a)'s venue requirement. Indeed, the Supreme Court observed that even if a prisoner could show that Section 2255(h) is unconstitutional, his claim would proceed on equal footing with those permitted under that provision—that is, in the district of his conviction. Under no circumstances would Agofsky proceed under Section 2241 in the court below.

Second, the Eighth Amendment's requirement for greater reliability in capital sentencing does not extend to post-conviction review and therefore gives no basis to overrule congressional restrictions on second-and-successive claims. *Johnson v. Mississippi*, on which Agofsky primarily relies, does not dictate a different result, as the petitioner in *Johnson* had no procedural bar to overcome. Extending *Johnson* to these circumstances would violate the non-retroactivity doctrine of *Teague v. Lane* and would be especially inadvisable because even a successful challenge to Agofsky's Section 924(c) conviction would not undermine his capital sentence.

Third, even if this Court were to recognize the possibility of a claim like Agofsky's, he cannot overcome the extraordinarily high threshold for relief that would apply. He argues that aggravated bank robbery cannot serve as a predicate for his Section 924(c) conviction on the theory that aggravated bank robbery may be committed recklessly. No court has ever accepted this argument, and for good reason: the Supreme Court held long ago that federal bank robbery requires a mens rea of knowledge.

This Court should affirm.

## ARGUMENT

**The district court correctly concluded that it lacked subject matter jurisdiction to consider Agofsky's petition for habeas corpus.**

### A.  *Standard of Review*

This Court reviews "the denial of a § 2241 petition without deference to the district court's analysis of the legal issues." *Shepherd v. Krueger*, 911 F.3d 861, 864 (7th Cir. 2018).

### B.  *The Interaction of Sections 2255 and 2241*

1.  "To collaterally attack a conviction or sentence, a federal prisoner files a motion to vacate under 28 U.S.C. § 2255, not a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241." *Hogsett v. Lillard*, 72 F.4th 819, 820 (7th Cir. 2023).

Section 2255 imposes various procedural requirements. Since 1948, it has required a prisoner seeking to challenge his conviction or sentence to file his motion in his sentencing court. *See* 28 U.S.C. § 2255(a), (e); *Jones*, 599 U.S. at 473-74. Petitions brought under Section 2241, when permitted, must be filed in the prisoner's district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

The "sole purpose" of this venue requirement "was to minimize the difficulties encountered in habeas corpus proceedings by affording the same rights in another and more convenient forum." *Jones*, 599 U.S. at 473

(quoting *United States v. Hayman*, 342 U.S. 205, 219 (1952)). It helps ensure that the reviewing court has reliable access to the underlying records and helps shift the burden of litigation from districts that, by happenstance, hold a disproportionate share of federal prisoners. *Id.* at 473-74; *Hayman*, 342 U.S. at 213-14. It further "ensures that only one court of appeals will be involved," *Webster v. Daniels*, 784 F.3d 1123, 1147 (7th Cir. 2015) (Easterbrook, J., dissenting), and prevents "the unseemly spectacle of federal district courts trying the regularity of proceedings held in courts of coordinate jurisdiction," John J. Parker, *Limiting the Abuse of Habeas Corpus*, 8 F.R.D. 171, 172-73 (1949).[2]

In 1996, Congress added additional limitations to Section 2255. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214; *see Jones*, 599 U.S. at 476. Relevant here, AEDPA added Section 2255(h), which prescribes that "a district court cannot consider any 'second or successive motions' under § 2255 unless a court of appeals has certified that it contains 'either (1) newly discovered evidence that makes a clear and convincing showing of innocence or (2) a new rule of constitutional law made retroactive by the Supreme Court.'" *Montana v.*

---

[2] Judge Parker chaired the committee that drafted the proposal enacted as Section 2255. *Webster*, 784 F.3d at 1147 (Easterbrook, J., dissenting).

*Cross*, 829 F.3d 775, 781-82 (7th Cir. 2016) (quoting *Suggs v. United States*, 705 F.3d 279, 282 (7th Cir. 2013)); *see* 28 U.S.C. §§ 2255(h), 2244(b)(3).

Unlike the venue requirement of Section 2255(a) and (e), the second-and-successive bar of Section 2255(h) expressly restricts the kinds of claims a prisoner may bring: among other forbidden contentions, it prohibits a prisoner from raising changes in statutory interpretation in a second-or-successive motion. *See Jones*, 599 U.S. at 480. In that case, "Congress has chosen finality over error correction." *Ibid.*

2.      Section 2255(e) generally bars a court from considering a federal prisoner's petition for a writ of habeas corpus, but it contains a "saving clause" that permits a court to consider a prisoner's habeas petition where Section 2255 is "inadequate or ineffective to test the legality of his detention."

Prior to *Jones*, this Court recognized various circumstances in which Section 2255 was "inadequate or ineffective." Most relevant here, this Court in *Davenport* found Section 2255 inadequate or ineffective when a defendant sought to take advantage of a change in statutory interpretation in a second-or-successive motion. *See Davenport*, 147 F.3d at 611-12.

This Court also extended *Davenport* to more eccentric circumstances. *See Purkey v. United States*, 964 F.3d 603, 611-14 (7th Cir. 2020) (describing other categories of cases where this Court found Section 2255 inadequate or

-17-

ineffective). For example, in *Webster*, this Court found Section 2255 inadequate or ineffective to permit a capital defendant to raise newly discovered evidence of intellectual disability as a constitutional bar to execution. 784 F.3d at 1138-39 (en banc). And in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the Court found Section 2255 inadequate or ineffective to permit a capital defendant to raise a claim based on privately enforceable treaty rights that accrued after exhaustion of national remedies. *Id.* at 923.

Even before *Jones*, however, this Court recognized that Section 2255(e) does not open the door to every claim from a capital defendant. *See Purkey*, 964 F.3d at 615-17 (rejecting the saving clause as a vehicle to challenge the effectiveness of post-conviction counsel in failing to challenge the effectiveness of trial counsel); *Lee v. Watson*, 964 F.3d 663, 666-67 (7th Cir. 2020) (rejecting the saving clause as a vehicle to raise ineffective assistance claims as well as claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959)).

