No. 24-1067

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

SHANNON W. AGOFSKY,
*PETITIONER/APPELLANT,*

V.

STEVE KALLIS,
*WARDEN,*
*RESPONDENT/APPELLEE.*

_____

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:22–cv–00049-JRS-MKK, Hon. James R. Sweeney II

REPLY BRIEF OF APPELLANT

David Zuckerman
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
    Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
215-928-0520
*Counsel for Petitioner-Appellant*

June 14, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

ARGUMENT ............................................................................................... 1

    A.    The "Heightened Standard of Reliability" Compelled by the Eighth Amendment Applies Under the Circumstances Presented in This Case. ............................................................. 3

    B.    Habeas Corpus Compels Relief Even If 28 U.S.C. § 2241 Is Unavailable. ........................................................................ 15

    C.    *Teague* is Not Implicated. ................................................... 20

    D.    The Merits of Mr. Agofsky's Claims Should Be Addressed in the First Instance by the District Court. ............................... 24

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) ................................ 8

*Borden v. United States*, 593 U.S. 420 (2021) ............................ 2, 24

*Boumediene v. Bush*, 553 U.S. 723 (2008) ............................ 16

*Bounds v. Smith*, 430 U.S. 817 (1977) ............................ 6

*Bowles v. Secretary, Florida Dep't of Corr.*, 935 F.3d 1176 (11th Cir. 2019) ............................ 19

*Brown v. Sanders*, 546 U.S. 212 (2006) ............................ 2

*Brumfield v. Cain*, 576 U.S. 305 (2015) ............................ 9, 22

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) ........17-18

*Ford v. Wainwright*, 477 U.S. 399 (1986) ............................ 4, 9

*Furman v. Georgia*, 408 U.S. 238 (1972) ............................ 12

*Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ............................ 19

*Gregg v. Georgia*, 428 U.S. 153 (1976) ............................ 12

*Harmelin v. Michigan*, 501 U.S. 957 (1991) ............................ 12

*Herrera v. Collins*, 506 U.S. 390 (1993) ............................ 8

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ............................ 17

*In re Richardson*, 802 F. App'x 750 (4th Cir. 2020) ............................ 19

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) ............................ 8

*Johnson v. McBride*, 381 F.3d 587 (7th Cir. 2004) ............................ 9

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ............................ *passim*

*Jones v. Hendrix,* 599 U.S. 465 (2023) ............................ *18, 19*

*Marks v. United States*, 430 U.S. 188 (1977) ............................ 8

*Montgomery v. Louisiana*, 577 U.S. 190 (2016) ............................ 21

*Murray v. Giarratano*, 492 U.S. 1 (1989) ............................ 5, 6, 7

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ............................ 10, 11

*Patchak v. Zinke*, 583 U.S. 244 (2018) ............................ 18

*Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) ............................................... 9

*Schlup v. Delo*, 513 U.S. 298 (1995) .................................................... 22

*Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998) ............................ 22

*Teague v. Lane*, 489 U.S. 288 (1989) ............................................... 1, 20

*Wallace v. Davis*, 362 F.3d 914 (7th Cir. 2004) ............................ 23, 24

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ....................... *passim*

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ................................ 12

**Statutes**

18 U.S.C. § 924 ..................................................................... 3

18 U.S.C. § 2113 ................................................................... 3

18 U.S.C. § 3593 ................................................................... 2

28 U.S.C. § 1291 ................................................................... 3

28 U.S.C. § 2241 ............................................................. *passim*

28 U.S.C. § 2255 .......................................................... 2, 14, 19

42 U.S.C. § 1983 ................................................................... 6

**Other**

*Kendall Turner, A New Approach to the Teague Doctrine*, 66 Stan. L. Rev. 1159 (2014) ...................................................................... 20

## ARGUMENT

The narrow question presented in this appeal is the same question this Court reserved in *Webster v. Daniels*: whether our "procedural system is powerless to act" when a custodian seeks to "inflict an unconstitutional sentence," such that this Court must stand by and stomach the "intolerable result of condoning an execution that violates the Eighth Amendment," or whether, in the rare circumstance presented here, § 2241 provides capital defendants with a procedural mechanism for advancing statutory challenges to convictions that served as aggravators in their death-sentence cases. *Webster v. Daniels*, 784 F.3d 1123, 1139 & n.7 (7th Cir. 2015) (en banc). The answer to that question is that neither our system—nor this Court—is powerless.