3. *Jones* clarified that the saving clause is much narrower than this Court held in *Davenport*, *Webster*, and *Garza*. It permits recourse to Section 2241 in the "unusual circumstance[] in which it is impossible or impracticable for a prisoner to seek relief from the sentencing court" because, for instance, the sentencing court no longer exists or in the "highly unusual" circumstance where a prisoner could not be transported to the

sentencing court for a hearing. *Jones*, 599 U.S. at 474-75 & n.2. The saving clause also guarantees that Section 2241 remains open "when a prisoner challenges 'the legality of his *detention*' without attacking the validity of his *sentence*." *Id.* at 475.

In particular, the Supreme Court explicitly rejected the holdings of *Davenport* and other cases that permitted prisoners to raise second-and-successive statutory claims using Section 2241: That Congress authorized "successive collateral attack[s] based on new rules 'of *constitutional* law' implies that Congress did not authorize successive collateral attacks based on new rules of *nonconstitutional* law." *Jones*, 599 U.S. at 478 (quoting 28 U.S.C. § 2255(h)(2)). "The inability of a prisoner with a statutory claim to satisfy [the conditions of Section 2255(h)] does not mean that he can bring his claim in a habeas petition under the saving clause. It means that he cannot bring it at all." *Id.* at 480.

## C.     *Section 2255(e) Bars Agofsky's Borden Claim*

Agofsky invokes *Borden* (Br. 30-36) to challenge his Section 924(c) conviction, but *Jones* bars him from doing so under Section 2241, as this Court recognized in *Hogsett*, 72 F.4th at 821-22. Like the prisoner in *Hogsett*, Agofsky has already moved for relief under Section 2255 and now wishes to invoke *Borden* to mount a successive collateral attack on his sentence. *Id.* at 821. "Because *Borden* is a statutory interpretation decision, § 2255(h) does

not permit [Agofsky] to file a successive § 2255 motion, and *Jones* forecloses the possibility of filing a § 2241 habeas petition via § 2255(e)." *Id.*

### D. *Agofsky's Novel Constitutional Challenge Lacks Merit*

Recognizing that *Jones* forecloses *Davenport*'s "end-run around AEPDA," 599 U.S. at 477, Agofsky argues (Br. 15-30) that the Eighth Amendment renders Section 2255 inadequate or ineffective as applied to him and therefore the saving clause permits what *Jones* prohibits: the pursuit of his claim in the district of his confinement under Section 2241.

Agofsky's argument relies on two distinct sub-arguments. First, he argues (Br. 15-24) the Eighth Amendment prevents Congress from limiting his ability to rely on statutory developments to challenge a non-capital conviction that later served as an aggravating factor in his capital case. Second, he argues (Br. 24-30) that because the Eighth Amendment prohibits application of Section 2255(h)'s second-and-successive bar, *all* of Section 2255 is "inadequate or ineffective" for purposes of the saving clause. Because the second claim fails, this Court should not address the first.

> 1. *Even if the restrictions of Section 2255(h) are unconstitutional as applied to Agofsky, the channeling portions of Section 2255(a) and (e) may be constitutionally applied.*

Even if the Eighth Amendment guarantees Agofsky a forum to litigate his claim, that forum is not the court below. Because the independent failure

of his second claim deprived the district court of jurisdiction, this Court should not reach Agofsky's first claim.

*a.* As discussed above, Section 2255 serves at least two different functions: a venue function and a limiting function. Section 2255(a) and (e) operate to channel post-conviction claims to the prisoner's sentencing court. *See Jones*, 599 U.S. at 472-74. Section 2255(h), by contrast, primarily operates to extinguish a class of claims. *See id.* at 476-80.

As the Supreme Court recognized, a successful constitutional challenge to the limiting function of Section 2255(h) would not implicate the statute's venue function: "If a prisoner persuaded a court that the exclusion of statutory claims from § 2255(h) was unconstitutional, the result would not be that he could proceed under § 2241, but simply that he could file a second or successive § 2255 motion on an equal footing with §§ 2255(h)(1) and 2255(h)(2) claims." *Jones*, 599 U.S. at 482 n.5. That guidance disposes of Agofsky's argument here.

The Supreme Court's direction accords with the imperative to "refrain from invalidating more of the statute than is necessary." *United States v. Booker*, 543 U.S. 220, 258 (2005) (quotation omitted). Even the Court found Section 2255(h)'s limiting function found unconstitutional as applied to Agofsky, it would still have to retain those portions of Section 2255 that are

constitutionally valid, capable of functioning independently, and consistent with Congress's basic objectives in enacting the statute. *Id.* at 258-59.

Agofsky identifies no constitutional infirmity in Section 2255's venue provisions. That is not surprising, as those portions of Section 2255 were designed "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Jones*, 599 U.S. at 473 (quoting *Hayman*, 342 U.S. at 219). Decades of experience show that Section 2255's venue function, enacted in 1948, operates independently of the bar on second and successive motions that was enacted in 1996. *See generally id.* at 472-76 (describing the relevant history). Lastly, requiring Agofsky to submit his claim in Missouri would further, rather than frustrate, Congress's "pragmatic judgment that the sentencing court, not the District Court for the district of confinement, is the best venue for a federal prisoner's collateral attack on his sentence." *Id.* at 479-80; *see id.* at 473-74.

Even if the Eighth Amendment guarantees Agofsky an opportunity to litigate his challenge to his Section 924(c) conviction, it does not override Congress's decision to channel such challenges to the district of conviction. This Court need go no further to resolve this case; instead, it should reserve all remaining questions to the appropriate Eighth Circuit courts, should Agofsky elect to pursue them. *See Webster*, 784 F.3d at 1147-48 (Easterbrook, J., dissenting) (recognizing that the venue function of Section

-22-

2255 "not only matches the litigation to the court possessing the record but also ensures that only one court of appeals will be involved").[3]

*b.*     Agofsky acknowledges (Br. 2, 24-25) that Section 2255(h) bars his statutory claim but his proposed remedy—a petition under Section 2241—accounts for neither *Jones*'s rejection of *Davenport*'s reasoning nor the direction *Jones* gives to prisoners who claim they are constitutionally entitled to raise otherwise barred statutory claims.