The government's response is full of red herrings. Repeatedly, it invites the Court to reach beyond this limited question, tempting discussion of thorny issues falling well outside the district court's order: whether Mr. Agofsky's death sentence violates the Eighth Amendment for the reasons discussed in *Johnson v. Mississippi*, 486 U.S. 578 (1988), *see* Response at 29–31; whether Mr. Agofsky's underlying Eighth Amendment claim requires an extension of *Johnson* and whether any such extension violates *Teague v. Lane,* 489 U.S. 288 (1989), Response at

33–36; whether a conviction invalidated under *Borden v. United States*, 593 U.S. 420 (2021), can still serve as an aggravator under 18 U.S.C. § 3593, Response at 37–38; whether the capital jury could have considered the same facts under another sentencing factor, precluding relief under *Brown v. Sanders,* 546 U.S. 212 (2006), Response at 38; and whether Mr. Agofsky's case can be factually distinguished from *Johnson* because the government's evidence was purportedly more robust. Response at 31–32.

Each of these diversions should be resolved in Mr. Agofsky's favor—but by the Eastern District of Texas, where Mr. Agofsky's 28 U.S.C. § 2255 petition is currently pending. To reach those questions here, as the government asks, would *create*, rather than *prevent*, the "unseemly spectacle" of involving more than one court of appeals in the same legal dispute. Response at 16 (quoting *Webster*, 784 F.3d at 1147 (Easterbrook, J., dissenting) & John J. Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171, 172-73 (1949)). This Court should decide the limited question presented and leave the others to the § 2255 court in Texas.

The merits of Mr. Agofsky's underlying *Borden* claim should also wait. *See* Response at 39–51; Opening Brief at 30–36. To be sure, the

parties vigorously dispute the effect *Borden* had on 18 U.S.C. § 924(c) and the federal bank robbery statute, and that dispute should be resolved in Mr. Agofsky's favor—but in the first instance by the district court. This is especially so given the government's argument that 18 U.S.C. § 2113 is divisible—an argument that can only be resolved via a fact-intensive, record-based, inquiry. *See* Response at 40–50; PA0002–6.[1] A remand, rather than a merits-based decision, is the appropriate course of action.

Past the Response's many detours lies one narrow question: Does Mr. Agofsky have a constitutional right to use § 2241 to challenge a subsequently invalidated conviction that was used to secure his death sentence? The Response provides no convincing argument to the contrary. This Court should remand to the district court so that it may consider the merits of Mr. Agofsky's *Borden* claim in the first instance.

**A. The "Heightened Standard of Reliability" Compelled by the Eighth Amendment Applies Under the Circumstances Presented in This Case.**

The Response states broadly that the Eighth Amendment's heightened standard of reliability does not "extend to post-conviction

---

[1] Petitioner's Appendix is cited herein as PA (followed by page number).

3

review" and thus relief should be denied on that basis. Response at 27. But the Eighth Amendment's standard is designed to ensure reliability in penalty-phase fact-finding at trial—precisely what is at issue in this case.

    1.    Mr. Agofsky's underlying claim addresses the reliability of penalty-phase fact-finding at trial, not post-conviction fact-finding.

Mr. Agofsky's death sentence was based in part on the "fact" of his prior conviction. At the penalty phase, this "fact" placed a thumb on the culpability scale in the government's favor. But later events made clear that his conviction was no fact at all; Mr. Agofsky was convicted of a non-existent crime. This renders the death verdict unreliable and thus puts the Eighth Amendment in play.