From the outset Agofsky errs in his attempt to resurrect this Court's pre-*Jones* decisions. In *Davenport*, the case on which he primarily relies, the Court presumed that a prisoner had a right to raise otherwise-barred second-and-successive claims based on changes in statutory interpretation and then construed the saving clause to provide a remedy in Section 2241. *Davenport*, 147 F.3d at 609-12. But *Davenport* was incorrect in both its presumption that such a right existed and its interpretation of the saving clause to provide a remedy. *Jones*, 599 U.S. at 477-79 (holding that "the inability of a prisoner" to satisfy Section 2255(h) "does not mean that he can bring his claim in a habeas petition under the saving clause" but instead

---

[3] Under Section 2255(h), the Eighth Circuit Court of Appeals should decide whether to certify Agofsky's successive collateral claim. *See* 28 U.S.C. §§ 2255(h), 2244(b)(3). Agofsky cannot reasonably assert that the need to obtain the Eighth Circuit's certification impairs the reliability of any subsequent determination.

"means that he cannot bring it at all"); *id.* at 474-76 (holding that "inadequate or ineffective" refers to circumstances in which it is impossible or impracticable to seek challenge one's conviction or sentence in the sentencing court).

Although Agofsky posits a new right—an Eighth Amendment right to raise the kind of claim *Jones* rejected—he does not explain how he can overcome the abrogation of *Davenport*'s remedy. Nothing in *Davenport* suggests that, had this Court understood that "inadequate or ineffective" carries a much narrower meaning than it believed at the time, it would have invalidated Section 2255's venue prescriptions. This is especially true given *Jones*'s direction that such claims, if they may be brought at all, must be brought "on equal footing with a §§ 2255(h)(1) and 2255(h)(2) claims." *Jones*, 599 U.S. at 482 n.5.

2.      *Section 2255(h) is constitutional as applied to Agofsky.*

Although this Court need not address Agofsky's claim that Section 2255(h) is unconstitutional as applied to him, it fares no better.

a.      *The Constitution permits Congress to limit second-and-successive habeas petitions by capital defendants.*

The Constitution permits Congress to limit capital defendants' second-and-successive habeas petitions. *See Felker v. Turpin*, 518 U.S. 651, 663-64 (1996) (holding that AEDPA's limits on second-and-successive petitions by

state prisoners do not unconstitutionally suspend the writ of habeas corpus); *Bowles v. Secretary, Florida Dep't of Corr.*, 935 F.3d 1176, 1182 (11th Cir. 2019) (rejecting state capital defendant's Eighth Amendment challenge to second-and-successive bar); *Graham v. Johnson*, 168 F.3d 762, 787-88 (5th Cir. 1999) (rejecting capital defendant's Fifth, Eighth, and Fourteenth Amendment challenges to AEDPA's second-and-successive limits); *In re Richardson*, 802 F. App'x 750, 759 (4th Cir. 2020) (unpublished per curiam). Indeed, *Jones* reaffirmed Congress's power to limit second-and-successive claims without even hinting at a capital-case exception. 599 U.S. at 482-88 (holding that the Eighth Amendment "creates no freestanding entitlement to a second or successive round of postconviction review").

It is no surprise, then, that courts routinely enforce Section 2255(h)'s bar against movants facing federal capital sentences. *E.g.*, *In re Barrett*, 840 F.3d 1223, 1238-39 (10th Cir. 2016); *In re Webster*, 605 F.3d 256, 256-57 (5th Cir. 2010); *In re Bernard*, 826 F. App'x 356, 358 (5th Cir. 2020) (unpublished per curiam); *Lee v. United States*, No. 19-3576 (8th Cir. Jan. 7, 2020) (unpublished order); *In re: Dustin Higgs*, No. 16-8 (4th Cir. June 27, 2016) (unpublished order). This Court and others also frequently enforce the

similar second-and-successive bar of 28 U.S.C. § 2244(b) against petitioners facing state capital sentences.[4]

*Atwood v. Shinn*, 36 F.4th 834 (9th Cir. 2022), illustrates application of the second-and-successive bar in circumstances like Agofsky's. Atwood sought to file a successive federal habeas petition to assert an Eighth and Fourteenth Amendment challenge to use of a prior conviction as an aggravating factor in his capital case. *Id.* at 835. He acknowledged that his claim could not satisfy the second-and-successive bar but argued that he should be excused from compliance with those requirements because of his "actual innocence of the death penalty." *Id.* at 837. The court rejected this claim, holding that any equitable "actual innocence" gateway that pre-existed AEDPA had been subsumed by that statute and that Atwood's claim failed because he could not meet either of AEDPA's exceptions to the second-and-successive bar. *See id.* at 837-38.

Atwood would have faced a similar result in this Court, as it does not interpret the second-and-successive bar to permit challenges "on the basis of newly discovered evidence unless the motion challenges the conviction and

---

[4] *See Lambert v. Davis*, 449 F.3d 774, 778 (7th Cir. 2006); *see, e.g.*, *Bixby v. Stirling*, 90 F.4th 140, 154 (4th Cir. 2024); *Atwood v. Shinn*, 36 F.4th 834, 837-38 (9th Cir. 2022) (per curiam); *In re Bowles*, 935 F.3d 1210, 1215, 1220 (11th Cir. 2019); *Johnson v. Dretke*, 442 F.3d 901, 903 (5th Cir. 2006); *LaFevers v. Gibson*, 238 F.3d 1263, 1267-68 (10th Cir. 2001);*Richardson*, 802 F. App'x at 759.

not merely the sentence." *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997); *see Burris v. Parke*, 130 F.3d 782, 785 (7th Cir. 1997) (applying *Hope* to a capital defendant); *see also Susinka v. United States*, 855 F.3d 728, 729 (7th Cir. 2017) ("That is an unavoidably corrected reading of 28 U.S.C. § 2255(h)(1), whether we like it or not.").

In none of these cases did this or any other court express constitutional doubt about the application of limits on second-and-successive claims by capital defendants.

> b. *The "heightened standard of reliability" the Supreme Court requires in capital cases does not extend to post-conviction review.*

Agofsky contends (Br. 15-24) that the Eighth Amendment requires a "heightened standard of reliability" in capital cases that guarantees review of his *Borden* challenge despite Section 2255(h)'s limitations. He fails to note that the Supreme Court has expressly refused to extend the "heightened standard of reliability" requirement to collateral attacks.