The Response asserts that the "Supreme Court has refused to … require greater procedures for post-conviction review of capital sentences." Response at 29. But it does not acknowledge *Ford v. Wainwright*, 477 U.S. 399, 411 (1986), where the Supreme Court declared "[i]n capital proceedings *generally*, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability." (emphasis added). And reliable "factfinding" is precisely what is at stake in this case. The Eighth Amendment's heightened reliability

requirement, without qualification, applies to trial fact-finding at the punishment stage, and it is the "fact" of the prior conviction relied upon by the jury that is in issue in this case. Here, the jury was required to consider an aggravating factor that no longer obtains, which in turn rendered its verdict unreliable. Because the Eighth Amendment demands the heightened reliability of death sentences, a remedy must be available under circumstances such as those presented here, where the infirmity that undermines the trial fact-finding arises after trial.

The government puts the cart before the horse, positing that Mr. Agofsky must first demonstrate that he would *prevail* on his *Johnson* claim before he can even seek to vacate the wrongful conviction that served to aggravate his death sentence. But doing so places this Court in direct conflict with the Eastern District of Texas and the Fifth Circuit, and asks it to resolve tricky questions via the parsing a voluminous capital record. It is enough that Mr. Agofsky's death sentence was premised on a conviction that this Court can review under § 2241.

The cases the government relies on simply do not apply in this context. For instance, it points to *Murray v. Giarratano*, 492 U.S. 1, 8-10 (1989) (plurality opinion) in support. Response at 29. But *Murray* dealt

with the right to counsel in state post-conviction proceedings, not the reliability of the trial fact-finding. There, in a 42 U.S.C. § 1983 class action, Virginia death row plaintiffs sought an extension of the access-to-courts rule from *Bounds v. Smith*, 430 U.S. 817 (1977). Although undoubtedly the assistance of counsel would enhance the reliability of *post-conviction* fact-finding, the Supreme Court declined to extend *Bounds* to require the states to appoint post-conviction counsel in capital cases. *Id.* at 10 (citing *Pennsylvania v. Finley*, 481 U.S. 55 (1987) (no constitutional right of counsel for indigent prisoners seeking state post-conviction relief)).

The government also misconstrues the plurality opinion in *Murray*. Response at 29. In *Murray*, four justices held that the Constitution did not require Virginia to provide counsel for capital defendants during state post-conviction review, *Murray*, 492 U.S. at 3–13 (Rehnquist, C.J., White, O'Connor & Scalia, JJ.), and four held that it did, *id*. At 15–32 (Stevens, Brennan, Marshall & Blackmun, JJ, dissenting).

Justice Kennedy concurred with the majority's judgment—but only because he determined that Virginia's prisons were staffed with institutional lawyers who assisted in the preparation of post-conviction

petitions and that "no prisoner on death row in Virginia has been unable to obtain counsel to represent him in post-conviction proceedings." *Id.* at 14–15 (Kennedy, J., concurring). Under such circumstances, Justice Kennedy was "not prepared to say *this* scheme violates the Constitution." *Id.* at 15 (emphasis added). Far from endorsing the expansive dicta in Chief Justice Rehnquist's opinion regarding the Eighth Amendment and post-conviction proceedings generally—dicta relied on heavily by the government, Response at 29–30—Justice Kennedy's concurrence reached the much narrower question of whether Virginia's particular scheme satisfied the Constitution.

Justice Kennedy's concurrence—which calls collateral relief proceedings "a central part of the process for prisoners sentenced to death" and recognizes a defendant's right to "meaningful access" of those proceedings—more strongly supports the conclusion that the Constitution can and does impose additional post-conviction procedural requirements in capital cases: That Justice Kennedy was "not prepared" to call *Virginia*'s post-conviction scheme unconstitutional in capital cases necessarily means he believed that *some* state's scheme *could* be. *See Murray,* 429 U.S. at 14. Justice Kennedy's narrow opinion trumps Chief

Justice Rehnquist's broader-but-minority view. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (quotation omitted).

Nor does the government's citation to *Herrera v. Collins,* 506 U.S. 390, 405 (1993), advance its argument. Response at 29. There, the defendant argued on habeas that newly discovered evidence proved his innocence and complained of the lack of a state court remedy. The Court specifically distinguished *Ford*, noting Herrera's newly discovered evidence went to guilt, not punishment. *Herrera*, 506 U.S. at 406 ("Because Ford's claim went to a matter of punishment—not guilt—it was properly examined within the purview of the Eighth Amendment."). Mr. Agofsky's claim, like Ford's and unlike Herrera's, goes to punishment.