In *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam), a divided Supreme Court held that the imposition of the death penalty under various state regimes violated the Eighth and Fourteenth Amendments. *Id.* at 239. Two justices accepted the argument that the Eighth Amendment barred capital punishment altogether, *id.* at 305-06 (Brennan, J., concurring); *id.* at 369-71 (Marshall, J., concurring); while three others focused on the

procedures by which defendants were selected for the death penalty, *id.* at 256-57 (Douglas, J., concurring); *id.* at 309-10 (Stewart, J., concurring); *id.* at 312-13 (White, J., concurring).

In the years that followed, the Court determined the circumstances under which the Eighth Amendment would permit imposition of the death penalty. In *Woodson v. North Carolina*, 428 U.S. 280 (1976), for example, the Court struck a statute that imposed mandatory death sentences for first-degree murder convictions. *Id.* at 305. As the plurality explained, its holding rested "on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. . . . [and] there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Ibid.* Other decisions identified constitutionally acceptable means to ensure the requisite reliability. *See, e.g., Gregg v. Ohio*, 428 U.S. 153, 206-07 (1976) (plurality opinion) (approving the requirement that a jury find aggravating factors); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion) (holding that, in general, the jury cannot be limited in considering mitigating factors); *Proffit v. Florida*, 428 U.S. 242, 253 (1976) (plurality opinion) (noting the value of mandatory appellate review in ensuring against the arbitrary and capricious imposition of death).

The Supreme Court has refused to extend this reasoning to require greater procedures for post-conviction review of capital sentences. *Murray v. Giarratano*, 492 U.S. 1, 8-10 (1989) (plurality opinion); *see Herrera v. Collins*, 506 U.S. 390, 405 (1993); *Barbour v. Haley*, 471 F.3d 1222, 1230-32 (11th Cir. 2006) ("Heightened procedural requirements do not apply in the context of postconviction proceedings."); *Rouse v. Lee*, 339 F.3d 238, 254-55 (4th Cir. 2003) (en banc) ("[T]he Supreme Court has repeatedly declined to treat death differently in the post-conviction context."); *Johnson v. McBride*, 381 F.3d 587, 590-91 (7th Cir. 2004) (rejecting death-is-different argument in favor of equitable tolling of deadline to file federal habeas petition, explaining that "[i]t is unnecessary to add to the discussion of this subject in *Rouse*, 339 F.3d at 251-56"); *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 281-82 (1998) (plurality opinion). The plurality in *Giarratano* explained: "The additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case are, we think, sufficient to assure the reliability of the process by which the death penalty is imposed." 492 U.S. at 10. The plurality therefore "decline[d] to read either the Eighth Amendment or the Due Process Clause to require yet another distinction between the rights of capital case defendants and those in noncapital cases." *Ibid*.

Under *Giarratano* and its progeny, the Eighth Amendment requires only that courts apply the existing post-conviction regime to capital and non-

capital cases alike. Agofsky cannot show that applying Section 2255(h) as written unconstitutionally deprives him of a reliable result.

> c. Johnson v. Mississippi *does not guarantee Agofsky a post-conviction opportunity to litigate his* Borden *claim.*

For his constitutional claim, Agofsky relies (Br. 18-19) primarily on *Johnson v. Mississippi*, 486 U.S. 578 (1988), but that case differs in critical ways from his own.

The petitioner in *Johnson* was facing a Mississippi death sentence for which a New York conviction served as an aggravating factor. *Id.* at 580. He successfully challenged his New York conviction in New York state court, but the Mississippi Supreme Court denied a subsequent challenge to his death sentence. *Id.* at 582-84. The Supreme Court reversed, relying on the need for additional reliability in capital cases recognized in *Woodson* and following cases. *Id.* at 584-85.

i. *Johnson* plainly differs from this case in that it involved no challenge to procedural limitations on post-conviction review. Indeed, before denying review to Johnson, "the Mississippi Supreme Court had previously considered similar claims by writ of error *coram nobis*," obviating any "need to override state law relating to newly discovered evidence in order to consider Johnson's claim on the merits." *Herrera,* 506 U.S. at 864; *see Johnson*, 486 U.S. at 588. More to the point, the Supreme Court would *not*

have granted relief if Mississippi had identified an adequate and independent state ground that barred it. *See Johnson*, 486 U.S. at 587-89. Here, by contrast, Agofsky seeks "additional process," *Herrera*, 506 U.S. at 406—a constitutional override of Section 2255(h)—and *Johnson* does not assist his argument that a death sentence guarantees him otherwise prohibited avenues for relief.

*ii.* *Johnson* also differs from this case in that Agofsky seeks additional process to challenge his underlying non-capital conviction; the petitioner in *Johnson* had already successfully attacked the aggravating conviction when the Supreme Court addressed his challenge to his death sentence. 486 U.S. at 582. *Johnson* did not assert a freestanding Eighth Amendment right to challenge otherwise valid convictions because they informed a death sentence. *See Hamm v. Comm'r, Ala. Dep't of Corr.*, 620 F. App'x 752, 767 (11th Cir. 2015) (unpublished per curiam) ("*Johnson* simply does not address convictions that have never been overturned, nor does it discuss the scope of a federal court's review of presumptively valid but challenged convictions used in imposing a death sentence.").

*iii.* *Johnson* differs from this case for a third reason: The government introduced more evidence of Agofsky's robbery of the Noel State Bank to the Texas jury than Mississippi's prosecutors did of Johnson's New

York crimes, and therefore Agofsky requires a substantial extension of *Johnson* to obtain relief.

"The sole evidence supporting the aggravating circumstance that [Johnson] had been 'previously convicted of a felony involving the use or threat of violence to the person of another'" was the authenticated copy of the petitioner's commitment to the New York prison. *Johnson*, 486 U.S. at 585; *see Spivey v. Head*, 207 F.3d 1263, 1281 (11th Cir. 2000) ("[T]he death sentence relied on the mere fact of conviction."). After Johnson's Mississippi trial, a New York appellate court vacated the New York conviction. *See Johnson*, 486 U.S. at 582 & n.3. The "reversal of the conviction deprive[d] the [Mississippi] prosecutor's sole piece of documentary evidence of any relevance to Mississippi's sentencing decision." *Id.* at 585.

In Agofsky's capital case, the government sought to prove as an aggravating factor that he committed the murder of Luther Plant after being convicted of a federal crime punishable by a term of imprisonment of more than one year involving the use or attempted use or threatened use of a firearm against another person. Penalty Phase Tr. I at 14; *see* 18 U.S.C. § 3592(c)(2).