The other cases relied on by the government are similarly inapposite, as they do not implicate *trial* fact-finding. *See Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) (failure of state to provide legal

assistance prior to their filing post-conviction challenges); *Rouse v. Lee*, 339 F.3d 238, 254-55 (4th Cir. 2003) (en banc) (equitable tolling); *Johnson v. McBride*, 381 F.3d 587, 590-91 (7th Cir. 2004) (equitable tolling).

2. Eighth Amendment violations that become apparent only after trial must be capable of a remedy.

Nothing in the Court's pronouncement in *Ford*, or thereafter, cabins the Eighth Amendment to errors capable of remedy at the time of trial.[2] Rather, the Court was concerned with the integrity of the fact-finding process in capital cases. *Id.* In *Ford*, the issue was the execution of "the insane." 477 U.S. at 401. Because, as the Court determined, such executions would violate the Eighth Amendment, it was incumbent upon the states to provide post-conviction procedures by which a fair determination of sanity could be made. Invoking the heightened standard of reliability requirement, the Court ruled "the State must … ensure that its procedures are adequate for the purpose of finding the facts." *Id.* at 411. The Court's concern with the reliability of capital fact-finding is not lessened where, through no fault of the condemned, the unreliability of the verdict comes to light after trial. *See also Brumfield v. Cain*, 576 U.S.

_____

[2] *Borden*, retroactively applicable to Mr. Agofsky, was issued long after his trial.

305, 324 (2015) (defendant "entitled to a hearing to show that he so lacked the capacity for self-determination that it would violate the Eighth Amendment to permit the State to impose the law's most severe sentence") (internal citation omitted). Indeed, in *Ford* and *Panetti*, the competency of the defendant only became ripe well after trial, yet the Court mandated that a remedy be available. *See also Panetti v. Quarterman*, 551 U.S. 930, 934–35 (2007) ("Under *Ford*, once a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment … entitles him to an adjudication to determine his condition.")

3. The government's attempt to distinguish *Johnson* fails.

The government acknowledges that under *Johnson v. Mississippi*, 486 U.S. 578 (1988), death sentences predicated on infirm prior convictions implicate the Constitution, even though the triggering events occurred after trial and the adequacy of the procedures at the time of trial was not responsible for the failure. Response at 30. Yet it purports to distinguish *Johnson*, positing that "the Supreme Court would not have granted relief if Mississippi had identified an adequate and independent state ground that barred it." Response at 30–31. But this argument begs the question. *Johnson* dealt with the *consequences* of an infirm conviction

10

and ruled that "allowing petitioner's death sentence to stand although based in part on a reversed conviction" violated the Eighth Amendment. 486 U.S. at 585. As in *Ford*, if the state court had not already reversed the questionable convictions, and if state procedures were not available to cure the defect, then those procedures are inadequate as hostile to the Eighth Amendment. *See, e.g., Panetti v. Quarterman*, 551 U.S. 930, 952 (2007) ("the state court failed to provide petitioner with a constitutionally adequate opportunity to be heard").

In claiming that the heightened standard of reliability does not apply in the post-conviction context, the government misses the point in multiple key respects. Response at 29. First, Mr. Agofsky claims that the fact-finding at the punishment phase of his *trial* was demonstrably unreliable. He does not assert he is entitled to heightened reliability in the fact-finding that occurs post-conviction. That the circumstances of this case require Mr. Agofsky to seek to remedy the injustice under § 2241 does not take it out of the purview of *Johnson*.

Second, the government misunderstands the role *Johnson* plays in Mr. Agofsky's argument. Mr. Agofsky does not rely on *Johnson* to establish his right to additional procedural protections; that right is

11

provided for in cases like *Harmelin v. Michigan,* 501 U.S. 957, 994 (1991), *Furman v. Georgia,* 408 U.S. 238, 306 (1972) (Stewart, J., concurring), *Gregg v. Georgia,* 428 U.S. 153, 188 (1976), *Woodson v. North Carolina,* 428 U.S. 280, 301 (1976), and others, which stand for the proposition that *if* a prisoner's conviction or sentence is infirm under the Eighth Amendment, then the Eighth Amendment itself requires a remedy to vindicate that right. *See* Opening Brief at 16–18.