To prove this aggravating factor, the government introduced the judgment showing Agofsky's conviction under Section 924(c). Penalty Phase Tr. I at 41-42. To be sure, that judgment was conclusive proof that Agofsky

had been convicted of a felony that involved the use, attempted use, or threatened use of a firearm. *See* Doc. 10-1 at 6, 8. But Section 3592(c)(2) does not require the application of a "categorical approach" to determine whether an aggravator is present—to the contrary, it "authorizes and likely requires the court to look past the elements of the offense to the offense conduct." *United States v. Higgs*, 353 F.3d 281, 316 (4th Cir. 2003). Here, unlike in *Johnson*, the government submitted independent evidence that Agofsky had also been convicted of aggravated bank robbery (a felony) as well as evidence that a surveillance camera had been shot with a firearm during the robbery. Penalty Phase Tr. I at 39-42 (evidence that Agofsky was convicted of the bank robbery); *id.* at 35-36 (evidence that a firearm had been used during the bank robbery).

Because independent evidence supported the jury's finding of the aggravator, any vacatur of the Section 924(c) conviction would have de minimis effect on the vitality of the aggravator and the concerns that animated *Johnson* do not exist here.

### d. *Agofsky's claim is barred by* Teague.

Agofsky seeks an extension of *Johnson* that would violate the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989). A new rule of criminal procedure may apply to cases on *direct* review, but "a new rule of criminal procedure ordinarily does not apply retroactively to overturn final

convictions on federal *collateral* review." *Edwards v. Vannoy*, 593 U.S. 255, 262 (2021). A corollary likewise applies: new rules of criminal procedure may not be *created* on collateral review. *See Teague*, 489 U.S. at 316.

A case announces a "new rule" if the result was not dictated by precedent existing at the time the defendant's conviction became final. *Welch v. United States*, 578 U.S. 120, 129 (2016). Agofsky seeks a new rule here: as he admits (Br. 24), Section 2255(h) bars his challenge as the law currently exists, and as he acknowledges (*see* Br. 14-15) the right to review that he claims has not yet been announced.

Neither does Agofsky qualify for *Teague*'s exception for substantive rules. "[A] new *substantive* rule—for example, a rule that particular conduct cannot constitutionally be criminalized—usually applies retroactively on federal collateral review." *Edwards*, 593 U.S. at 264 n.3; *see Teague*, 489 U.S. at 311 (describing an exception for rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" (quotation omitted)). Although *Borden*'s rule is a substantive one, *see generally Bousley v. United States*, 523 U.S. 614, 620-21 (1998), Agofsky's threshold Eighth Amendment challenge to Section 2255(h) affects only his access to certain forms of post-conviction relief and not the "range of conduct or the class of persons that the law punishes," *Edwards*, 593 U.S. at 264 n.3 (quotation omitted); *see Welch*, 578 U.S. at 134 ("A

decision that strikes down a procedural statute—for example, a statute regulating the types of evidence that can be presented at trial—would itself be a procedural decision."). Agofsky's proposed rule invalidating Section 2255(h) is procedural.

*Teague* applies to claims by capital defendants. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). "[C]ollateral challenges to sentences 'delay the enforcement of the judgment at issue and decrease the possibility that there will at some point be the certainty that comes with an end to litigation.'" *Id.* at 313 (quoting *Teague*, 489 U.S. at 314 n.2). These "finality concerns" support application of *Teague* in the capital sentencing context just as they do in non-capital cases. *Id.* at 314. These principles likewise apply to claims by federal prisoners. *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994).

*Teague* bars extensions of *Johnson v. Mississippi* on collateral review. For example, in *Wallace v. Davis*, 362 F.3d 914 (7th Cir. 2004), a capital prisoner sought to rely on *Johnson* to challenge his sentencing court's reliance on subsequently invalidated convictions. *Id.* at 915. This Court held that any extension of *Johnson* "beyond the ascertainment of those aggravating factors that establish eligibility . . . must be done by the Supreme Court on direct appeal" because under *Teague* "a federal appellate court cannot elaborate on doctrine in this fashion in a collateral attack." *Id.*

at 919. Similarly, in *Johnson v. Lumpkin*, 74 F.4th 334 (5th Cir. 2023) (en banc), a capital prisoner sought to rely on *Johnson* on federal collateral review to challenge the jury's assessment of his future dangerousness. *Id.* at 338-40. The court rejected this request "for a new extension of *Johnson v. Mississippi*" as "barred by *Teague*'s non-retroactivity doctrine." *Id.* at 340. Like *Wallace* and the Fifth Circuit, this Court should refuse to extend *Johnson* as Agofsky requests.

When the government raises *Teague* in the district court or had no opportunity to do so, this Court must consider the argument; but even if the government does not timely invoke *Teague*, the Court may consider it. *Eaglin v. Welborn*, 57 F.3d 496, 498-99 (7th Cir. 1995) (en banc). Admittedly, the government did not raise *Teague* before the district court, but that is because it was not relevant when the government filed its responsive brief. At that time, *Davenport* provided Agofsky an avenue to litigate his substantive *Borden* claim under Section 2241. *See* Doc. 11 at 5-6. Following *Jones*, the court ordered Agofsky to show cause why his petition should not be dismissed, Doc. 16, and Agofsky first raised the prospect of an exception to *Jones* for prisoners facing capital sentences, *see* Doc. 19 at 2-6. But Agofsky did not cite *Johnson v. Mississippi*, *see* Doc. 19 at 2-6, and the court dismissed Agofsky's petition based on *Jones* without ordering further briefing from the government, *see* Doc. 20. Under these circumstances, this

Court should exercise its discretion to consider *Teague* even if it finds that the government failed to timely assert it.

e. *Even if successful, Agofsky's challenge to his Section 924(c) conviction would not undermine his capital sentence.*

This case presents a particularly inappropriate vehicle to announce a new Eighth Amendment right to heightened post-conviction review because even if Agofsky could successfully challenge his Section 924(c) conviction from Missouri, it would not affect his capital sentence in Texas.

At the threshold, invalidation of the Section 924(c) conviction would not invalidate the second statutory aggravating circumstance. For the reasons discussed above, pp. 31-33, *infra*, evidence independent of the conviction showed that Agofsky had previously been convicted of a felony involving the use, attempted use, or threatened use of a firearm.