*Johnson* establishes that relief under the Eighth Amendment is ultimately available (in the Eastern District of Texas) once the requisite procedural protections have been implemented. If the Southern District of Indiana invalidates Mr. Agofsky's underlying § 924(c) conviction on remand pursuant to *Borden* and 28 U.S.C. § 2241, *Johnson* will require that the Eastern District of Texas review his death sentence to determine whether it now violates the Eighth Amendment. *See Johnson,* 486 U.S. at 590 (remanding to Mississippi State Supreme Court for further proceedings). *Johnson* provides Mr. Agofsky with a substantive end; *Harmelin, Furman, Gregg, Woodson,* and others provide him with the procedural means. *See* Opening Brief at 16–18. The Response misses this distinction.

4.   The government urges this Court to resolve questions not before it and not necessary to the resolution of Mr. Agofsky's claim.

The government takes a contradictory approach to Mr. Agofsky's underlying Eighth Amendment claim (i.e., that his death sentence violates the Eighth Amendment because it is premised on an invalid conviction). In one section of its brief, the government repeatedly invites this Court to reach the merits of that underlying claim, arguing that independent evidence supported the death sentence, Response at 32–33, that *Teague* bars an extension of *Johnson*, *id.* at 33–37, and that the jury would have imposed a death sentence even without the § 924(c) aggravator, *id.* at 37–39. At the same time, the government argues that § 2241 is an inappropriate procedural remedy because circuit courts should avoid deciding issues that are (or may soon become) pending before other circuits, Response at 16, and it encourages the Court to reserve that very same issue to the Eastern District of Texas, where Mr. Agofsky's underlying claim is currently pending. *Id.* at 39 n.5. The government cannot have it both ways; either this Court is the appropriate forum for the underlying Eighth Amendment issue or it is not.

Mr. Agofsky's proposed resolution of this tension is straightforward. The only issue before this Court on appeal is whether the Southern District of Indiana has jurisdiction to decide his *Borden* claim under 28 U.S.C. § 2241 because the conviction in question was used as an aggravator in his capital case. In this respect, Mr. Agofsky's case is significantly less problematic than *Webster,* where the petition placed this Court in direct conflict with the Fifth Circuit by seeking the invalidation of the underlying death sentence itself. *Webster,* 784 F.3d at 1135; *see also id.* at 1147 (Easterbrook, dissenting). Mr. Agofsky's § 2241 petition requests only a determination that his underlying § 924(c) conviction is invalid. If that conviction is determined to be invalid, it will be up to the Eastern District of Texas to decide whether his death sentence remains constitutional.

5.      Post-*Jones*, § 2241 remains the appropriate vehicle to resolve Mr. Agofsky's claim.

Three points appear beyond dispute. Under *Johnson* the Eighth Amendment is implicated where the fact of an aggravating predicate conviction proves unreliable or false; under *Ford* (and *Furman, Gregg, Woodson,* etc., *see* Opening Brief at § 1.A) there must be adequate procedures to ensure the Eighth Amendment is not violated; and 28

U.S.C. § 2255 has in this case proved to be inadequate for that purpose. Even if (as *Jones v. Hendrix,* 599 U.S. 465 (2023), holds) there is no remedy for some injustices, that principle cannot apply to cases wrongly used to support a death sentence. As the Supreme Court has consistently said, it is the procedures that must bend to vindicate constitutional rights necessary to ensure reliable fact-finding in capital cases, not the other way around.

Fortunately, this Court does not begin with a blank slate. Section 2241 of Title 28 of the United States Code historically has, and still can, provide the procedural safety valve to correct what have now proven to be factual errors that occurred at trial. Pre-*Jones*, this was well-recognized. *See In re Davenport*, 147 F.3d 605, 610–11 (7th Cir. 1998). And as demonstrated above, such an avenue must survive *Jones* if this Court is to give effect to the Eighth Amendment's heightened standard of reliability. *Webster*, 784 F.3d at 1139 & n.7.