But even if Agofsky successfully challenged the second statutory aggravator itself, he would not be entitled to relief. Under the Federal Death Penalty Act, aggravating factors serve two roles. First, the jury must find one or more statutory aggravating factors listed in 18 U.S.C. § 3592 as a condition for capital eligibility. *See* 18 U.S.C. § 3593(d), (e). Second, the jurors must weigh the statutory aggravating factors (along with any non-statutory aggravators) against any mitigating factors they individually find true to determine whether a sentence of death is justified. *Ibid.*

Agofsky would remain death eligible even if the second aggravating factor failed outright: the jury in his capital trial found three other aggravating factors. *Zant v. Stephens*, 462 U.S. 862, 881-84 (1983); Doc. 12-1 at 8-10; *see Agofsky*, 458 F.3d at 374-75 (rejecting Agofsky's challenge to jury's finding that he committed murder in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse).

Neither would vacatur of the second statutory aggravator undermine the jury's selection of sentence. "An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Brown v. Sanders*, 546 U.S. 212, 220 (2006) (footnote omitted).

In this case, the Texas sentencing jury also considered the facts and circumstances of the aggravated bank robbery under both the third statutory aggravating factor (that Agofsky had previously been convicted of a federal offense resulting in death for which a sentence of life imprisonment was authorized) and the first non-statutory factor (that Agofsky represented a continuing danger to the lives and safety of others). *See* Doc. 12-1 at 9-10.

Given that Agofsky's challenge, even if successful, would not undermine his capital sentence, this would be a particularly inappropriate

case in which to find constitutional fault with the statutory limits on post-conviction review.[5]

>    3.    *Even if the Constitution guaranteed Agofsky review of his claim, he could not succeed on the merits.*

Agofsky invokes *Sawyer v. Whitley*, 505 U.S. 333 (1992), for the proposition that "[c]ontemporary standards of decency . . . require protection against the execution of someone who is to be put to death despite being innocent of a crime that was used to justify their death sentence." Br. 21-22. To the extent this Court holds that Agofsky has a constitutional right to challenge his Missouri Section 924(c) conviction because it supported an aggravator in his capital case, and that he has a right to do so under Section 2241 in the Southern District of Indiana, his claim fails on the merits.

"[T]he Supreme Court has never held that actual innocence claims, standing alone—separate and apart from any constitutional error—could support habeas relief." *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021). In

---

[5] That the Eighth Amendment does not provide an exception to Section 2255(h) does not mean Agofsky has no forum in which to seek relief from his capital sentence. Agofsky may still seek executive clemency. *See Herrera*, 506 U.S. at 411-12 ("Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted.").

Should this Court grant any measure of relief here, it should reserve to the Eastern District of Texas the responsibility to determine what, if any, effect its decisions, or those of the court below, would have on Agofsky's death sentence. His Section 2255 motion remains pending there, and he cannot claim that it is "inadequate or ineffective" to address prejudice.

several cases, however, the Supreme Court has assumed, without deciding, that "'in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional.'" *House v. Bell*, 547 U.S. 518, 544 (2006) (quoting *Herrera*, 506 U.S. at 417). The Court has explained that the "threshold for any hypothetical freestanding innocence claim" would be "'extraordinarily high.'" *House*, 547 U.S. at 555 (quoting *Herrera*, 506 U.S. at 417).

Agofsky could not satisfy such a bar even if his circumstances merited review. Agofsky unquestionably murdered Luther Plant and participated in the murder of Dan Short after robbing his bank. Having no claim of factual innocence that might satisfy the "extraordinarily high" standard of hypothetical review, he instead challenges (Br. 30-36) his Section 924(c) conviction on the theory that aggravated federal bank robbery cannot qualify as a crime of violence because it can be committed recklessly.

Agofsky's theory fails because the Supreme Court has held that federal bank robbery under Section 2113(a) requires that a defendant act with "knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *Carter v. United States*, 530 U.S. 255, 268 (2000).[6] Agofsky cannot show any error,

---

[6] Because *Carter* addressed the mens rea required to violate Section 2113(a), this Court need not resolve whether to apply its own case law or the

much less overcome the "extraordinary high" threshold that would apply under these circumstances.

### a. The modified categorical approach and Agofsky's convictions

Section 924(c)'s definition of "crime of violence" includes a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." To determine whether an offense qualifies as a crime of violence under the force clause, this Court applies the categorical approach, "focus[ing] of course on the statutory elements of the offense, not the actual facts underlying the particular defendant's crime." *United States v. Williams*, 864 F.3d 826, 828 (7th Cir. 2017). "When dealing with a divisible statute that provides for multiple crimes, a court must determine what crime, with what elements a defendant was really convicted of before deciding whether it counts as a predicate for § 924(c) or similar purposes." *Haynes v. United States*, 936 F.3d 683, 687 (7th Cir. 2019) (quotation omitted).

Agofsky was convicted of aggravated bank robbery in violation of Section 2113(a), (d), and (e). *See* Doc. 10-1, 10-2, 10-3. When he committed his crime, Section 2113(a) provided, in relevant part, "Whoever, by force and

---

case law of the court of conviction when considering a federal habeas petition, *Roberts v. LeJeune*, 43 F.4th 695, 699 (7th Cir. 2022).

violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or other thing of value" from a bank shall be punished. 18 U.S.C. § 2113(a) (1988). Section 2113(d) provided an enhanced range of punishment for anyone who, while committing a bank robbery, "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." *Id.* § 2113(d) (1988). Section 2113(e) provided a further enhanced range of punishment for anyone who, "in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person." *Id.* § 2113(e) (1988).

> b.  *Bank robbery under Section 2113(a) qualifies as a Section 924(c) crime of violence.*

*i.*  Section 2113(a) is at least divisible between a robbery offense (taking "by force and violence, or by intimidation"), and an extortion offense (obtaining by "extortion"). *King v. United States*, 965 F.3d 60, 68-69 (1st Cir. 2020); *United States v. Evans*, 924 F.3d 21, 28 (2d Cir. 2019); *see United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018); *In re Jones*, No. 16-14106-J, 2016 U.S. App. LEXIS 23578, at *12 (11th Cir. July 27, 2016)

(unpublished) ("Extorting money from a bank . . . clearly constitutes a separate crime that is not "armed bank robbery.").