**B.   Habeas Corpus Compels Relief Even If 28 U.S.C. § 2241 Is Unavailable.**

The government is seemingly unoffended by the notion that an unconstitutional death sentence can be sustained for want of statutory remedy. But even if the government were correct that the sole statutory

avenue for relief has now been foreclosed by *Jones*, this would not absolve this Court of its responsibility to enforce habeas corpus. *See Webster,* 784 F.3d at 1139 (a "core purpose of habeas corpus is to prevent a custodian from inflicting an unconstitutional sentence").

In *Boumediene v. Bush,* the Supreme Court considered the constitutionality of Congress's exclusion of Guantanamo detainees from the protections of 28 U.S.C. § 2241.[3] *Boumediene v. Bush,* 553 U.S. 723, 798 (2008). The Court held that such detainees retained their constitutional right to habeas corpus notwithstanding the unavailability of § 2241:

> We hold that petitioners may invoke the fundamental procedural protections of habeas corpus. The laws and Constitution are designed to survive, and remain in force, in extraordinary times. Liberty and security can be reconciled; and in our system they are reconciled within the framework of the law. The Framers decided that habeas corpus, a right of first importance, must be a part of that framework, a part of that law.

*Id.*

---

[3] *See* 28 U.S.C 2241 (e) ("no court, justice, or judge shall have jurisdiction to . . . consider . . .  an application for . . . habeas corpus filed by or on behalf of an alien detained . . . at Guantanamo").

In *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), St. Cyr, a citizen of Haiti and lawful United States resident, pled guilty in state court to a charge of selling a controlled substance, a crime that made him deportable. At issue was the availability of § 2241 as a vehicle for St. Cyr to challenge his detention. *See id.* The Supreme Court ruled St. Cyr could properly proceed under § 2241, *id.* at 314, but, notably, the Court concluded that any interpretation of the immigration statutes that would preclude the availability of habeas corpus would present "difficult and significant" Suspension Clause questions. *Id.* at 304.

The rights of citizens unfairly sentenced to death are certainly no less weighty than those of the accused terrorists detained in Guantanamo or drug dealers facing deportation. If Mr. Agofsky's case lies beyond the reach of § 2241, he nevertheless retains his right to habeas corpus. This Court has a "constitutional duty to safeguard individual liberty." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 159 (2020) (Sotomayor, J., dissenting) (dissenting from plurality's conclusion that the remedy sought, the right of an alien to remain in this country, is beyond the scope of habeas corpus, and thus Suspension Clause not implicated). That duty would be "handcuff[ed]" and separation of powers implicated should

Congress so constrain this Court's ability to remedy an injustice. *Id*.; *see also Patchak v. Zinke*, 583 U.S. 244, 250 (2018) ("The separation of powers, among other things, prevents Congress from exercising the judicial power.").

The government argues that "[t]he Constitution permits Congress to limit capital defendants' second-and-successive habeas petitions." Response at 24. But that proposition comes with a caveat: At some point, that action suspends the Writ. Mr. Agofsky has an Eighth Amendment right not to be executed on the basis of a now-infirm predicate conviction. If § 2255 is inadequate, and § 2241 unavailable, then habeas corpus itself must provide that remedy. In *Jones*, when the Supreme Court considered (and declined to endorse) Jones' argument that the Court's interpretation of § 2241 and § 2255(e) violated the Suspension Clause, it nowhere accounted for the heightened procedural safeguards required when a death sentence is at issue and did not consider how those protections implicate the Suspension Clause. *See* 599 U.S. at 482–83.

The government points to the Supreme Court's remark in *Jones* that the Eighth Amendment "creates no freestanding entitlement to a second or successive round of postconviction review." 599 U.S. at 488.