Section 2113(a) distinguishes between the two offenses with its verbs: the verb "take" introduces the offense of robbery "by force and violence, or by intimidation" and the verb "obtain" introduces extortion. *See King*, 965 F.3d at 68. "By distinguishing between 'take' and 'obtain,' the syntax of the first paragraph of § 2113 tracks the common law differences between the offenses of robbery (a taking against the victim's will) and extortion (obtaining with the victim's consent)." *Id.* (quotation omitted). *King* also explains how the legislative history shows Congress's intent to distinguish between bank robbery and bank extortion. 965 F.3d at 69.

Although Agofsky asserts (Br. 35) that Section 2113(a) is indivisible, he cites no authority for that proposition beyond his own petition below. *See Parker v. Franklin Cnty. Community Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012) (rejecting attempt to incorporate by reference arguments made in the district court). Neither does he grapple with the reasoning of the cases above.

Because Section 2113(a) contains at least two distinct offenses, this Court may consider Agofsky's jury instructions to determine his offense of conviction. *Haynes*, 936 F.3d at 687. The trial court instructed the jury that the taking must be "by force and violence." Doc. 10-4 at 30. For that reason,

this Court need not consider whether a defendant who violates Section 2113(a) by extortion has committed a crime of violence.

*ii.* This Court and every other court of appeals with criminal jurisdiction has held that federal bank robbery qualifies as a crime of violence under Section 924(c). *Williams*, 864 F.3d at 829-30; *see Wrice v. United States*, No. 17-2301, 2022 WL 18584558, at *1 (7th Cir. Nov. 8, 2022) (unpublished order) (recognizing that bank robbery remains a crime of violence under the force clause).[7] Robbery "by intimidation," arguably the least culpable form of bank robbery, still requires at least the threat of force. For example, this Court wrote that while "federal bank robbery 'by intimidation' does not require the government to prove intent to intimidate," the government must still "prove that the defendant acted intentionally in a way that would cause a reasonable person to be intimidated, i.e., to fear that resistance of defiance will be met with force." *Williams*, 864 F.3d at 829. Likewise, the Eighth Circuit wrote that "if the government establishes that

_____

[7] *Accord Hunter v. United States*, 873 F.3d 388, 390 (1st Cir. 2017); *United States v. Hendricks*, 921 F.3d 320, 327-28 (2d Cir. 2019); *United States v. Johnson*, 899 F.3d 191, 203-04 (3d Cir. 2018); *United States v. McNeal*, 818 F.3d 141, 152-53 (4th Cir. 2016); *United States v. Brewer*, 848 F.3d 711, 715-16 (5th Cir. 2017); *United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016); *United States v. Estell*, 924 F.3d 1291, 1292-93 (8th Cir. 2019); *United States v. Watson*, 881 F.3d 782, 785-86 (9th Cir. 2018) (per curiam); *United States v. McCranie*, 889 F.3d 677, 680-81 (10th Cir. 2018); *In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016); *United States v. Carr*, 946 F.3d 598, 601-07 (D.C. Cir. 2020).

a defendant committed bank robbery by intimidation, it follows that the defendant threatened a use of force causing bodily harm." *United States v. Estell*, 924 F.3d 1291, 1293 (8th Cir. 2019). Other courts are in accord. *E.g.*, *United States v. Carr*, 946 F.3d 598, 601 (D.C. Cir. 2020) ("The least culpable conduct covered by the statute—bank robbery 'by intimidation'—categorically involves a threat of physical force.").

*iii.* *Borden* does not require a different result. In *Borden*, the Supreme Court concluded that an offense that may be committed recklessly lacks sufficient mens rea to satisfy the force clause of Section 924(e). 593 U.S. at 429 (plurality); *id.* at 446 (Thomas, J., concurring in the judgment).

Federal bank robbery cannot be committed recklessly; to the contrary, Section 2113(a) "requir[es] proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *Carter*, 530 U.S. at 268.[8] Indeed, post-*Borden*, this Court has

---

[8] *See Carr*, 946 F.3d at 605-07 & n.7 (holding that Section 2113(a) requires "the defendant to know his actions were objectively intimidating"); *Hendricks*, 921 F.3d at 328 ("In short, *knowledge*, not merely negligence, is required."); *United States v. Deiter*, 890 F.3d 1203, 1213 (10th Cir. 2018); *Watson*, 881 F.3d at 785; *United States v. Wilson*, 880 F.3d 80, 87 (3d Cir. 2018); *McNeal*, 818 F.3d at 155; *McBride*, 826 F.3d at 296; *see also United States v. Campbell*, 865 F.3d 853, 856-57 (7th Cir. 2017) (distinguishing between "crimes based on negligent or reckless conduct" and "general intent crimes like bank robbery").

relied on *Carter* to hold that Section 2113(a) requires a mens rea of knowledge. *United States v. Johnston*, No. 22-2202, 2023 WL 4196827, at *2 (7th Cir. June 26, 2023) (unpublished order), *cert. denied,* 144 S. Ct. 511 (2023).

Because a federal bank robbery conviction requires a showing of knowledge, it remains a crime of violence after *Borden*. *United States v. Jordan*, 96 F.4th 584, 593-94 (3d Cir. 2024) (rejecting *Borden* challenge to aggravated federal bank robbery under Section 2113(a) and (d)). Agofsky's *Borden* challenge to Section 2113(a) fails.

*iv.* Agofsky does not acknowledge *Carter*, nor does he identify any case holding that federal bank robbery may be committed recklessly. Instead, he appears to make two distinct arguments from Eighth Circuit precedent, but neither undermines his conviction.

First, he correctly asserts that the Eighth Circuit has held that a defendant may violate Section 2113(a) even if he lacks the intent to intimidate. Br. 32-33 (citing *United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003). But *Yockel* merely illustrates the same principle the Supreme Court recognized in *Carter*: Section 2113(a) does not require proof of a *specific intent* to intimidate. *Yockel*, 320 F.3d at 823-24 (citing *Carter*, 530 U.S. at 268); *see id.* at 823 (holding that Section 2113(a) "requires only proof of 'general intent—that is, that the defendant possessed knowledge with

-46-

respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)'" (quoting *Carter*, 530 U.S. at 268)); *see id.* at 827 (recognizing that evidence of Yockel's lack of surprise at his arrest might be probative of "whether Yockel had knowledge with respect to the *actus reus* of the crime"). Consistent with *Carter*, the Eighth Circuit has rejected a post-*Yockel* claim that bank robbery may be committed recklessly or negligently. *Estell*, 924 F.3d at 1293.