Respondent's Brief at 25. Mr. Agofsky does not suggest that every capital defendant automatically gets a second bite of the § 2255 apple, only that where subsequent events render the trial fact-finding demonstrably unreliable, there must be a remedy under the general protections of habeas corpus if not under the statutory mechanisms more commonly employed. (And again, the issues pending in Mr. Agofsky's § 2255 petition are not before this Court; he asks this Court only for a remand so that the district court can determine the validity of his underlying 924(c) conviction, not one pertaining to his death sentence.) *Jones* did not address the Eighth Amendment's requirement of heightened reliability in fact-finding and did not rule that claims implicating the Eighth Amendment, however compelling, are beyond the reach of habeas corpus.[4] If Congress's statutory enactments, as interpreted in *Jones*, deprive Mr. Agofsky of a deserved avenue of relief, either the general right to habeas corpus applies or the Writ has been suspended.

---

[4] The other cases relied upon by the Government in support, *Bowles v. Secretary, Florida Dep't of Corr.*, 935 F.3d 1176, 1182 (11th Cir. 2019); *Graham v. Johnson*, 168 F.3d 762, 787-88 (5th Cir. 1999); *In re Richardson*, 802 F. App'x 750, 759 (4th Cir. 2020), predate *Jones*, and thus did not take into account *Jones*'s closing of a route to § 2241 review.

**C.** *Teague* **is Not Implicated.**

The government urges for the first time on appeal that Mr. Agofsky's reliance on *Johnson* requires an unwarranted extension of that case, violating *Teague v. Lane*, 489 U.S. 288 (1989). Response at 33. This argument finds the Response leaning well over its handlebars: The constitutionality of Mr. Agofsky's death sentence is for the court of conviction (the Eastern District of Texas) to decide, not the Southern District of Indiana. In no event should this Court attempt to determine, in the first instance, in response to an argument raised for the first time on appeal, whether the death sentence that was imposed by the Eastern District of Texas violates *Johnson* or *Teague*. That "uncertain and 'very complicated'" process should wait. Kendall Turner, *A New Approach to the Teague Doctrine*, 66 Stan. L. Rev. 1159, 1171 (2014) (quoting Larry Yackle, AEDPA Mea Culpa, 24 Fed. Sent'g Rep. 329, 333 (2012)). Mr. Agofsky's § 2241 petition asks whether *Borden* invalidates his bank robbery conviction, and this appeal asks whether he is entitled to § 2241 review post-*Jones* because he is challenging an aggravator that was used to secure his death sentence.

In any event, the Response's *Teague* argument quickly crashes to the concrete. First, Mr. Agofsky does not seek to apply *Johnson* at all; he

cites it simply to establish that he has a viable Eighth Amendment claim currently pending in a *different* court and that, accordingly, he is entitled to process in *this* Court by which he may vindicate that right. Second, even if Mr. Agofsky was asking this court to apply *Johnson,* he would not be asking it to apply *Johnson* retroactively; he seeks only to apply *Johnson* as of the filing of his § 2241 petition in 2022, nearly a quarter of a century after it was handed down. In any event, *Teague* only limits the application of new rules of criminal procedure at trial, not rules governing the consideration of claims on post-conviction review; courts routinely modify post-conviction procedural rules without any reference to *Teague.* Mr. Agofsky's argument requires no extension of *Johnson.*

1. *Teague* applies only where a "new rule of criminal procedure" is sought.

Contrary to the government's assertions, Mr. Agofsky does not seek a "new rule of criminal procedure." *Montgomery v. Louisiana*, 577 U.S. 190, 199 (2016). *Teague* holds that "a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced." *Id.* But § 2241 is not a "rule of criminal procedure," it is a rule of *post*-conviction procedure. The Supreme Court routinely modifies the post-conviction remedies available

for entertaining long-established rules of criminal procedure without regard to *Teague. See, e.g., Schlup v. Delo*, 513 U.S. 298 (1995) (innocence exception to procedural default); *Brumfield v. Cain*, 576 U.S. 305 (2015) (state court's fact-finding that fails to consider the full context and meaning of the evidence is unreasonable); *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (petitioner's claim that he was incompetent to be executed was not a second or successive petition); *see also Webster v. Daniels*, 784 F.3d 1123, 1125 (7th Cir. 2015) (expanding the relief available under § 2241 without regard to retroactivity or *Teague*).