Agofsky correctly notes that the Eighth Circuit evaluates whether a bank robber's conduct crossed the threshold into intimidation by asking whether an ordinary person would be intimidated. Br. 33; *see Yockel*, 320 F.3d at 824. As *Yockel* recognizes, however, whether the defendant's conduct was threatening and whether it involved the requisite mental state are separate inquiries: "whether there has been an intimidation should be guided by an objective test focusing on the accused's actions" while "the jury can infer the requisite criminal intent from the fact that the defendant took the property of another by force and violence, or intimidation." *Ibid.* (quoting *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993)) (alterations omitted). Along these lines, the Eighth Circuit relied on *Yockel* to approve jury instructions that stated, in part, that "the government must simply prove, beyond a reasonable doubt, that the defendant intended to do or say what he in fact did or said, and that the defendant's words or actions were

-47-

of a kind that would make an ordinary person fear bodily harm." *United States v. Pickar*, 616 F.3d 821, 826 (8th Cir. 2010).

Second, Agofsky contends that *Borden* abrogates various Eighth Circuit cases holding that convictions for violating Section 2113(a) qualify as crimes of violence. Br. 34-35 (citing *Holder v. United States*, 836 F.3d 891, 892 (8th Cir. 2016) (per curiam); *Allen v. United States*, 836 F.3d 894, 895 (8th Cir. 2016). Agofsky argues that *Borden* "abrogates these decisions, which discount the relevance of the actor's intent" and asserts, without authority, that "intimidation can be committed recklessly—or without any intent whatsoever." Br. 34.

*Borden* did not address what mens rea is required to violate Section 2113(a), nor did it purport to address in anyway the holding in *Carter* that Section 2113(a) requires a mens rea of knowledge. This Court should leave to the Supreme Court "the prerogative of overruling its own decisions." *Bennett v. Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 991 F.3d 724, 735 (7th Cir. 2021) (quotation omitted). In addition, the Eighth Circuit has already rejected the claim that bank robbery by intimidation may be committed recklessly. *Estell*, 924 F.3d at 1293.

Because Section 2113(a) categorically requires a mens rea of knowledge, it categorically requires the use, attempted use, or threatened use of force, and Agofsky's conviction under Section 924(c) must stand.

c.      *Federal bank robbery by forced accompaniment under Section 2113(e) also qualifies as a Section 924(c) crime of violence.*

Agofsky was also convicted of forcing the bank president to accompany him under 18 U.S.C. § 2113(e). A conviction under that section also requires the use, attempted use, or threatened use of force.

At the time of Agofsky's offense, Section 2113(e) said: "Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct." 18 U.S.C. § 2113(e) (1988).

This statute is divisible because it defines two offenses: killing and forced accompaniment. That the statute is divisible is evident from the fact that it uses two different verbs to describe two different acts with two different common law analogues. *See King*, 965 F.3d at 68-69 (finding Section 2113(a) divisible on similar reasoning). Unsurprisingly, the Ninth Circuit has described the elements of forced accompaniment as that "(1) in the course of committing a bank robbery (2) [the defendant] forces a person (3) to accompany him (3) without that person's consent." *United States v.*

*Strobehn*, 421 F.3d 1017, 1018 (9th Cir. 2005).[9] Because the statute is divisible, this Court may look to the instructions and see that the jury necessarily concluded that Agofsky committed both offenses. Doc. 10-4 at 30.

Several courts have concluded that a defendant can violate Section 2113(e) by killing even if the killing is accidental. *See United States v. McDuffy*, 890 F.3d 796, 801 (9th Cir. 2018); *United States v. Vance*, 764 F.3d 667, 675 (7th Cir. 2014); *Jackson*, 736 F.3d at 957-58; *United States v. Allen*, 247 F.3d 741, 782-83 (8th Cir. 2001), *judgment vacated on other grounds*, 536 U.S. 953 (2002).

But these opinions did not specifically address the mens rea required to violate Section 2113(e) by "forc[ing] any person to accompany [the defendant] without the consent of such person." The offense of bank robbery by forced accompaniment plainly requires the use, attempted use, or

---

[9] Congress subsequently bolstered the view that killing and forced accompaniment are separate crimes by amending the statute to provide different punishments for the killing and forced accompaniment offenses. Violent Crime Control and Law Enforcement Act of 1994, P.L. 103-322, 108 Stat. 1796; *see United States v. Vance*, 764 F.3d 667, 675 (7th Cir. 2014) (interpreting the statute to mean that "if in the course of committing a bank robbery the robbery abducts someone, the minimum punishment is ten years in prison, but if he kills someone the minimum is life in prison"); *United States v. Jackson*, 736 F.3d 953, 958 (10th Cir. 2013) (noting that a sentence of death "may not be imposed for a 'non-fatal forced accompaniment'"); *see also Mathis v. United States*, 579 U.S. 500, 518 (2016) ("If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] they must be elements.").

threatened use of force. Further, one cannot recklessly force a person to accompany one during a bank robbery. Agofsky offers no authority or argument to the contrary—indeed, Agofsky does not address his conviction for forced accompaniment at all. *See* Br. 36. This Court need not reach this issue, but if it does it should deny his petition.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By      /s/ *J. Benton Hurst*

J. BENTON HURST
Special Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri  64106
Telephone: (816) 426-3122
john.hurst@usdoj.gov

*Attorneys for Respondent-Appellee*

**CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH CIRCUIT RULE 32**

The foregoing BRIEF FOR THE RESPONDENT-APPELLEE complies with the type-volume limitations required under Circuit Rule 32 of the United States Court of Appeals for the Seventh Circuit in that there are not more than 14,000 words and that there are 11,442 words typed in Microsoft Word word-processing this 24th day of May, 2024.

/s/ *J. Benton Hurst*
J. Benton Hurst
Special Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that on May 24, 2024, I electronically filed the foregoing BRIEF FOR THE RESPONDENT-APPELLEE with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system to the following:

David Zuckerman
Federal Community Defender Office
   for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545
West Philadelphia, PA 19106

   *Attorney for Petitioner-Appellant*

              /s/ *J. Benton Hurst*
              J. Benton Hurst
              Special Assistant United States Attorney