Appellant seeks no more than the recognition that the requirements of the Eighth Amendment, as decided by the Supreme Court, must be answerable under the procedural framework established by Congress.

2.    Mr. Agofsky's claim does not require an extension of *Johnson*.

Mr. Agofsky's argument does not rely on any extension of *Johnson* (which, again, long predates the conclusion of Mr. Agofsky's direct appeals). Instead, Mr. Agofsky's argument falls squarely under *Johnson*'s holding that a death sentence based upon a prior conviction that is subsequently invalidated violates the Constitution.

The government's strained argument to the contrary is based on its reading of *Wallace v. Davis*, 362 F.3d 914 (7th Cir. 2004). Response at 35–37. There are two problems with the government's argument. First, Mr. Wallace's conviction became final in 1985, *id.* at 915, three years *before Johnson v. Mississippi,* 486 U.S. 578 (1988) was decided. *Wallace*, 362 F.3d at 915. Mr. Agofsky's conviction became final in 2006, eight years after *Johnson*. Mr. Wallace had a *Teague* problem; Mr. Agofsky does not.

Second, in *Wallace*, the jury found two statutory aggravating factors and no mitigating factors. The court, in sentencing Wallace, also invoked a list of sentencing considerations, including "that Wallace had committed the murders while on parole, that he displayed a total disregard of human life, that there was 'no provocation whatsoever' for his acts, and that he 'had a long history of serious criminal conduct [fourteen prior arrests or convictions].'" *Id.* at 915. Later, two of the fourteen convictions were vacated because the plea colloquies were defective. *Id.* This Court held that *Johnson*'s rule did not apply on habeas "because the list of arrests and convictions was unrelated to any aggravating factor." *Id.* at 918. Rather, the lumping of prior arrests and

23

convictions showed the "gist was that Wallace is incorrigible," a proper consideration. *Id.*

Here, conversely, the infirm conviction was invoked in support of an aggravating factor. Unlike the petitioner in *Wallace*, Mr. Agofsky does not seek to extend *Johnson* beyond its letter, that a "death sentence . . . based in part on a reversed conviction violates [the Eighth Amendment]." *Harmelin*, *Furman*, *Gregg*, *Woodson*, and other cases establish that the Eighth Amendment ensures a judicial remedy for such a claim. *See* Opening Brief at 16–18. The government's belated *Teague* argument fails.

**D. The Merits of Mr. Agofsky's Claims Should Be Addressed in the First Instance by the District Court.**

Finally, the government quibbles with Mr. Agofsky's contention that *Borden v. United States*, 593 U.S. 420 (2021) compels relief. Mr. Agofsky argues that under the categorical approach applied in *Borden*, relief is required because, as in *Borden*, the crime for which he was convicted could be committed with recklessness or some less culpable *mens rea.* Appellant's Brief at 30–36 (citing, *inter alia*, *United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003)). As argued in his principal brief,

the applicability of *Borden* should be decided in the first instance by the district court upon remand.

## CONCLUSION

For the reasons set forth above and in Mr. Agofsky's opening brief, this Court should reverse the district court's opinion dismissing Mr. Agofsky's habeas petition for lack of jurisdiction and remand to the district court for consideration of the merits of Mr. Agofsky's *Borden* claim.

Respectfully submitted,

/s/ *David Zuckerman*
David Zuckerman
Assistant Federal Defender
Federal Community Defender
Office for the Eastern District of
Pennsylvania
601 Walnut Street,
Suite 545 West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)

*Counsel for Petitioner/Appellant*
*Shannon Agofsky*

Dated: June 14, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(B) and Seventh Circuit Rule 32(c) because it contains 4,830 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft 365 in 14 point Century Schoolbook.

/s/ *David Zuckerman*
David Zuckerman

Dated: June 14, 2024

CERTIFICATE OF SERVICE

I, David Zuckerman, hereby certify that, on this date, I electronically filed the foregoing brief with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *David Zuckerman*
David Zuckerman

Dated: June 14, 2024